

# EXHIBIT F

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

KRIS WARNER, in his Official Capacity as
WEST VIRGINIA SECRETARY OF STATE,

    *Defendant*.

Case No. 2:26-cv-00156

**<u>DECLARATION OF BRUCE PERRONE IN SUPPORT OF PROPOSED
INTERVENOR-DEFENDANT WEST VIRGINIA CITIZEN ACTION GROUP'S
MOTION TO INTERVENE AS DEFENDANT</u>**

Pursuant to 28 U.S.C. § 1746, I, Bruce Perrone, declare as follows:

1.    I am an adult resident of the State of West Virginia and an eligible, registered voter.

2.    I have been a resident of West Virginia for forty-seven years. I first moved to Morgantown, Monongalia County, WV for a job in 1978, and immediately registered to vote. In 1985, I changed jobs and moved to Charleston, Kanawha County, WV, and quickly registered to vote there. I regularly vote; I do not believe I have missed an election in Kanawha County in 40 years.

3.    I received a Bachelor of Arts degree from Davidson College in 1975, and Juris Doctor degree from Washington & Lee University in 1978.

4.    I have been an active participant in political, civic, and environmental events in West Virginia since 1979, when I was part of the Monongahela Alliance for Community Protection in Morgantown. I have been a canvasser and door-knocker in both national and local political campaigns everywhere I have lived.

5. I began supporting West Virginia Citizen Action Group's (CAG's) work as part of its successful 1982 campaign against Governor Jay Rockefeller's Road Bond Amendment. I have been an active CAG member and a regular financial contributor ever since. During my decades of work with and support for CAG, I've seen the organization tackle issues important to me personally, and valuable to the functioning of our state, such as: organizing citizens to defeat an expensive road bond in the 1980s; the "garbage wars" culminating in a 1990s law protecting West Virginia from becoming a dumping ground for out-of-state trash; and supporting efforts in the early 2000s to increase voter participation in elections.

6. One of CAG's core functions, as stated on our website, is "Government accountability and transparency." During my time as a member, CAG has engaged in countless advocacy efforts for this purpose, from being a plaintiff in lawsuits relating to government accountability to being a conduit for citizens to organize and engage with the democratic process.

7. CAG engages West Virginians to be involved with the democratic process, to bring the will of the people to bear in creating the laws that empower and limit our state government in serving our people. CAG expends resources and time to support particular bills in our state legislature and encourage other West Virginians to do so as well.

8. Because I believe deeply in CAG's mission, and because I have seen the impact that the organization has on the State, I am a substantial donor, and I believe CAG's work is worth doing, and I financially support that work to the extent that I am able.

9. I am a retired attorney, having practiced law for 42 years in West Virginia. In that capacity, I believe that the rule of law is degraded when government officials ignore or violate the laws. For the low-income clients that I served, the law applied to their actions, constrained their behavior, and even minor violations could result in substantial adverse impacts on their lives. But

2

adherence to the law must apply to everyone, high or low, wealthy or poor, powerful or powerless, and especially those elected to lead. I fully support Secretary of State Warner's refusal to disclose confidential voter file information to this Administration consistent with West Virginia law.

10. I understand that the United States Department of Justice has filed a lawsuit against the West Virginia Secretary of State, seeking West Virginia's complete, non-public voter registration file, including voters' driving license numbers, dates of birth, and partial social security numbers.

11. I object to, and am deeply concerned by, the Department of Justice's attempt to compel the production of this sensitive data.

12. First, I am concerned about the security of my own personal information. I am aware of how sophisticated modern data-collection and aggregation tools have become, and the risks such tools pose to the privacy of West Virginia residents. I am concerned about similar risks if this data is transferred to the federal government, including the possibility of unauthorized access, misuse, or breach. My concern about unauthorized access, misuse, or breach has only been heightened by media reports indicating an increase in these risks under the current administration. For these reasons, I object to my sensitive personal data being made available to the federal government.

13. Second, I am concerned that the federal government's efforts to compel and obtain this data will discourage certain populations of West Virginians from participating in the electoral process, including naturalized American citizens, those impacted by domestic violence, victims of identity theft, individuals who hold strong privacy concerns regarding government intrusion, and individuals who seek to live independently and with minimal interaction with government institutions.

14. In the 1980s I provided temporary shelter to, and became close with, a family of refugees from the Bosnian war. They were former residents of Sarajevo who fled bombing, snipers, and ethnic cleansing. I was honored to attend their naturalization ceremony. Today, their son is a police officer in the City of Charleston, and their daughter is a federal Transportation Security Administration Agent. Part of what they cherished in America was freedom from pervasive surveillance and monitoring. I am concerned about the impact of the Plaintiff's efforts to gather data will have on these and similar individuals.

15. Throughout my 42-year career as a Legal Aid lawyer, I represented hundreds of domestic violence victims seeking safety and protection. This frequently included a heightened need to keep their information private and inaccessible to their abuser. In one case my office represented a woman whose abuser, nearing the end of his multi-year prison sentence, began sending her death threats. We obtained a special court order preventing public records custodians from revealing her contact information or whereabouts to her abuser. Here too, I am concerned about the impact Plaintiff's efforts will have on individuals like my clients who have a heightened need to maintain their privacy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on March 20, 2026

Bruce Perrone

4