**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

Case No. 2:26-cv-00156

KRIS WARNER, in his Official Capacity as
WEST VIRGINIA SECRETARY OF STATE,

*Defendant*.

**MEMORANDUM OF LAW IN SUPPORT OF WEST VIRGINIA CITIZEN ACTION
GROUP'S MOTION TO INTERVENE AS DEFENDANT**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

    I.    Background and Procedural Posture ............................................................2

        A. Factual Background ............................................................................2

        B. Legal Background ..............................................................................4

        C. Nationwide Context ..........................................................................5

    II.   West Virginia Citizen Action Group ..........................................................7

LEGAL STANDARD .......................................................................................................8

ARGUMENT ....................................................................................................................9

    I.    CAG is entitled to intervene as of right under Rule 24(a)(2) .....................9

        A. The motion is timely .......................................................................10

        B. CAG and its members have significantly protectable interests, including data privacy and the right to vote, related to this litigation ...........................................10

        C. The litigation will impact CAG's interests ............................................12

        D. CAG's interests are not adequately represented by the current parties .................13

    II.   In the alternative, CAG should be permitted to intervene under Rule 24(b) ...............16

CONCLUSION...............................................................................................................18

**INTRODUCTION**

The federal government is engaged in an unprecedented effort to collect sensitive voter data from almost every state in the country. West Virginia is one of 29 states, plus the District of Columbia, that Plaintiff has sued for refusing to produce unredacted voter rolls, including driver's license numbers and social security numbers.[1] Although Plaintiff cites three statutes to support its demand—the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA), and Title III of the Civil Rights Act of 1960 (CRA)—it brings a claim only under the CRA. But the CRA does not authorize Plaintiff's demand for West Virginia's unredacted voter file. It requires the Attorney General to provide both the basis and the purpose for seeking voter data, and the Department of Justice (DOJ) has done neither, offering instead a vague claim that it wishes to ensure West Virginia's compliance with the NVRA and HAVA. These lawsuits, however, are not targeted investigations into specific potential violations of the law. Rather, they are a sweeping, extraordinary, and anomalous effort to collect state voter data without regard for state and federal privacy protections, or the state's constitutional primacy in election administration.

Proposed Intervenor-Defendant West Virginia Citizen Action Group (CAG) is one of the oldest and largest nonpartisan nonprofit advocacy organizations in West Virginia, working towards better public policy, strong individual rights, a clean environment, and a stronger democracy. CAG works to inform and mobilize people across the state and represents thousands of members across West Virginia whose personal information may be unlawfully shared with the federal government depending on the outcome of this litigation. Because CAG's interests are

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Aug. 28, 2025) (last updated Mar. 10, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

1

directly impacted by this litigation, CAG has a right to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, CAG seeks permissive intervention under Rule 24(b)(1).

## BACKGROUND

### I.    Background and Procedural Posture

This case, like the others playing out across the country, is about the federal government's attempt to amass sensitive data on millions of Americans to build a national voter registration database that can be weaponized to exert political control over elections.

### A. Factual Background

In the summer and fall of 2025, Plaintiff sent letters to election officials in dozens of states, including West Virginia, demanding the production of their statewide voter registration lists, including sensitive information that is not part of the public voter file.[2] DOJ wrote to Secretary of State Warner on September 8, 2025, demanding an electronic copy of West Virginia's statewide voter registration list containing "all fields," which "include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." Complaint, ECF No. 1 ¶¶ 20-22; Ex. B, Sep. 8, 2026 Letter.

Tellingly, the Complaint refers to an August 14 letter that does not appear to exist. Compl. ¶ 23. DOJ did, however, send an identical letter to numerous other states on August 14. *See* Complaint ¶¶ 42-44, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Sep. 25, 2025), ECF No. 1; Complaint ¶¶ 45-47, *United States v. Board of Elections of the State of New York*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Sep. 25, 2025), ECF No. 1. This is not a mere scrivener's

---

[2] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; *see also* Compl. ¶ 20.

error. Rather, it is an unsurprising result of Plaintiff's decision to file nearly identical complaints in dozens of states, without an individualized basis for any of those lawsuits.

The September 8 letter that Plaintiff sent invoked the CRA, the NVRA, and HAVA. Compl. ¶ 21-23. On September 22, 2025, Secretary Warner sent a letter "refusing to provide the requested" voter registration list "for all fields." *Id.* ¶ 24; Ex. C, Sep. 22, 2025 Letter. On December 10 and 19, 2025, and on January 13, 2026, DOJ "sent follow-up emails renewing the request for a copy of West Virginia's" voter registration list with "all fields." *Id.* ¶ 25. On February 11, 2026, Secretary Warner sent DOJ "a letter explaining that [his office] would not provide West Virginia's" voter registration list "with all fields." *Id.* ¶ 26; *see also* Ex. D, Feb. 11, 2026 Letter. In his February 11 letter, Secretary Warner stated that "the alleged purpose of the DOJ's request is to run West Virginia's entire voter list through the Systematic Alien Verification Entitlements ("SAVE") database," but "as we discussed, the WVSOS is a registered and recently approved user of the SAVE database." *See* Ex. D at 2, Feb. 11, 2026 Letter. "Despite this fact, and despite our offer to work collaboratively with the DOJ to utilize the SAVE database within the confines of federal and state law, the DOJ has restated its position that, under the CRA, it is entitled to the unredacted voter information of West Virginia citizens." *Id.* But "West Virginia law protects the sensitive personally identifiable information of its voters, and the Secretary of State takes seriously his responsibility to safeguard such information from unauthorized disclosure." *Id.* Secretary Warner offered to work with DOJ to "reach an amicable resolution within the limits of state and federal law" and "to provide a detailed narrative of our voter list maintenance procedures upon request." *Id.*

3

**B. Legal Background**

Plaintiff filed this suit on February 26, 2026, alleging only one claim: that Secretary Warner has violated the CRA by not providing West Virginia's unredacted voter list. Compl. But the CRA does not authorize baseless, sweeping demands for entire non-public voter registration lists, nor does it authorize this Court to compel such production without a proper showing of why it is entitled to the data. Rather, the CRA permits the Attorney General to demand access to voter records in writing with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Plaintiff's letters and Complaint fail to satisfy both the "basis" and "purpose" requirements for the demand for highly sensitive voter data.

Plaintiff claims no basis for its request and argues that it requires access to this data "to ascertain compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 22. But the NVRA and HAVA charge states—not the federal government—with maintaining voter registration lists and removing ineligible voters from the rolls. *See* 52 U.S.C. § 20507(a); 52 U.S.C. § 21083(a)(1)-(2); H.R. Rep. No. 107-329, pt. 1, at 31-32 (2001) (emphasizing the importance of administering elections at the state and local level); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* Ex. D at 2, Feb. 11, 2026 Letter. Neither the NVRA nor HAVA make the federal government responsible for compiling a national voter registration list or performing list maintenance. *Id.*

As such, DOJ's purported reasons for seeking sensitive data about hundreds of thousands of West Virginia voters fall short of the CRA's statutory requirements. Even if DOJ's demand for a "copy," Compl. ¶ 25, of West Virginia's unredacted voter registration list was fulfilled, that copy would only give a snapshot of West Virginia's list, which does not offer the type of information necessary for DOJ to assess the state's general program of list maintenance. Nor would it provide

4

enough information for Plaintiff to determine whether the state requested certain identifying information at the time of registration.

**C. Nationwide Context**

Plaintiff's plans for this sensitive data appear nowhere in the Complaint, but have emerged from other sources, including the Memorandum of Understanding (MOU) DOJ has signed with at least two states.[3] The MOU reflects DOJ's attempted takeover of states' exclusive authority to maintain their voter rolls and determine who should be removed from the rolls due to ineligibility. It provides that DOJ will conduct an "analysis and assessment" of the state's voter rolls and instruct the state to remove voters DOJ identifies.[4] DOJ's public statements confirm its goal is not to review list maintenance procedures, but to expand federal control over elections and target voters for removal. A recent press release stated: "At this Department of Justice, we will not permit states to jeopardize the integrity and effectiveness of elections by refusing to abide by our federal elections laws. If states will not fulfill their duty to protect the integrity of the ballot, we will."[5] This federal takeover of list maintenance would run contrary to constitutional and statutory frameworks for

---

[3] *See* "Confidential Memorandum of Understanding" executed with Texas, https://www.brennancenter.org/media/15082/download/texas_12.09.2025_executed-mou.pdf?inline=1; "Confidential Memorandum of Understanding" executed with Alaska, https://www.brennancenter.org/media/15064/download/alaska_12.22.2025_executed-mou.pdf?inline=1. DOJ has apparently asked other states to sign the same MOU. *See* Proposed "Confidential Memorandum of Understanding" sent to Colorado, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/; *see also* Jonathan Shorman, *Trumps's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.

[4] The MOU provides that removals must take place within 45 days of notification from DOJ, which—for any voters flagged for removal based on having moved—would violate Section 8(d) of the NVRA, 52 U.S.C. § 20507(d).

[5] Press Release, U.S. Dep't of Just., Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws (Dec. 12, 2025), https://perma.cc/2R3L-YZ5X.

elections, which provide that Congress and the states make the law, and state and local governments run elections, including registering voters and maintaining voter rolls.[6]

The statutes the Complaint relies upon have nothing to do with several other apparent purposes for the vast data-collection exercise that Plaintiff is undertaking. According to one DOJ lawyer, Civil Rights Division leadership demanded that DOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem.[7] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://perma.cc/L6W3-THMY. Moreover, Plaintiff's demands for private voter data persist despite reports that efforts to use the data for voter verification have resulted in erroneous removals of eligible U.S. citizens from state voter rolls. Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025), https://perma.cc/7DDE-T9ZV. The Department of Homeland Security confirmed that it is receiving information from DOJ, and the information exchange is being done "to 'scrub aliens from voter rolls.'"[8] Plaintiff's efforts in this case, and the 29 similar cases against other states and Washington, D.C., are part of a larger program by the federal government to gather and use vast swaths of data, notwithstanding laws to the contrary. *See Ctr. for Taxpayer Rts. v. Internal Revenue*

---

[6] Further, the proposed MOU does not limit DOJ's ability to use states' data and expressly permits DOJ to provide the data to contractors. Texas MOU at 6-7.

[7] To the extent that DOJ is not engaging in an investigation, as it purports to be doing to ensure compliance with the NVRA and HAVA, and is instead engaging in data collection for any other purpose, DOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

[8] Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Colorado Newsline (Sep. 15, 2025), https://coloradonewsline.com/2025/09/15/repub/doj-voter-roll-homeland-security/.

*Serv.*, No. 1:25-cv-0457-CKK, 2025 WL 3251044, at \*2 (D.D.C. Nov. 21, 2025) (staying IRS policy of data-sharing with Immigration and Customs Enforcement); *see also* Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

## II.    West Virginia Citizen Action Group

CAG is a nonpartisan, nonprofit organization that mobilizes West Virginians to protect and strengthen democracy in the state. Ex. E ¶ 3 ("CAG Decl."). CAG has more than 350 members. CAG Decl. ¶ 4. CAG members are people who have donated at least $15 to CAG within the calendar year. CAG Decl. ¶ 4. CAG also has approximately 150 volunteers who carry out CAG's initiatives across West Virginia, some of whom are also members. CAG Decl. ¶ 4. CAG and its members pursue a shared goal of making democracy accessible to all eligible West Virginia voters. CAG Decl. ¶ 6. CAG regularly informs its members of legislation from the West Virginia House and Senate that could impact voting rights. CAG Decl. ¶¶ 8-9. CAG and its members regularly participate in advocacy days at the West Virginia Capitol to discuss important voting rights legislation with legislators and advocate for CAG's pro-democracy views. CAG Decl. ¶ 9.

CAG has worked to protect, preserve, and expand the voting rights of its members and all West Virginians. At the state level, CAG was active in opposing House Bill 3016, which required voters to present voter identification to exercise their right to vote. CAG Decl. ¶ 10. CAG submitted testimony to the legislative committees considering House Bill 3016 and sent action alerts to members about the Bill. CAG Decl. ¶ 10. At the national level, CAG has been active in advocating for the pro-voter John R. Lewis Voting Rights Advancement Act and opposing the SAVE Act and the America First Legal Foundation petition requesting that the Election Assistance

Commission add documentary proof of citizenship to the federal voter registration form. CAG Decl. ¶ 10.

The vast majority of CAG's members and volunteers are registered voters whose personal information is at stake in this case. CAG Decl. ¶ 11. CAG's membership includes those who are concerned about, and object to, their full dates of birth, state driver's license numbers, non-driver photo ID numbers, or partial social security numbers being disclosed contrary to law. CAG Decl. ¶¶ 11-12. For example, CAG member Bruce Perrone objects to Plaintiff's collection of his information and fears it will disproportionately discourage certain eligible West Virginians from participating in the electoral process, including naturalized American citizens, those impacted by domestic violence, victims of identity theft, individuals who hold strong privacy concerns regarding government intrusion, and individuals who seek to live independently and with minimal interaction with government institutions. Ex. F ¶¶ 11-15 ("Perrone Decl.").

## LEGAL STANDARD

A nonparty is entitled to intervene in an action as a matter of right when: (1) the motion to intervene is timely filed; (2) the proposed intervenor has "an interest relating to" the subject matter of the action; (3) the proposed intervenor is "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [that] interest"; and (4) the proposed intervenor's interests are inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022).

The Fourth Circuit has held that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (reversing lower court's decision to deny intervention as of right). A "district court must permit" a party to intervene as of

8

right in ongoing litigation if the proposed intervenor meets the four criteria set forth by the Federal Rules. *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018).

Even if one is not entitled to intervene as a matter of right, this Court may still grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The Court's determination under Rule 24(b) is "necessarily committed to broad trial court discretion," *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013) (quoting *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 194 (4th Cir. 1982)). Like Rule 24(a), 24(b) is "to be liberally construed to dispose of as much of a controversy involving as many concerned persons as is consistent with due process and efficiency." *Dowdy v. City of Durham*, 689 F. Supp. 3d 143, 146 (M.D.N.C. 2023) (citing *Feller*, 802 F.2d at 729). To that end, permissive intervention is available to one who "has 'a claim or defense that shares with the main action a common question of law or fact.'" *Cawthorn v. Amalfi*, 35 F.4th 245, 255 (4th Cir. 2022) (quoting Fed. R. Civ. P. 24(b)(1)(B)).

## ARGUMENT

### I.       CAG is entitled to intervene as of right under Rule 24(a)(2).

CAG is entitled to intervene in this litigation because its motion is timely; the organization and its members have significant interests in the case; those interests will be impacted by the outcome; and no existing party adequately represents those interests. The Court should grant CAG's motion to intervene, just as federal courts in Maryland, Georgia, Vermont, Oregon, California, and Maine have granted similar motions to intervene in parallel cases. *See United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 2, 2026), ECF No. 38; *United States v. Raffensperger*, No. 1:26-cv-00485-ELR (N.D. Ga. Jan. 30, 2026), ECF No. 14; *United States v.*

*Copeland-Hanzas*, No. 2:25-cv-00903-mkl (D. Vt. Jan. 20, 2026), ECF No. 42; *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025); Minute Order, *United States v. Weber*, No. 2:25-cv-09149-MFW-MAR (C.D. Cal. Nov. 19, 2025), ECF No. 70; *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 49.

### A. The motion is timely.

CAG has timely filed its motion to intervene, while the litigation is in its earliest stages. "[D]istrict courts have wide discretion" in determining whether a motion is timely. *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 17 (S.D. W. Va. 2015). Factors courts consider include "(1) how far the suit has progressed prior to the motion; (2) the prejudice which delay might cause other parties; and (3) the reason for any tardiness in moving to intervene." *Id.*

CAG moves to intervene at the earliest point in the litigation before proof of service or any responsive pleadings. *See id.* (holding motion to intervene was timely when only a complaint and answer had been filed). Defendant's first responsive pleading has not yet been filed. As such, no prejudice in the form of delay will result to the existing parties if CAG's motion is granted. Federal district courts deciding similar motions in parallel cases have routinely granted motions to intervene brought on similar timelines. *See, e.g.*, *United States v. Copeland-Hanzas*, No. 2:25-cv-00903-mkl (D. Vt. Jan. 20, 2026), ECF No. 42 (granting motion to intervene filed twenty-three days after complaint was filed).

### B. CAG and its members have significantly protectable interests, including data privacy and the right to vote, related to this litigation.

This litigation is closely tied to CAG's organizational interests and the interests of its more than 350 members. Under Rule 24(a)(2), courts examine whether a proposed intervenor's interests are "significantly protectable." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). Here too, courts have recognized the interests of organizations committed to democracy and their members.

*See* Order, *United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 2, 2026), ECF No. 38 ("Proposed Intervenors have substantial interests in the case, including their interests in privacy and the unfettered right to vote").

CAG's members have interests that are directly related to the litigation and significantly protectable. First, CAG has a demonstrated stake in ensuring West Virginians register to vote and participate in elections. Second, CAG is interested in protecting West Virginians' data, including its own members' data. CAG members include registered West Virginia voters who risk having their sensitive personal data disclosed to Plaintiff without clarity about how the data will be used. Perrone Decl. ¶¶ 11-12. Members were required to submit this sensitive personal information to West Virginia to exercise their right to vote. CAG Decl. ¶¶ 11-12. CAG's members have a significant privacy interest in preventing the disclosure or unauthorized aggregation of their private data, an interest protected by West Virginia law. *See* Ex. D, Feb. 11, 2026 Letter. Further, CAG's members are deeply committed to civic engagement, and, like CAG, they fear West Virginians will be less likely to register to vote if their data are shared. *See* Perrone Decl. ¶¶ 13-15. As such, CAG's members' interests are directly related to this litigation because it implicates the proper use of their data and West Virginians' willingness and ability to register to vote and participate in elections.

CAG also has organizational interests that are directly related to this litigation, substantial, and legally protectable. CAG has a long-standing interest in civic participation, as demonstrated by its engagement in communities across West Virginia to register and educate voters. CAG Decl. ¶ 7. CAG has a vested interest in the appropriate and lawful handling of voter information. As part of its pro-democracy work, CAG encourages eligible West Virginia residents to register to vote and participate in elections. CAG Decl. ¶ 14. CAG is concerned that its efforts to encourage civic

11

participation will be frustrated if West Virginians' sensitive private information is disclosed to Plaintiff, particularly to be used for improper purposes. CAG Decl. ¶ 14. CAG is specifically concerned that West Virginia residents will be more hesitant to engage in the political process for fear that their data will be misused. CAG Decl. ¶ 14. Plaintiff's aggressive demands for voters' data and lack of legitimate explanations for its proposed use amplify these fears for CAG's members and make it difficult for CAG to fulfill its core mission. *See* CAG Decl. ¶¶ 11-14, 16. Perrone Decl. ¶¶ 11-15.

### C. The litigation will impact CAG's interests.

This litigation directly impacts CAG's organizational interests and the interests of its members. In evaluating this factor, courts consider whether an applicant for intervention has shown that it "'stand[s] to gain or lose by the direct legal operation' of a judgment in that action." *Ohio Valley Env't Coal., Inc.*, 313 F.R.D. at 18 (quoting *Teague*, 931 F.2d at 261). "To support a right to intervene the potential intervenor's interest in the dispute must be direct, rather than remote or contingent." *W. Va. Rivers Coal., Inc. v. Chemours Co. FC, LLC*, No. 2:24-cv-701, 2025 WL 1690146, at *5 (S.D. W. Va. June 16, 2025) (quoting *S.C. Coastal Conservation League v. Pruitt*, No. 2:18-cv-330-DCN, 2018 WL 2184395, at *8 (D.S.C. May 11, 2018)).

The disposition of this litigation will impact CAG's ability to protect its interests and those of its members in a manner that counsels in favor of intervention, like similar litigation across the country. For instance, in *United States v. Oregon*, a parallel case where Plaintiff sought unfettered access to Oregon's sensitive voter data, the court granted intervention under Rule 24(a)(2) to a nonprofit social welfare organization and registered voters because "the outcome of this litigation [would] directly affect the protectable privacy interests" they asserted. 2025 WL 3496571, at *1. So too here. Plaintiff seeks virtually unlimited access to West Virginia voters' data. If Plaintiff can

use this Court to compel West Virginia to deliver this level of access, CAG's interest in civic participation will be impaired, because West Virginia citizens will be less likely to register to vote for fear that their data will be released or used inappropriately beyond applicable federal- and state-law protections. CAG Decl. ¶ 14; Perrone Decl. ¶¶ 11-15; Ex. D, Feb. 11, 2026 Letter.

The resolution of this litigation will also impact CAG's members' abilities to protect their interests. Plaintiff is seeking access to these members' confidential personal information, which they provided to the State with the expectation that their privacy would be protected. Perrone Decl. ¶ 12. Plaintiff's mere access to the data will violate that expectation of privacy. Furthermore, CAG's members fear the use of their information for unknown or pretextual purposes. CAG Decl. ¶¶ 12-15. Finally, CAG's members are deeply committed to civic engagement, and, like CAG, they fear eligible West Virginians will be less likely to register to vote because of the possible disclosure of their data. CAG Decl. ¶¶ 7, 14; Perrone Decl. ¶¶ 4, 6-9.

### D.  CAG's interests are not adequately represented by the current parties.

CAG's interests are not adequately represented by any existing party in this litigation. The "burden of showing an inadequacy of representation is minimal." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Although the Fourth Circuit has endorsed a presumption of adequate representation when a member of the public seeks to intervene to defend a law alongside the government, the Supreme Court has observed that "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (quoting 7C Wright & Miller's Federal Practice and Procedure § 1909 (3d ed. 2022)). If that presumption arises, intervenors can overcome that presumption when they show that their

13

private interests are distinct from the government's representation of the public interests. *See, e.g.*, *Feller*, 802 F.2d at 729 (apple pickers could intervene on same side as government due to potential impacts on their wages); *JLS, Inc. v. Pub. Serv. Comm'n of W.V.*, 321 F. App'x 286, 289-91 (4th Cir. 2009) (holding that although intervenor had "no property rights at stake," it could intervene to protect against "the hurdles that it will face if" it was subjected to challenged authority).

The only existing defendant, Secretary Warner, does not adequately represent CAG's interests. The Maryland district court confirmed that state elections officials, like Secretary Warner, do not adequately represent voters' and pro-democracy groups' interests when it permitted private organizations representing voters to intervene as of right as defendants alongside the Maryland government. *See* Order, *United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 2, 2026), ECF No. 38. Secretary Warner has not filed a responsive pleading, so it is not yet known whether he and CAG share the same ultimate objective of preventing DOJ from accessing the voter data in the manner that DOJ seeks, or what arguments Secretary Warner may raise. Even assuming that Secretary Warner and CAG share the same ultimate objective of protecting voters' confidential information from disclosure, such that a presumption of adequate representation applies, CAG overcomes the presumption of adequate representation because Secretary Warner does not have the same incentive to raise factual and legal arguments necessary for CAG's adequate representation, and because Secretary Warner and CAG do not have the same interests in the outcome of the case. Secretary Warner and CAG differ in two ways.

*First*, CAG is comprised of individual members whose sensitive data could be turned over to Plaintiff without their consent as a result of this litigation, whereas Secretary Warner is a government official with possession of this data. Therefore, CAG and its members have a personal stake in the litigation that the Secretary of State does not. As the Supreme Court recognized in

14

*Berger*, where a proposed intervenor's interests are "similar to, but not identical with" those of an existing party, that similarity alone is not enough to presume adequate representation—particularly where, as here, the existing party is a government official whose role creates obligations that diverge from those of individuals whose personal data is at stake. 597 U.S. at 197.

This personal stake is similar to the private economic interests that intervenors had in *Stuart* and *JLS*, which counseled in favor of intervention on the same side as the government. Like those intervenors with private interests, CAG and its members fear that Defendant "could settle this case in a manner that could harm [their] interests." *JLS, Inc.*, 321 F. App'x at 291. The record already illustrates this risk: in his February 11 letter, Secretary Warner offered to "work collaboratively with DOJ" and to provide detail about list maintenance procedures—the considered position of an official who must maintain an ongoing federal relationship, not a party with the overriding interest of protecting voters' data. Ex. D, Feb. 11, 2026 Letter. The personal interests of CAG and its members are sufficient to justify intervention alongside Defendant because the State's interest, while important, is qualitatively different.

*Second*, Defendant has statutorily imposed objectives and obligations that diverge from those of CAG and its members. *See Berger*, 597 U.S. at 195. In this case, Defendant has an obligation to enforce HAVA and state laws governing list maintenance. And the NVRA instructs that Defendant must "balance competing objectives," including maintaining accurate voter rolls by removing ineligible voters, subject to procedural safeguards. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). CAG does not have to balance these objectives. In this way, CAG can "advance[] some significant legal points" that Defendant cannot, *JLS, Inc.*, 321 F. App'x at 291, because CAG seeks to participate in this litigation to protect West Virginia voters' personal data. *See supra* Argument I(B). Because CAG's interests are not adequately represented by the existing

15

parties, CAG should be permitted to intervene as of right so that it can protect the interests of itself and its members.[9]

## II.    In the alternative, CAG should be permitted to intervene under Rule 24(b).

Even if the Court finds that CAG does not have a right to intervene under Rule 24(a), it should nonetheless permit intervention under Rule 24(b) because CAG's timely motion to intervene includes "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). In determining whether to allow permissive intervention, courts may also consider whether such intervention will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 496 (M.D.N.C. 2017) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Whether to allow permissive intervention is within the sound discretion of the district court. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003).

CAG has defenses that share common questions of law and facts with existing claims. At issue in this litigation is DOJ's effort to gain sensitive data regarding hundreds of thousands of West Virginia voters, despite a lack of authorization in federal law, and despite state law

---

[9] CAG is aware that the West Virginia Alliance for Retired Americans (the Alliance) has sought to intervene as a defendant. ECF No. 5. Since these proposed intervenors are not yet parties, the Court should not alter its adequacy analysis under Rule 24(a). Fed. R. Civ. P. 24(a) ("unless *existing parties* adequately represent that interest") (emphasis added). Further, CAG's interests are distinct from those of the Alliance. The Alliance's mission is to "ensure social and economic justice . . . [for] retirees . . . after a full lifetime of work." John Case Decl. ¶ 5, ECF No. 4-2 ("Case Decl."). Most of its members are above the age of sixty. Case Decl. ¶ 4. CAG, by contrast, is not specifically devoted to advancing the interests of retirees but to protecting the interests of all West Virginians, including those who have the strongest interest in protecting their information from improper disclosure, such as domestic violence survivors, naturalized citizens, and victims of identity theft. CAG Decl. ¶ 4; Perrone Decl. ¶¶ 12-15.

safeguarding that precise information. *See supra* Argument I(D). That state law defense will unquestionably be shared with the main action, given that Secretary Warner specifically invoked state law protections in his February 11, 2026 letter to Defendant. *See* Ex. D, Feb. 11, 2026 Letter.

Nor will CAG's participation delay or prejudice the adjudication of the existing parties' rights. Because the case has barely begun, the instant motion (and CAG's entrance into the case) will not be disruptive. *See supra* Argument I(A). CAG's participation will not cause undue delay, and CAG will abide by any schedule or deadlines the Court establishes.

The additional factors that the Court may consider also counsel in favor of intervention. CAG will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Students for Fair Admissions Inc.*, 319 F.R.D. at 496. As a pro-democracy organization that is comprised of and represents the unique interests of West Virginia voters, CAG will contribute to the just and equitable adjudication of the legal questions at issue because it has significant interests in this case that are not currently represented. *See supra* Argument I(B), (D). And CAG's presence in the litigation will assist in the full development of underlying factual issues. Through its decades of experience working to safeguard West Virginia's democracy, previous work concerning elections and data privacy, and connection to over 350 individual members impacted by this litigation, CAG will help develop the factual record in a way unlike any existing party or proposed intervenor.

## CONCLUSION

For the reasons stated, this Court should grant CAG's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).[10]

April 2, 2026

Respectfully submitted,

/s/ Aubrey Sparks

| | |
|---|---|
| Aubrey Sparks (WV Bar No. 13469) | Brent Ferguson* |
| Robb Livingood (WV Bar No. 11974) | Daniel S. Lenz* |
| American Civil Liberties Union of | Sejal Jhaveri* |
| West Virginia Foundation | Renata O'Donnell* |
| P. O. Box 3952 | Kate Hamilton* |
| Charleston, WV 25339-3952 | Alexis Grady* |
| asparks@acluwv.org | Campaign Legal Center |
| | 1101 14th St. NW, Suite 400 |
| Adriel I. Cepeda Derieux* | Washington, DC 20005 |
| American Civil Liberties Union Foundation | Tel: (202) 736-2200 |
| 915 15th Street NW | Fax: (202) 736-2222 |
| Washington, DC 20005 | bferguson@campaignlegalcenter.org |
| (202) 457-0800 | dlenz@campaignlegalcenter.org |
| acepedaderieux@aclu.org | sjhaveri@campaignlegalcenter.org |
| | rodonnell@campaignlegalcenter.org |
| Theresa J. Lee* | khamilton@campaignlegalcenter.org |
| Sophia Lin Lakin* | agrady@campaignlegalcenter.org |
| American Civil Liberties Union Foundation | |
| 125 Broad Street, 18th Floor | |
| New York, NY 10004 | Maura Eileen O'Connor * |
| (212) 549-2500 | Justin Lam* |
| tlee@aclu.org | Brennan Center for Justice |
| slakin@aclu.org | at NYU School of Law |
| | 777 6th St. NW, Ste. 1100 |
| | Washington, DC 20001 |
| | Tel: (202) 249-7190 |
| | oconnore@brennan.law.nyu.edu |
| | lamju@brennan.law.nyu.edu |

---

[10] Should this Court determine intervention is not warranted, CAG respectfully requests permission to participate as a nonparty *amicus curiae*, including the opportunity to argue before the Court in any hearings.

18

*Pro Hac Vice Applications Forthcoming*

Counsel for Proposed Intervenor-Defendant West Virginia Citizen Action Group

19

## CERTIFICATE OF SERVICE

I, Aubrey Sparks, do hereby certify that on this April 2, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Date: April 2, 2026　　　　　　　　Signature : */s/ Aubrey Sparks*