# Exhibit 1

West Virginia Alliance for Retired Americans' Motion for Leave to File Response to the United States' Motion to Compel Federal Election Records

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No.: 2:26-cv-00156 |
| KRIS WARNER, in his Official Capacity as WEST VIRGINIA SECRETARY OF STATE, | |
| *Defendant*. | |

**WEST VIRGINIA ALLIANCE FOR RETIRED AMERICANS' PROPOSED RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO COMPEL FEDERAL ELECTION RECORDS**

**INTRODUCTION**

The Federal Rules of Civil Procedure govern and dictate the lifecycle of civil actions in federal court. After the filing of a civil complaint, a defendant may move to dismiss under Rule 12(b). If that motion is denied, the case proceeds to discovery, summary judgment, and trial (if necessary). At each stage, courts apply well-established standards to test the sufficiency of the claims and arguments before them, and the parties have the opportunity to build a record, ensuring the ordered and efficient resolution of disputes.

The Department of Justice ("DOJ") asks the Court to bypass that entire process and instead put the onus on the *Defendant* at the outset to resist a "Motion to Compel Federal Election Records Under the Civil Rights Act of 1960." Dkt. No. 15 at 1. Although the Federal Rules authorize "motions to compel" related to ongoing discovery, what DOJ requests is poles apart from that. Simply put, DOJ seeks to circumvent the Federal Rules and, at the very start of the case, compel the ultimate relief that it seeks in its complaint. And, in doing so, DOJ insists that the Court's inquiry is "severely limited," effectively asking only whether the defendant was "given reasonable notice" of the demand and if there is any genuine dispute that a demand was made. *See* Dkt. No. 15 at 2, 4–5.

DOJ claims this approach is authorized by Title III of the Civil Rights Act ("CRA"), but it is not. Title III provides only that district courts "shall have jurisdiction by appropriate process" to grant relief, 52 U.S.C. § 20705, and U.S. Supreme Court precedent makes clear that where—as is true of Title III—the statute does not expressly identify any other process, courts apply the Federal Rules and have a duty to consider whether a demand by the government is in fact properly made. *See United States v. Powell*, 379 U.S. 48, 57–58, 58 n.18 (1964). DOJ's contrary argument relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), a distinguishable 62-year-old out-of-circuit decision that is no longer good law even in the Fifth Circuit, having been superseded by *Powell*.

Finally, it is notable that, while DOJ has brought nearly identical claims in courts across the country, four have now granted motions to dismiss those cases. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789, (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Amore*, No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637, at *6 (D. R.I. Apr. 17, 2026). A fifth court denied DOJ's motion to compel, finding its demand was facially deficient under Title III, and dismissed the case. *United States v. Galvin*, No. 1:25-cv-13816-LTS, 2026 WL 972129, at *6 (D. Mass. Apr. 9, 2026).

And, indeed, although the procedural issues are dispositive in this case, DOJ is not entitled to the relief it requests for the additional reasons that it failed to state an appropriate basis and purpose for its demand as Title III of the CRA requires, and because interpreting Title III to reach the state voter registration list would lead to absurd results that cannot be reconciled with the statute's text or its history and context. In short, the motion to compel should be denied.

## BACKGROUND

DOJ filed this suit on February 26, 2026, seeking to compel the West Virginia Secretary of State to turn over West Virginia's full, unredacted statewide voter registration list. *See generally* Dkt. No. 1. DOJ brings a single claim alleging a violation of Title III of the CRA. *See* Dkt. No. 1 at 8–9 (Compl. ¶¶ 27–30). The West Virginia Alliance for Retired Americans moved to intervene on March 6, 2026, and reserved its right to file a Rule 12(b) motion should it be granted intervention. *See* Dkt. No. 5 at 10 n.9. More than a month after filing its complaint, DOJ filed a "Motion to Compel Federal Election Records Under the Civil Rights Act of 1960." Dkt. No. 14. In that motion, DOJ asks that the Court "[o]rder the Defendant to produce an electronic copy of

the West Virginia's [sic] statewide Voter Registration List," including information protected from disclosure under West Virginia law, such as social security numbers and driver's license numbers. Dkt. No. 14 at 2–3; *see also* W. Va. Code §3-2-30(a). In other words, DOJ asks this Court to skip straight to granting it the ultimate relief it seeks, notwithstanding the dispositive deficiencies in its demand.

ARGUMENT

DOJ's motion should be denied. The Federal Rules govern this claim, as they do all other civil actions. Nothing in Title III's text supports DOJ's contention that the CRA authorizes a "special statutory proceeding." Dkt. No. 2-1 at 3. But even if the Court were to reach the merits, the motion must be denied. The Court has the duty to conduct meaningful review of DOJ's demand, and that demand is improper, not least of all because it lacks a sufficient basis and purpose as required by the plain text of Title III and requests records not subject to that provision.

## I.    The Federal Rules govern DOJ's claims.

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none of the exceptions involve the CRA. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if, as DOJ argues, Title III demands could be characterized as subpoenas, they would still be subject to the Federal Rules, as none of the sources listed in Rule 81(a)(5) provides an exception for document requests under Title III.

3

In parallel proceedings brought by DOJ to attempt to obtain the unredacted voter files of other states, three federal courts have explicitly held that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *Weber*, 2026 WL 118807, at *8; *see* also *Oregon*, 2026 WL 318402 at *8; *Amore*, 2026 WL 1040637 at *3–4. Another court, *United States v. Benson*, likewise applied "the Rule 12(b)(6) standard to evaluate the United States' CRA claim" because DOJ filed "a traditional civil complaint," 2026 WL 362789, at *7.[1]

In fact, there is no basis for DOJ's demand for an immediate grant of the final relief it seeks, and its arguments to the contrary are without merit. Title III says only that district courts "shall have jurisdiction by appropriate process to compel the production" of the documents sought. 52 U.S.C. § 20705. Nowhere does it suggest that the "appropriate process" means anything other than the ordinary procedures federal courts use to resolve contested cases. *See Weber*, 2026 WL 118807, at *8 (exercising "appropriate process" by applying the Federal Rules). And, in *United States v. Powell*, the Supreme Court confirmed that, when a statute uses the language employed in Title III—granting jurisdiction to federal courts to compel production "by appropriate process," but not identifying a particular process—the process that applies is the ordinary process under the Federal Rules, *not* a special proceeding that circumvents those Rules. 379 U.S. at 52, 57–58.

In *Powell*, the Court considered language in 26 U.S.C. § 7604(a), which, exactly like Title III's text, conferred jurisdiction on district courts "by appropriate process to compel" compliance with federal demands for documents or testimony. 26 U.S.C. § 7604(a); *Powell*, 379 U.S. at 52. The Court held that, "[b]ecause [the statute] contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*," and

---

[1] As noted above, yet another court denied DOJ's motion to compel outright and dismissed the case. *Galvin*, 2026 WL 972129, at *6. That order does not address the parties' arguments about the appropriate procedural approach, and thus sheds no additional light on that question.

the court may "*inquire into the underlying reasons for the*" government's demand. *Id.* at 58 & n.18 (emphases added). "Accordingly," in a Title III case, "the Court applies the Federal Rules . . . as in any other case." *Oregon*, 2026 WL 318402, at *8; *see also Weber*, 2026 WL 118807, at *8; *Amore*, 2026 WL 1040637 at *3–4. DOJ cites to *Donaldson v. United States*, 400 U.S. 517 (1971), and *Becker v. United States*, 451 U.S. 1306 (1981), but neither undercuts that conclusion; *Donaldson* reaffirmed that "[t]he Civil Rules, of course, do have an application to a summons proceeding," 400 U.S. at 528, and *Becker* reaffirmed that "the Federal Rules apply" in the administrative subpoena context, 451 U.S. at 1307–08.

In the end, DOJ relies almost exclusively on a decades-old, out-of-circuit case, in which the Fifth Circuit described a Title III action as a "special statutory proceeding" which allowed for minimal judicial involvement. *Lynd*, 306 F.2d at 225–26; *see also* Dkt. No. 15 at 11 (relying on same). But *Lynd* was decided two years before *Powell*, which held that the same statutory language required a process governed by the Federal Rules. *See Powell*, 379 U.S. at 57–58. "The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd.*" *Oregon*, 2026 WL 318402, at *8; *see also Amore*, 2026 WL 1040637 at *3–4. *Lynd* was never binding on this Court, and in light of *Powell*, it has not been good law for decades, even in the Fifth Circuit. *See, e.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010), *aff'd*, 565 U.S. 134 (2012)).[2]

---

[2] DOJ's citations to *In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) ("*Coleman I*"), and *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ("*Coleman II*"), *see* Dkt. No. 15 at 1, 3, 9, 11, fail to support its motion for the same reason. Each decision relied entirely on *Lynd* for its analysis and conclusion, *see Coleman I*, 208 F. Supp at 200, *Coleman II*, 313 F.2d at 868; and each decision is, like *Lynd*, superseded by *Powell*.

## II.  The Court must conduct meaningful review of DOJ's demand.

DOJ's argument that the Court's authority to review DOJ's demand under Title III of the CRA is "severely limited," Dkt. No. 15 at 2, is also without merit. In making this argument, DOJ again relies on *Lynd*, *see, e.g.*, *id.* at 2, 3, 11–12, but the Supreme Court rejected this conclusion as well in *Powell*. *Powell* held that the government must show that its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose" in order to invoke the powers of a federal court to enforce a document demand. 379 U.S. at 57. The Court explained: "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. "[A]n abuse would take place if the [demand] had been issued for an improper purpose." *Id.*

Courts regularly engage in meaningful review of government document requests issued under a variety of statutory schemes. *See, e.g.*, *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, because agencies are "not afforded unfettered authority to cast about for potential wrongdoing" citation modified); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *United States v. Zack*, 521 F.2d 1366, 1368–69 (9th Cir. 1975) (considering whether agency issued summons for an improper purpose); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"); *see also United States v. Millman*, 822 F.2d 305, 308–09 (2d Cir. 1987) (holding a summons recipient can successfully

6

challenge a government document request by "showing bad faith on the part of the [agency]").

Thus, this Court has a duty to evaluate "the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8. Other courts have recognized as much by rejecting DOJ's parallel claims against other states under the Federal Rules—and holding that DOJ's CRA claim cannot survive its mandatory encounter with Rule 12. *See, e.g.*, *Weber*, 2026 WL 118807, at *20; *Oregon*, 2026 WL 318402 at *10, *12; *Amore*, 2026 WL 1040637 at *4–5. Many more have proceeded with Rule 12 briefing, with motions to dismiss fully briefed in DOJ's parallel lawsuits in Maine, New York, Minnesota, New Mexico, Nevada, Maryland, Delaware, Vermont, and Georgia, and briefing ongoing in several other States.[3] This Court should similarly conclude that the Federal Rules govern here, deny DOJ's motion to compel on those grounds, and proceed to adjudicate this matter in accordance with the Federal Rules.

## III.    DOJ has failed to state an appropriate basis and purpose for its demand.

Alternatively, the Court may proceed as the Massachusetts court did in *Galvin* and deny the motion to compel outright, because the plain text of Title III explicitly requires that any demand

---

[3] *See, e.g.*, Scheduling Order, *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Nov. 21, 2025), Dkt. No. 38; Reply Mem. Supp. of Mot. Dismiss & in Opp'n to Cross-Mot. Compel, *United States v. Bd. of Elections*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Jan. 20, 2026), Dkt. No. 86; Reply Mem. Supp. Mot. Dismiss, *United States v. Simon*, 0:25-cv-03761-KMM-EMB (D. Minn. Feb. 6, 2026), Dkt. No. 114; Notice of Completion of Briefing, *United States v. Toulouse Oliver*, 1:25-cv-01193-JCH-JFR (D.N.M. Feb. 10, 2026), Dkt. No. 79; Reply Supp. Mot. Dismiss, *United States v. Aguilar*, 3:25-cv-00728-ART-CLB (D. Nev. Feb. 18, 2026), Dkt. No. 55; Reply Supp. Mot. Dismiss, *United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 27, 2026), Dkt. No. 59; Reply Supp. Mot. Dismiss, *United States v. Albence*, No. 1:25-cv-01453-RGA (D. Del. Mar. 2, 2026), Dkt. No. 61; Reply Mem. Supp. Mot. Dismiss, *United States v. Copeland Hanzas*, No. 2:25-cv-00903-MKL (D. Vt. Mar. 3, 2026), Dkt. No. 65; Reply Supp. Mot. Dismiss, *United States v. Raffensperger*, No. 1:26-cv-485-ELR (N.D. Ga. Mar. 5, 2026), Dkt. No. 70; Reply Mem. Supp. Mot. Dismiss, *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Mar. 13, 2026), Dkt. No. 76.

7

for records under its authority "shall contain a statement of the basis *and* the purpose therefor," 52 U.S.C. § 20703 (emphasis added), and DOJ has failed to assert a basis for its demand of West Virginia at all, and its purpose is not an appropriate one under Title III.

Title III's basis and purpose requirement "is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9; *see also Oregon*, 2026 WL 318402, at *9; *Amore*, 2026 WL 1040637 at *5–6; *Galvin*, 2026 WL 972129, at *6 (denying DOJ's motion to compel and dismissing the complaint because DOJ failed to state any basis for its demand as required by Title III of the CRA). A "basis" refers to "specific, articulable facts pointing to the violation of federal law," and "[t]he purpose of a records request is the rationale for the request." *Weber*, 2026 WL 118807, at *9; *see also Amore*, 2026 WL 1040637 at *5–6. Because DOJ failed to state any basis for its demand and because its stated purpose is improper under Title III, its motion must be dismissed.

DOJ's demand to West Virginia—set forth in its September 8 letter—states no "basis" at all. DOJ fails to identify any "conduct[] it believes[] constitute[d] an alleged violation" of federal law. *Source for Pub. Data*, 903 F.3d at 458–59; *see also* Dkt. No. 14-2. That omission alone is fatal. Courts do not enforce agencies' demands when they fail to "comply with statutory requirements." *Source for Pub. Data*, 903 F.3d at 460; *see also, e.g.*, *ACICS*, 854 F.3d at 689 (same). And courts considering parallel cases by DOJ against other states have dismissed its complaints for this same reason. *See Galvin*, 2026 WL 972129, at *4–6 (denying DOJ's motion to compel and dismissing its complaint because DOJ "identifie[d] no requirements of federal law with which [the state] had, or was suspected to have, failed to comply"); *Oregon*, 2026 WL 318402, at *9 (dismissing DOJ's complaint in part because its demand did not include "a factual basis for investigating a violation of a federal statute"); *Weber*, 2026 WL 118807, at *9 (same);

*Amore*, 2026 WL 1040637 at \*5–6 (same).

DOJ argues that "the basis for [its] demand is Title III of the CRA," or, alternatively, that it needed West Virginia's voter registration list to "assess [the State's] compliance with the statewide [voter registration list] maintenance provisions of the" NVRA. Dkt. No. 15 at 9 (citation omitted). But as the district court in *Galvin* recently concluded, each of these bases are "foreclosed by the statutory text." *Galvin*, 2026 WL 972129, at \*5. That court correctly concluded that Title III of the CRA is the "legal authority under which the Attorney General made the demand" rather than "the foundation in fact or evidence for the demand" and it therefore could not serve as the basis for the demand. *Id.*; *see also Amore*, 2026 WL 1040637 at  \*5 (same). And DOJ's second proffered basis—that it needed the voter registration list to assess West Virginia's compliance with the NVRA's list maintenance procedures simply restates the alleged purpose of the demand. But recognizing DOJ's alleged need to assess the state's compliance with the NVRA as the *basis* for its request "would collapse 'the basis' into 'the purpose,' rendering a statutory phrase superfluous." *Galvin*, 2026 WL 972129, at \*5; *see also In re Wright*, 826 F.3d 774, 781 (4th Cir. 2016) ("[I]t is well-settled that 'courts should disfavor interpretations of statutes that render language superfluous.'").

DOJ also fails to articulate a valid purpose for its demand under Title III. Its stated purpose, "to ascertain West Virginia's compliance with the list maintenance requirements of the NVRA and HAVA," Dkt. No. 14-2 at 2, is not a proper purpose under Title III. "Title III was not passed as a tool for NVRA compliance." *Weber*, 2026 WL 118807, at \*9. Title III authorizes DOJ to enforce federal voting protections—not to supervise state list-maintenance procedures, *see, e.g.*, *Amore*, 2026 WL 1040637 at \*6—and DOJ cannot satisfy Title III's requirements by reciting a purpose untethered from the authority that Congress conferred. As the *Oregon* court explained, "[i]f *any*

9

purpose—regardless of its relationship to the purposes of the statute itself—would suffice," then the CRA's express statutory requirement that any demand for records under its authority must contain a statement of the basis *and* the purpose therefor "would serve no function." 2026 WL 318402, at *9 (emphasis in original). "Reading Title III's text within its larger statutory and historical context, and consistent with the case law and legislative history," the court thus found that "the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." *Id.* at *10; *see also Weber*, 2026 WL 118807, at *9 (finding DOJ's stated purpose, evaluating "compliance with the NVRA," "outside of the scope of what Congress intended Title III to be used for"); *Amore*, 2026 WL 1040637 at *6 (same). In other contexts, courts have likewise rejected investigative demands premised on purposes beyond the statute's grant of authority. *See, e.g.*, *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 577, 580 (E.D. Pa., 2025) (striking DOJ subpoena seeking information that had "no relevance to the investigation Congress permitted or to the investigation [DOJ] tells the world it is pursuing"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237 (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026).

DOJ points to the court's conclusion in *Benson* that "the CRA does not allow courts to evaluate the substance of the DOJ's purported basis and purpose," 2026 WL 362789, at *8, but that court relied on *Lynd* for that conclusion, *see id*., which, as discussed *supra* Section I, has been overruled by *Powell*. DOJ not only fails to properly grapple with *Powell*, it ignores the vastly different context in which *Lynd* (and similar cases from the South in the early 1960s) were decided, as well as the content of DOJ's demands there.

In *Lynd*, DOJ had a clear basis for its investigation, and its purpose was plainly proper

10

under Title III. DOJ demanded voter records from targeted jurisdictions in Mississippi and Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [those] jurisdiction[s]." 306 F.2d at 229 n.6. That was undeniably a valid basis under Title III because there was no serious question that DOJ had a reason to suspect racial discrimination in voting in these localities, where it was clear that Black residents had overwhelmingly been excluded from the voter rolls. *See, e.g.*, *U.S. v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected"); *see also Amore*, 2026 WL 1040637, at *5 (discussing *Lynd*).

There was also no dispute as to whether the purpose underlying the demand in *Lynd* was proper, as Title III's "clearest purpose" is to permit investigations "concerning infringement or denial of . . . voting rights." *Lynd*, 306 F.2d at 228; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *Weber*, 2026 WL 118807, at *8 ("The purpose of Title III is to detect voting-related racial discrimination."); *Oregon*, 2026 WL 318402, at *10 (the purpose of a Title III demand "must relate to . . . investigating violations of individuals' voting rights."); *see also* Hearings, 86 Cong. 700 (statement of Rep. William M. McCulloch, a principal drafter of Title III) (stating that the "purpose of Title III" is to preserve records for cases where "reasonable cause is thought to exist that any person qualified to vote has been improperly denied that right"). Indeed, even the court in *Lynd* made clear that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would

11

need to adjudicate that issue. 306 F. 2d at 226.

*Lynd* also emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231. Here, in contrast, the *only* information in dispute is highly confidential voter information. In its September 22, 2025 letter, West Virginia offered to provide to DOJ its voter file with the private information that is protected by state law redacted. *See* Dkt. No. 14-3 at 2 (offering a list subject to state law limitations, which "expressly prohibit[] disclosure of a registrant's telephone number, email address, Social Security number, driver's license number, or nonoperator's identification number"). DOJ did not accept a redacted list. It brought this suit instead. Thus, on that basis too, this case is distinguishable from *Lynd*.

Lastly, even if the purpose of the demand were germane, there is significant evidence that DOJ's stated purpose is not its true purpose. In the context of a government demand, "the dispositive question . . . is whether the [agency] is pursuing the authorized purposes in good faith." *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995) (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317–18 (1978)). A "request grounded in pretext cannot be made in good faith." *United States v. Adams*, 777 F. Supp. 3d 185, 232 (S.D.N.Y. 2025).

Here, DOJ says that it seeks the information to assess West Virginia's compliance with HAVA and the NVRA, but that information is not necessary for that purpose, as Congress itself concluded. Not only does the NVRA include its own disclosure provision, 42 U.S.C. § 1973gg-6(i)(1) (transferred to 52 U.S.C. § 20507), the Fourth Circuit has held that provision does not require disclosure of sensitive information like that which DOJ demands here. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). Further, the NVRA and HAVA grant states wide discretion in list maintenance by design: State efforts under the NVRA

12

must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State." *Id.* § 21085. If assessing compliance with the NVRA or HAVA were in fact DOJ's purpose, it could make use of the NVRA and HAVA enforcement mechanisms that Congress made available to it. *See* 52 U.S.C §§ 20510, 21111.[4]

Second, DOJ's justification for demanding the information it seeks in these cases has repeatedly shifted, strongly suggesting that its stated purpose is pretextual. When DOJ filed its first wave of these lawsuits in September 2025, it asserted claims under Title III, NVRA, and HAVA.[5] Beginning in December, however, in the face of multiple courts concluding that neither NVRA nor HAVA supported its demand, DOJ abandoned those claims and proceeded to file nearly two dozen cases across the country seeking relief solely under Title III, as it has done here.[6]

---

[4] For similar reasons, West Virginia's full unredacted voter list would be neither helpful nor necessary for the purpose of assessing the State's compliance with its list-maintenance obligations, because a static snapshot of the unredacted voter registration list cannot tell DOJ anything about the list maintenance *procedures* the State undertook. *See Weber*, 2026 WL 118807, at *9 ("[E]ven if compliance with the NVRA was a valid purpose, the DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA[.]"). The possible existence of ineligible voters on the rolls on a particular date—for example, those who may have recently moved, or are recently deceased, says little about the state's list-maintenance procedures.

[5] *See* Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections*, No. 1:25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 2:25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[6] *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-1193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 12, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 1:25-cv-04403 (D.D.C. Dec.

13

Then, when appealing from the summary dismissals of DOJ's claims under Title III in California, Oregon, and Michigan, DOJ pivoted yet again, first asserting that states' voter files are needed to facilitate the removal of *noncitizens* from the voters' rolls,[7] and then abandoning that argument in their merits briefing.[8]

Third, in case filings, DOJ has denied that it intends to create a national database or a "national voter list." Mem. in Opp. Mot. Dismiss at 22, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 1, 2026), ECF No. 102. But other courts have questioned these representations because of DOJ's and the Administration's statements and conduct outside of the courtroom. *See Weber*, 2026 WL 118807, at *10 ("Representations by the DOJ itself show that their requests to states for voter roll data go beyond their purported compliance check with the NVRA and into the territory of comprehensive data collection."); *Oregon*, 2026 WL 318402, at *11 ("Plaintiff has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists."). Then, on March 31, 2026, President Trump issued an Executive Order titled "Ensuring Citizenship Verification and Integrity in Federal Elections,"

---

18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 3:26-cv-00042 (E.D.V.A. Jan. 16, 2026); Compl., *United States v. Ziriax*, No. 5:26-cv-00361 (W.D. Okla. Feb. 26, 2026); Compl., *United States v. Henderson*, No. 2:26-cv-00166 (D. Utah Feb. 26, 2026); Compl., *United States v. Warner*, No. 2:26-cv-00156 (S.D. W. Va. Feb. 26, 2026); Compl., *United States v. Caldwell*, No. 3:26-cv-2025-ZNQ-JTQ (D.N.J. Feb. 26, 2026); *see also* Compl. at 8–9.

[7] *See* DOJ Mot. Expedite Appeal at 2, *United States v. Weber*, No. 26-1232 (9th Cir. Mar. 3, 2026); DOJ Mot. Expedite Appeal at 2, 7, 15, *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026); DOJ Mot. Expedite Appeal at 3, 9, 16, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026).

[8] *See generally* DOJ Br., *United States v. Weber*, No. 26-1232 (9th Cir. Mar. 18, 2026); DOJ Br. *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 18, 2026); DOJ Br., *United States v. Benson*, No. 26-1225 (6th Cir. Mar. 24, 2026).

14

which directs the Secretary of Homeland Security to compile "State Citizenship Lists" of "confirmed" U.S. citizens who are eligible voters in each state and directs the Postal Service not to transmit ballots from any person not on those lists.[9] It seems implausible that DOJ's efforts here (and in the 29 similar cases it is currently litigating) would not be used to build these lists. At the very least, these are questions about which the parties should be allowed to inquire in discovery, should the case survive a motion to dismiss. *Cf. McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483–84 (4th Cir. 2014) (motions for discovery prior to summary judgment must be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").

DOJ has also taken conflicting positions on the question of whether the information sought would be used for immigration enforcement. In Minnesota, DOJ's counsel assured the Court that was not the purpose of DOJ's request.[10] But just a few weeks later, at a hearing in its Rhode Island lawsuit, DOJ's counsel confirmed that it will provide the list to U.S. Department of Homeland Security ("DHS"). Mar. 26, 2026 Hr'g Tr. at 65:1–6, *United States v. Amore*, No. 25-cv-639 (D.R.I. Mar. 30, 2026), ECF No. 47. Public reporting has also recently emerged indicating that DOJ and DHS "are close to finalizing an agreement that will allow the federal government to use sensitive voter registration data for immigration and criminal investigations."[11]

This ever-changing set of legal theories and purported purposes—as well as DOJ's

---

[9] Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026), available at https://perma.cc/UL2Y-TYKX.

[10] Estelle Timar-Wilcox, *Judge Hears Arguments in DOJ Lawsuit Seeking Minnesota's Voter Registration Data*, MPR News (Mar. 3, 2026), https://www.mprnews.org/story/2026/03/03/judge-hears-doj-lawsuit-seeking-minnesota-voter-registration-data.

[11] Sarah N. Lynch, *Justice Dept. Close to Finalizing Deal to Hand Over State' Voter roll data to Homeland Security, sources say*, CBS News (Mar. 26, 2026), https://perma.cc/L6S9-ZF74.

unprecedented nationwide pursuit of the same type of information from nearly every state—make it exceedingly unlikely that this is simply a case about DOJ checking in on West Virginia's compliance with list maintenance procedures. *See Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019) (courts need not "ignore the disconnect between the decision made and the explanation given," nor are they "required to exhibit a naiveté from which ordinary citizens are free"). At a minimum, it raises serious doubts that the reasons DOJ offered to West Virginia in its demand letter and to the Court in its complaint here reflect the true nature of its request. This provides further reason to deny the motion to compel.

**IV.     Endorsing DOJ's position would have serious consequences for election officials, including exposing them to potential criminal liability.**

This case also does not lend itself well to an expedited summary proceeding because of the serious consequences that would follow from endorsing DOJ's position that the statewide voter registration list is a "record" under the CRA. Adopting that position would subject state election officials to a significant risk of criminal liability for altering their state's voter registration list as *required* by the NVRA and HAVA, but *prohibited* by DOJ's preferred reading of the CRA. The Court should not adopt an interpretation of the CRA that would risk that absurd result.

Title III of the CRA—reflecting its origins as a law designed to facilitate the investigation of discrimination in voter registration—is first and foremost a document retention statute. Immediately prior to Title III's passage, the U.S. Commission on Civil Rights concluded that reviewing voter "application forms" was "essential to any investigation of denials of the right to vote," because of documented widespread arbitrary denials of Black citizens' voter registration applications. Rep. of the U.S. Comm'n on Civil Rights, at 91, 137 (1959). Under the pre-1960 statutory scheme, however, DOJ had had "no existing power in civil proceedings to require the production of [voter registration] records." H.R. Rep. No. 86-956, at 7 (1959). State and local

16

authorities therefore could—and did—obstruct DOJ investigations, both by refusing DOJ access to election records, *id*., and by destroying them altogether, *see, e.g., Alabama*, 187 F.Supp. at 856 n.4.

To allow for the investigation of discrimination in voter registration, Title III was enacted to require election officials to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Importantly, Title III expressly prohibits "any person, whether or not an officer of election or custodian," from willfully "alter[ing]" records subject to that "retain[] and preserve" requirement. *Id.* § 20702. This is no idle direction: any person who willfully violates these requirements risks imprisonment. *Id.* §§ 20701–20702. Thus, read naturally, Title III covers documents like voter application forms submitted by voters—not, as DOJ claims, the interactive, and ever-changing computerized databases maintained by election officials, like West Virginia's voter list. *See Benson*, 2026 WL 362789, at *9–10 (adopting this argument).

This is further supported by the fact that HAVA—one of the laws that DOJ purports to be seeking to enforce here—requires election officials to *continually alter* its voter list. In stark contrast to Title III's mandate that materials covered by it be retained and preserved and not altered (on threat of criminal penalty), HAVA commands the States to create an "interactive computerized statewide voter registration list;" 52 U.S.C. § 21083(a)(1); in which "[a]ll voter registration information obtained by" election officials "shall be electronically entered into the computerized list on an expedited basis," *id*. § 21083(a)(1)(A)(vi); that election officials must "perform list maintenance with respect to the computerized list on a regular basis," *id.* § 21083(a)(2)(A); and that officials must "ensure that voter registration records in the State are accurate and are updated

17

regularly," *id*. § 21083(a)(4).

Adopting DOJ's argument would put HAVA and the CRA into direct conflict, subjecting election officials to irreconcilable obligations. Under the CRA, election officials would be required to preserve the voter list and would be subject to criminal punishment if they altered it. 52 U.S.C. §§ 20701–20702. But under HAVA, election officials are *required* to alter the list every time they receive new or updated voter registration information. *Id*. § 21083(a)(1)–(2). The court should avoid a strained reading of the CRA that would put it in direct conflict with HAVA. Courts "interpret Congress's statutes as a harmonious whole rather than at war with one another," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018), and must therefore "approach federal statutes touching on the same topic with a 'strong presumption' they can coexist harmoniously." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024). Applying these principles, the CRA cannot be read to reach the statewide voter registration list as DOJ proposes.

Even aside from this serious statutory conflict, DOJ's reading of Title III would necessarily require election officials to "retain and preserve" *every* iteration of the State's voter list whenever it changes, 52 U.S.C. § 20701—a scheme that would be entirely unworkable. In reality, the voter list changes each time anyone in the State registers to vote, when an existing registrant updates their information, and when the State removes someone from the list. And, as required by HAVA, those changes are not only made by the Secretary of State's office but also by numerous *local* officials dispersed throughout the State. 52 U.S.C. § 21083(a)(1)(A)(v)–(vii). It is simply not plausible to conclude that each of these election officials are required to save and retain the voter list—subject to the threat of criminal punishment—every time they change any field on the list.

The court in *Benson* offered a reading of the CRA that better accords with the text of Title III and avoids the direct conflict between the CRA and HAVA that DOJ's reading would impose.

18

Finding that Title III's reference to "all records and papers" is limited to those records that "come into [a custodian's] possession," the court concluded that the statewide voter registration list, a creation of the state, was not such a record. *Benson*, 2026 WL 362789 at \*9 (quoting § 20701). Instead, the Court found that "record" refers to "something that the voter submits or does as part of the registration process." *Id*. The phrase "come into possession . . . refers to a process by which someone *acquires* an item from an external source." *Id.* ("Congress frequently uses the phrase 'come into possession' to refer to items that a person *obtains* rather than *creates*." (compiling statutes)). This interpretation is further supported by the language surrounding the phrase— "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," *id.* at \*9 (quoting 52 U.S.C. § 20701)—because each term "refers to something that the voter submits or does as part of the registration process." *Id*. Other courts, including ones relying on dictionaries published contemporaneously with the CRA, have likewise interpreted the phrase "come into possession" to mean receiving, acquiring, or obtaining something from another source. *See, e.g.*, *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting *Webster's New International Dictionary* (3d ed., 1966, unabridged))).

DOJ suggests that because some election forms may only exist in electronic format, adopting the *Benson* court's reading would "carve out vast numbers of federal election records" from the CRA's reach, Dkt. No. 15 at 13, but this argument misunderstands *Benson's* conclusion. The decision made no distinction between paper and electronic records; the distinction made was between records received by state officials, and those that state officials create. Nothing in the

19

*Benson* court's reading would preclude the release of a record submitted to the state that was subject to a valid Title III demand simply because the record was electronic.

West Virginia's voter registration list, like Michigan's, is a statewide computerized list created and continuously updated by state officials rather than a static record or document that "come[s] into [the] possession" of state officials. West Virginia's voter registration list falls outside the scope of Title III and therefore need not be produced in response to DOJ's demands.

**CONCLUSION**

In sum, Court should deny the motion to compel, which is not authorized by the Federal Rules or Title III. Accepting DOJ's procedural argument would put the cart before the horse, depriving Defendants of their right to test the legal sufficiency of DOJ's claims at the outset, including through motions to dismiss, which the Federal Rules provide for to test the legal sufficiency of complaints filed in federal court and weed out meritless claims. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). If the court denies any forthcoming motions to dismiss, the next step would be discovery on DOJ's claim, including into the basis and purpose for DOJ's demand. Indeed, it is already apparent that there are potential disputes of material fact on these central questions. These important issues deserve the treatment under the Federal Rules that are meant to ensure that any relief granted by a federal court is justified and proper.

Dated: April 17, 2026,                              Respectfully submitted,

**POWELL & MAJESTRO PLLC**
/s/ Christina L. Smith
Christina L. Smith (WVSB 7509)
Graham B. Platz (WVSB 14093)
405 Capitol Street, Suite 807
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
csmith@powellmajestro.com
gplatz@powellmajestro.com

20

**ELIAS LAW GROUP LLP**

Elisabeth Frost (DC Bar No. 1007632)*
Lucas Lallinger (DC Bar No. 1046778)*
Julianna Astarita (DC Bar No. 6340483)*
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 312-5904
efrost@elias.law
llallinger@elias.law
jastarita@elias.law

* Statement of Visiting Attorney filed

*Counsel for Proposed Intervenor*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 17th day of April, 2026, with a copy of this document via the Court's CM/ECF system. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

/s/ Christina L. Smith
Christina L. Smith (WVSB 7509)
405 Capitol Street, Suite 807
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
csmith@powellmajestro.com

*Counsel for Proposed Intervenor*

22