**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**THE UNITED STATES OF AMERICA,**

    *Plaintiff*,

    **v.**                                 **Civil Action No. 2:26-cv-00156**
                                            **Hon. Thomas E. Johnston**

**KRIS WARNER, in his Official Capacity**
**as WEST VIRGINIA SECRETARY OF**
**STATE,**

    *Defendant*.

**DEFENDANT KRIS WARNER'S RESPONSE TO**
**<u>PLAINTIFF'S MOTION TO COMPEL</u>**

Michael R. Williams (WV Bar # 14148)
 *Solicitor General*
Caleb A. Seckman (WV Bar # 13964)
 *Assistant Solicitor General*
West Virginia Attorney General's Office
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Michael.R.Williams@wvago.gov
Caleb.A.Seckman@wvago.gov
Telephone: (304) 558-2021
Fax: (304) 558-0140

*Counsel for Defendant Kris Warner*

**INTRODUCTION**

The United States's motion to compel takes some surprising positions. For instance, our judiciary employs an adversarial system where procedure protects due process rights. But the Government believes that Title III bars the Secretary from "using *any* procedural device" to challenge its demand. Mem. Supporting Mot. to Compel at 11 (cleaned up) (emphasis added). Likewise, Title III allows the federal government to obtain certain records only if the request contains a proper "statement of the basis and the purpose" of the request. 52 U.S.C. § 20703. But the Government believes that even a facially deficient request may not be "challenge[d]." Mem. Supporting Mot. to Compel at 11. Title III also limits the Government to obtain "all records and papers which come into [the Secretary's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. But the Government believes that "all" means anything and everything relating to voting. *See* Mem. Supporting Mot. to Compel at 13 (arguing "[a]ll means all," but not engaging with the defined categories).

The United States is mistaken. Title III does not greenlight fishing expeditions. Nor does it reduce the Secretary to a spectator instead of a defendant. And the Court is not a clerk checking whether the correct paperwork was filed.

Courts across the country have already recognized these basic precepts. Those courts started with the text of Title III. The text reveals that the Department of Justice's requests lack a proper factual basis. They also lack a legal purpose. And finally, the voter lists are not records the Secretary "comes into possession of"; they're documents he creates.

In reaching these conclusions, reviewing courts have deployed a careful statutory analysis, embodying the foundational principle that judicial review is more than a rubber stamp. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Title III presents no exception. It grants this Court jurisdiction to employ "appropriate process" to determine if a record request should be

1

granted. 52 U.S.C. § 20705. The Federal Rules of Civil Procedure provide the default process in federal court. Nothing in Title III displaces that default.

Taking on the required analysis, DOJ's request fails on Title III's own terms. Finally, even if the Government made a viable argument that the Secretary should produce unredacted voter rolls, due process requires the Secretary have a chance to fully present his objections. Appropriate process also entitles the Secretary to discovery on open factual questions. For instance, what is the purpose for the request? And how will the Government obtain voter information in compliance with federal privacy law?

All these considerations counsel against granting a premature motion to compel. That proves particularly true here, where doing so would require accepting an untenable statutory interpretation to grant the Government the relief it seeks under that statute. The motion should be denied.

## STATEMENT

### I.     Federal law puts States in charge of elections.

The Constitution gives States primary responsibility over elections. The Elections Clause directs States to prescribe the time, place, and manner of congressional elections. U.S. CONST. art. I, § 4, cl. 1. This constitutional prescription creates a "default" rule that States carry out all election "mechanics." *Foster v. Love*, 522 U.S. 67, 69 (1997). Congress must speak with clarity to change this default. *United States v. Gradwell*, 243 U.S. 476, 485 (1917).

Congress has largely left the election arena to the States. So the federal government has only a narrow role to play. A few federal statutes are relevant. These laws require only that States administer voting practices that comply with the Fourteenth Amendment, maintain accurate voter rolls, and compile voter registration into a state database.

2

First, Title III of the Civil Rights Act of 1960 directs States to retain certain voting records. 52 U.S.C. § 20701. As with the other provisions of the Civil Rights Act, Title III sought to eliminate racial discrimination in voting. *See United States v. Mayton*, 335 F.2d 153, 159 (5th Cir. 1964). Under Title III, state election officials must "retain and preserve" "all records and papers … relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" for a "period of twenty-two months" after any federal election. 52 U.S.C. § 20701. The Act imposes criminal penalties for altering documents subject to the "retention and preservation" requirement. *Id.* §§ 20701-02. The Attorney General may inspect, reproduce, or copy these records if he first provides an adequate "basis and purpose" for the request. *Id.* § 20703. Federal courts retain "jurisdiction by appropriate process to compel" production of those records if the request was properly made. *Id.* § 20705.

Second, the National Voter Registration Act (NVRA) of 1993 mandates States maintain accurate voter rolls. The NVRA requires States to ensure all "eligible applicant[s] [are] registered to vote" and establish procedures that make a "reasonable effort to remove the names of ineligible voters from" voter rolls. 52 U.S.C. § 20507(a)(1), (4). It also contains a few disclosure provisions. For example, each State must keep for at least two years "all records concerning the implementation of programs" conducted to ensure accurate and current voter eligibility. *Id.* § 20507(i).

Third, the Help America Vote Act (HAVA) of 2002 requires States to keep a centralized voter registration database. 52 U.S.C. § 21083(a)(1)(A). The database must contain the names of all registered voters and their relevant personal information. *Id.* Like the NVRA, HAVA directs States to make "reasonable effort[s] to remove registrants who are ineligible to vote from the official list." *Id.* § 21083(a)(4)(A). States must also create "[s]afeguards to ensure that eligible

3

voters are not [wrongly] removed." *Id.* § 21083(a)(4)(B).  The Attorney General may "bring a civil action against any State" for "declaratory and injunctive relief … necessary" to carry out these requirements in a uniform and nondiscriminatory way.  *Id.* § 21111.

Federal law thus imposes only minimal voting requirements on States.

## II.  State law empowers West Virginia to properly administer elections.

West Virginia law dictates everything else about federal elections.  State law establishes who can vote, W. VA. CODE § 3-1-3; when elections happen, *id.* §§ 3-1-14–15; how precincts are drawn, *id.* §§ 3-1-5–7; how ballots are printed and distributed, *id.* §§ 3-1-19–26; and how voters cast ballots, *id.* §§ 3-1-34–36.  Other provisions govern electronic voting systems, *id.* §§ 3-4A-1–33, outline procedures for early voting, *id.* §§ 3-3-1–8; and establish a permanent voter registration system, *id.* §§ 3-2-1–44.  State law allows people to examine voter registration records.  *See id.* § 3-2-30(a).  But that last provision prohibits disclosure of sensitive voter information, like Social Security or driver's license numbers.  *See id.*

## III.  The federal government seeks comprehensive, unredacted voter information.

In March 2025, President Trump issued an executive order instructing the federal government to obtain and review States' voter information.  *Preserving and Protecting the Integrity of American Elections*, Exec. Order 14,248, 90 Fed. Reg. 14005, 14006-07 (Mar. 25, 2025).  The order directed the Department of Homeland Security to cross-check States' "publicly available voter registration list" and NVRA records of voter list maintenance activities against federal immigration databases and other state records.  *Id.* (emphasis added).

Six months later, DOJ began demanding comprehensive voter information nationwide.  *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://tinyurl.com/mpd97sc3.  Many States share concerns about the agency's sweeping requests for voter information and have thus refused.  *See Tracker: DOJ*

4

*Lawsuits Seeking States' Sensitive Voter Data*, STATE DEMOCRACY RSCH. INITIATIVE, https://tinyurl.com/34eyy98d (last updated Apr. 20, 2026).

On September 8, 2025, DOJ sent one such demand to Secretary Warner. The agency "demanded … [he] provide an electronic, unredacted copy of [the State's] statewide voter registration list," including registrants' full name, date of birth, residential address, and driver's license number or the last four digits of their Social Security number. February 11, 2026 Letter, at 1[*]. DOJ cited Title III of the Civil Rights Act, NVRA, and HAVA as the statutory bases for its request.

### IV. Secretary Warner responds.

The Secretary quickly replied to DOJ's demand. His September 22 letter addressed the agency's concerns about "compliance with federal voter registration list" requirements by outlining the state process used to maintain accurate voter records. September 22, 2025 Letter, ECF No. 14-3, at 1. The letter likewise expressed the Secretary's willingness to provide a more "detailed narrative" of "voter roll list maintenance procedures." *Id.* at 2.

But the Secretary denied the request for two reasons. First, the request was inadequate under federal law. September 22, 2025 Letter, at 2. The demand letter did not establish how the "proposed review of West Virginia's voter registration list maintenance procedures [fell] within" Title III's statutory purpose. *Id.* (cleaned up). DOJ's demand also failed to explain how the NVRA or HAVA could be used to request private voter information given that "neither Act requires [S]tates to disclose [voters'] sensitive personally identifiable information." *Id.* Second, state law also barred disclosure of that information. *Id.* (citing W. VA. CODE § 3-2-30(a)). To facilitate the

---

[*] The February 11, 2026 Letter is attached as Exhibit A. The Complaint references and incorporates the Letter. *See* Compl. ¶¶ 26, 31.

agency's acquisition of voter information that could be *lawfully* disclosed, however, the Secretary provided DOJ with the necessary form and procedure to obtain it. *Id.*

On February 4, 2026, DOJ sought confirmation that the Secretary's earlier position remained unchanged. February 11, 2026 Letter, at 1. The Secretary confirmed as much. *Id.* at 1-2. He reiterated that DOJ's demand "included only a vague explanation of the basis and specific purpose of the request" which was insufficient under Title III. *Id.* at 1. And recent "verbal communications" with DOJ made this general explanation more dubious: the "alleged purpose of the DOJ's request [was] to run [the State's] entire voter list" through DHS's alien verification database. *Id.* at 2. Plus, the Secretary remained committed to following state and federal law barring disclosure of sensitive voter information. *Id.*

The Secretary also dispelled concerns about the State's commitment to maintaining accurate voter rolls. He again outlined the relevant state law procedures. February 11, 2026 Letter, at 2. He shared that, over the last decade, the State has lawfully cancelled 408,397 invalid voter registration records. *Id.*

### V. The United States brings lawsuits nationwide; courts dismiss them.

Nearly every State that has denied DOJ's request has been met with swift legal action. *See Tracker: DOJ Lawsuits*, *supra* (twenty-nine pending lawsuits). West Virginia was no exception. The United States filed this action demanding voter information on February 26, 2026. *See* Compl. The agency continues to assert that its request is authorized by Title III. *See id.* Alongside its complaint, the Government filed a motion to compel production of the voter list. ECF No. 14. The accompanying memorandum makes the same general arguments set forth in the complaint. *See* ECF No. 15.

Every court to have ruled so far has dismissed the Government's complaints. *United States v. Weber*, No. 25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) (dismissing because the

6

Government lacked a proper basis and purpose), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) (dismissing because the Government lacked a proper basis and purpose, and because no federal statute entitled it to unredacted voter information), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) (dismissing because voter registration lists were not "records" under Title III), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Galvin*, No. 25-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) (dismissing because the Government lacked a proper "basis"); *United States v. Amore*, No. 25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) (dismissing because the Government lacked a proper basis or purpose); *United States v. Fontes*, No. CV-26-00066-PHX-SMB, slip op. (D. Ariz. Apr. 28, 2026) (dismissing because a voter list is not "a § 20701 document").

**SUMMARY OF THE ARGUMENT**

**A.** The Federal Rules of Civil Procedure govern this action. The Federal Rules apply in all civil suits, unless the Rules or another statute clearly dictate otherwise. And Congress knows how to create special proceedings when it wants to. A statute that requires adequate process invokes the normal Federal Rules.

Nothing in Title III or the Federal Rules exempts the statute from the Rules' reach. Title III calls for "appropriate process." That language reinforces, not displaces, the Federal Rules— particularly because the statute lacks any detailed procedures to replace the default. The Government's authority suggesting otherwise is a seven-decade-old, out-of-circuit case that has been superseded by Supreme Court precedent and from which the issuing circuit has retreated. Because the Federal Rules apply, no expedited proceeding is available.

7

**B.** Even if Title III authorized some kind of abbreviated proceeding, the Government has not met the statutory preconditions necessary to permit it. Title III requires DOJ to provide an adequate basis and purpose, and the agency can only seek certain types of records.

DOJ's request fails on all fronts. It provided no factual basis, its alleged legal purpose is off target (and perhaps pretextual), and it seeks records outside the scope of Title III. Because DOJ's demand is facially deficient, the motion to compel should be denied.

**C.** And even if the Government stated a colorable Title III claim, the motion to compel cannot be granted without raising serious constitutional concerns. The government's desire for efficiency cannot come at the cost of due process. That process includes time to make objections and discover evidence.

The Government may want to move quickly, but the Constitution guarantees the Secretary due process. He should be able to pursue discovery to answer important factual questions about, for example, the true purpose for the request and how the Government will obtain the information it seeks in compliance with federal law. Granting the motion to compel without any discovery would be fundamentally unfair.

The Court should deny the motion.

**ARGUMENT**

**I.      The Federal Rules apply.**

The normal Federal Rules of Civil Procedure govern this case. The United States claims Title III creates a "summary proceeding" to which the Federal Rules are "completely foreign." Mem. Supporting Mot. to Compel at 11. Not so. The Rules apply unless they or a statute clearly say otherwise. Title III comes nowhere close. So no expedited proceeding is available.

The Federal Rules almost always apply. The Rules govern "all civil actions." FED. R. CIV. P. 1. And any action commenced "by filing a complaint with the court" is a civil action. *Id.* at 2,

8

3. The Federal Rules help guarantee the constitutional due process requirements are met. *See id.* at 1.

Few exceptions exist. Rule 81 enumerates only a handful of cases to which the Federal Rules don't apply. FED. R. CIV. P. 81(a)(1)-(6). That Rule, for example, addresses proceedings involving a subpoena; in those cases, the Federal Rules apply unless a conflict exists. *Id.* at 81(a)(5).

These standard procedures remain unless Congress demonstrates a clear intent to displace them. And Congress knows how to do so. *See* 15 U.S.C. § 78aa(a) ("Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure shall not apply to a subpoena issued under" this sentence.); *see also* 42 U.S.C. § 2000a-5 (Title II creating a detailed alternative procedure). "In the absence of express statutory authorization," courts must be "extremely reluctant to allow proceedings more summary than the full court trial at common law." *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407 (1960). Congress rarely shows "clear expression" necessary to exempt statutes from Federal Rules. *Marek v. Chesny*, 473 U.S. 1, 11-12 (1985).

The Federal Rules of Civil Procedure govern here. The Government instituted this "civil action" by "filing a [standard] complaint." FED. R. CIV. P. 2, 3; *see* Compl. No provision of Rule 81 exempts Title III from the Rules' reach. The most analogous provision involving government subpoenas undercuts the Government's contention: it directs the Federal Rules to apply wherever possible. FED. R. CIV. P. 81(a)(5). Thus, "the Federal Rules apply to proceedings to compel … production of documents." *Becker v. United States*, 451 U.S. 1306, 1307-08 (1981) (Rehnquist, J., in chambers) (cleaned up); *see also Weber*, 2026 WL 118807, at *8.

Title III similarly lacks the express authorization needed to create a special proceeding. Title III instructs courts to employ "appropriate process" to compel production of records. 52

U.S.C. § 20705. Although it doesn't define "what that 'appropriate process' is," *Oregon*, 2026 WL 318402, at \*8, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures," *Weber*, 2026 WL 118807, at \*8. Nor does it say that a particular Federal Rule does not apply. *Compare* 52 U.S.C. § 20705 *with* 15 U.S.C. § 78aa(a) (the Securities Exchange Act citing a specific Rule that the Act displaces). Without clear congressional authorization, this Court should be "extremely reluctant to allow proceedings more summary than" what the Rules require. *Scanlon*, 362 U.S. at 407.

Supreme Court precedent reinforces that conclusion. In *United States v. Powell*, 379 U.S. 48 (1964), the Court held the same phrase, "appropriate process," did not create any special proceeding. The statute "contain[ed] no provision specifying the procedure to be followed," so "the Federal Rules of Civil Procedure appl[ied]." *Id.* at 58 n.18; *see Weber*, 2026 WL 118807, at \*8; *Oregon*, 2026 WL 318402, at \*8. And "when Congress uses the same language in two statutes, … it is appropriate to presume that Congress intended that text to have the same meaning." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). *Powell* thus "squarely rejects [the Government's] contention and reliance on *Lynd*." *Oregon*, 2026 WL 318402, at \*8. "Title III cannot transform an election records request by the federal government from an ordinary civil action into" a summary proceeding. *Weber*, 2026 WL 118807, at \*8. And the Government agrees that Title III does not create "any process for officers of election to object to Title III proceedings being initiated against them." Mem. Supporting Mot. to Compel at 7. Without any displacing process, the Federal Rules apply.

The Government wrongly argues that cases post-*Powell* undermine this clear statement rule. *See* Mem. Supporting Mot. to Compel at 5. That's wrong. The cases they cite only reiterate that when Congress clearly creates summary enforcement proceedings, they are permissible

because they still adequately protect a defendant's rights. In *Donaldson v. United States*, 400 U.S. 517, 529 (1971), for example, the Supreme Court endorsed the IRS's summary proceedings only because procedural protections remained. *See id.* ("The post-*Powell* cases, … [show that] a summary enforcement proceeding [is permissible] so long as the rights of the party summoned are protected and an adversary hearing … is made available. We agree with that conclusion." (cleaned up)). And *Becker*, 451 U.S. 1306, fares even worse. Justice Rehnquist granted a stay for the taxpayers to retain their seized property during litigation because the IRS's summary enforcement proceedings went too far. *Id.* at 1308-09 ("The language of Rule 62(d) seems clear, and the enumerated exceptions do not include tax summons enforcement proceedings."). So *Powell*'s and *Scanlon*'s clear statement rule maintains, and summary enforcement proceedings—when clearly created—still must protect parties' rights.

The Government's primary support for shirking the Federal Rules comes from a stale, out-of-circuit authority. *See* Mem. Supporting Mot. to Compel at 1-5, 7-14, 17-19 (citing *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962)). That case falls short for several reasons. First, *Lynd* has been abrogated. *See*, *e.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent." (cleaned up)). A few years after *Lynd* came *Powell*, which held that Congress must speak with clarity to displace standard federal procedure. *Powell*, 379 U.S. at 58. Second, because of that intervening authority, the Fifth Circuit has retreated from *Lynd*. *See Weems v. McCloud*, 619 F.2d 1081, 1095 n.34 (5th Cir. 1980) (citing *Scanlon*, 362 U.S. at 406 (permitting an alternate process only because the statute contained "express … authorization.")). So *Lynd* isn't even good law within that circuit. *See Gahagan*, 911 F.3d at 302; *see also Oregon*, 2026 WL 318402, at *8 (noting no cases "within the last sixty years" have applied *Lynd*). That

one recent district court has wrongly relied on *Lynd* does not change that it carries no persuasive weight. *Contra* Mem. Supporting Mot. to Compel at 5 (citing *Benson*, 2026 WL 362789). Third, even *Lynd* acknowledged that courts must "exercise[] judicial judgment." 306 F.2d at 225. That judgment would require, for example, a court to resolve any "genuine dispute" about whether a "particular paper or record comes within" Title III's scope. *Id.* at 226. Finally, were all that not enough, *Lynd* is factually distinct. The government there was seeking "public records which ought ordinarily to be open to legitimate reasonable inspection," 306 F.2d at 231—not voter rolls chock full of confidential information.

The presumption that the Federal Rules apply can be overcome only by a clear statement. No such statement exists here, so expedited proceedings are off the table. The Federal Rules govern.

## II.      The Government's request is facially deficient.

The motion to compel should also be denied because DOJ's request fails under Title III's own terms. *See* Memorandum Supporting Mot. to Dismiss. A valid Title III request must outline a factual "basis" and legal "purpose" for the request. *See* 52 U.S.C. § 20703. And under Title III, DOJ can request only certain "records and papers" that "come into [the election official's] possession." *See id.* § 20701.

DOJ's request fails on all three fronts.

First, the agency did not identify "specific, articulable facts" suggesting West Virginia is violating federal law. *Weber*, 2026 WL 118807, at \*9; *see also Amore*, 2026 WL 1040637, at \*5. True, the agency need not "prov[e]" a violation before investigating, Mem. Supporting Mot. to Compel at 9. But it must have some factual basis for believing a State is violating Title III. *See*, *e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (DOJ demanding records because it had information suggesting "that distinctions on the basis of race or color have been made" in voting

and registration).  The Government declares that the statutory language controls.  *See* Mem. Supporting Mot. to Compel at 10-11 (primarily citing *Lynd* for its interpretation of Title III).  The Secretary agrees.  But even now, the Government conflates "basis" with "purpose."  *See id.* at 9 (stating that the "factual basis for the demand" was to ensure "compliance with the … [NVRA]").

Second, DOJ didn't identify any legitimate purpose for the request—such as suggesting that it was making the request to "investigat[e] violations of individuals' voting rights."  *Oregon*, 2026 WL 318402, at *10.  And circumstances surrounding the request suggest that DOJ's true purpose relates to immigration enforcement, not voting integrity.  *See* February 11, 2026 Letter, at 2.  Title III authorizes DOJ to obtain voting records only if they meet the statutory preconditions.  *See* 52 U.S.C. § 20703; *see also Amore*, 2026 WL 1040637, at *6.  And courts are bound to interpret the law as it is, not as the Executive Branch wants it to be.  *See Loper Bright*, 603 U.S. at 412; *contra* Mem. Supporting Mot. to Compel at 11-12 (citing *Benson*, 2026 WL 362789, at *8-9).

Third, the voter registration rolls are not "records or paper" that "c[a]me into [the Secretary's] possession."  52 U.S.C. § 20701; *see Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of").  What records count under the NVRA is irrelevant to the Title III question.  *Contra* Mem. Supporting Mot. to Compel at 9.  The voter lists are something the Secretary *created* not *acquired*—and Title III cares only about the latter.  *Benson*, 2026 WL 362789, at *9.  Records of voting registration, by contrast, are within Title III's scope.  The statute specifically targets voting "registration" documents, which are records that "come[s] into [the State's] possession."  52 U.S.C. § 20701; *see* Mem. Supporting Mot. to Compel at 14 (citing *United States v. Mississippi*, 380 U.S. 128, 134 (1965)).

The United States mistakenly argues that the "come into his possession" language only matters because it starts the clock on how long the Secretary must keep records. *See* Mem. Supporting Mot. to Compel at 15-16. But that temporal requirement does not change that an internally created voter registration list does not "come into his possession" at all. Plus, the timing component revolves around election cycles—further bolstering the conclusion that Title III targets only records the Secretary receives for a given election, not an ongoing list that he maintains.

Finally, the United States contends that, even if the Secretary's interpretation is right, someone in the Secretary's office probably created the list, so the list still came into the *Secretary's* possession. *See* Mem. Supporting Mot. to Compel at 17. This argument is "pedantic," *id.* at 15, and disregards the reality that Secretary Warner is the one responsible for creating the State's voter registration list, whether he receives help from members of his office or not. In any event, it doesn't change that voter lists are not the type of record the statute contemplates. *See* 52 U.S.C. § 20701 (enumerated examples are records of "registration, payment of poll tax, or other act requisite to voting in such election").

At bottom, the best evidence that Congress did not intend to sweep in voter rolls is that the text does not allow it. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *contra* Mem. Supporting Mot. to Compel at 13-14.

* * *

DOJ's demand for voter lists was atextual and extrastatutory. That, too, shows that the motion to compel must be denied.

### III.     Due process demands the Secretary can pursue discovery before relief issues.

Even if DOJ's demand was not facially deficient, an abbreviated process would still be fundamentally unfair. The motion to compel can also be denied for that independent reason.

"[T]he Constitution recognizes higher values than speed." *Stanley v. Illinois*, 405 U.S. 645, 656 (1972). Indeed, "the Due Process Clause in particular … [was] designed to protect [citizens] … from the overbearing [government] concern for efficiency." *Id.* Courts must exercise particular care to ensure expedited proceedings meet this constitutional floor. *See Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 195 (1946) (finding summary enforcement of a subpoena appropriate because the respondent had an "adequate opportunity to present objections" and did not do so).

The Government may want this proceeding to be brief, but the Court must guarantee the Secretary has adequate process. That process must include an opportunity for the Secretary to substantiate his objections. *Walling*, 327 U.S. at 195. The Government has also presented no reason why this proceeding would need to be expedited. It seems the agency may want to hit the gas because it does not want its arguments to be "challenge[d]." Mem. Supporting Mot. to Compel at 11. That only heightens concerns that granting expedited relief would deprive the Secretary of constitutional due process.

Due process also demands parties have adequate discovery. A final decision is likely "premature" if it would deprive a party of "the opportunity to discover evidence necessary" to develop their claims. *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 481 (4th Cir. 2014); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Discovery helps "clarify" the issues presented and "ascertain[]" the key facts. *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

Granting the government's motion to compel would be a final decision on the merits because it would give the government all the relief it seeks. It would be premature to grant the government's motion now while key factual questions remain.

The Secretary, for example, would want to seek discovery on the Department's purpose in requesting voter rolls—and whether the agency has plans to disseminate that information. The Government now maintains that it seeks to ensure compliance with federal voting law. Compl. ¶ 22. But circumstances suggest otherwise. *See* February 11, 2026 Letter, at 2 (the Secretary's "verbal communications" with the Department suggested the purpose of the request was to "run [the State's] entire voter list" through DHS's alien verification database.); *see also* Exec. Order 14,248, 90 Fed. Reg. 14005 (ordering DHS to do just that). Ultimately, DOJ's purpose may be more legitimate than what that circumstantial evidence indicates. That's why summary proceedings are inappropriate.

Discovery is also needed to show how the Government plans to obtain voter information in compliance with federal law. The agency's request for sensitive voter information poses serious questions under federal privacy laws. *See* Mot. to Dismiss at 14-16. Those statutes require federal entities to follow certain procedures when collecting information. *See*, *e.g.*, 5 U.S.C. § 552a(e)(4), (11) (requiring agencies to publish a public notice 30 days before creating a new "system of records"). Discovery would be necessary to ensure that the demand complies with federal law.

\* \* \*

The Secretary is entitled to due process. Constitutional standards extend to States and their officials not just for the protection of "abstract political entities," but for "the protection of individuals." *New York v. United States*, 505 U.S. 144, 181 (1992). So even if Title III created special proceedings *and* the Government made a colorable argument that its demand was proper, granting the motion to compel would still be inappropriate. The Constitution guarantees the Secretary—and mandates courts offer—adequate process and meaningful judicial review.

## CONCLUSION

For these reasons, the Court should deny the motion to compel.

Respectfully submitted,

/s/ *Michael R. Williams*
Michael R. Williams (WV Bar # 14148)
 *Solicitor General*
Caleb A. Seckman (WV Bar # 13964)
 *Assistant Solicitor General*
West Virginia Attorney General's Office
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Michael.R.Williams@wvago.gov
Caleb.A.Seckman@wvago.gov
Telephone: (304) 558-2021
Fax: (304) 558-0140

*Counsel for Defendant Kris Warner*

DATE: April 29, 2026