**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>     v.<br><br>KRIS WARNER, in his official capacity as West Virginia Secretary of State,<br><br>     Defendant. | Civil Case No. 2:26-CV-00156-TEJ |

**[PROPOSED] RESPONSE IN OPPOSITION TO INTERVENORS' MOTIONS TO INTERVENE**

The West Virginia Alliance for Retired Americans and West Virginia Citizen Action Group have moved to intervene in this case. Their request should be denied. The request to intervene as of right is improper because it lacks a concrete interest in this action and because Defendant adequately represents their interests. Their request for permissive intervention fails because they have nothing unique to contribute to this case.

**BACKGROUND**

The United States has brought this summary proceeding to obtain records that Defendant Kris Warner, the West Virginia Secretary of State, is required to maintain and produce to the Attorney General upon his specific request. The Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701, *et. seq.*, requires state election officials to retain and preserve "all" records related to voter registration for a period of twenty-two months from the date of a federal election. *See, e.g.*, *Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir. 1962) ("All means all."). Further, the National Voter Registration Act ("NVRA") and Help America Vote Act of 2002 ("HAVA") require state election

officials to maintain the voter registration files and records that the Attorney General now seeks. 52 U.S.C. § 20507; 52 U.S.C. § 20183.

The National Voter Registration Act of 1993 ("NVRA") mandates that responsible election officials "ensure that accurate and current voter registration rolls are maintained" for Federal elections. 52 U.S.C. § 20501(b)(4). To that end, Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant" or "a change in the residence of the registrant . . . ." 52 U.S.C. § 20507(a)(4). Section 8(i) of the NVRA provides that states shall make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," with certain exceptions. *Id.* § 20507(i).

The purpose of HAVA "is to improve our country's election system" by recognizing "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. No. 107- 329(I) at 31-32 (2001). HAVA imposes "minimum requirements" for the conduct of Federal elections. *Id.* at 35. Specifically, all states must implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level" that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State…52 U.S.C. § 21083(a)(1)(A). Section 303 of HAVA provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters,"

among other requirements. *Id*. § 21083(a)(4). In this way, HAVA and the NVRA work together to ensure that a state creates a single electronic database of registered eligible voters and that the state election official is responsible for maintaining that list and making reasonable efforts to ensure its accuracy.

The CRA entitles the Attorney General to inspect all these records. *See Lynd,* 306 F.2d at 226. This makes sense: the United States, acting through its Attorney General, must routinely investigate state compliance with the list maintenance requirements for Federal elections, and has brought actions against states when their efforts to maintain accurate voter rolls for Federal elections falls short of HAVA and NVRA requirements.[1] *See, e.g.,* 52 U.S.C.A. § 21111.

On September 8, 2025, the Attorney General sent a written demand to the West Virginia Secretary of State invoking her authority according to the CRA and stated that such an investigation was the reason for her request. The Secretary refused. The CRA, however, anticipates such a refusal and provides for a swift resolution to the matter by granting the United States district court jurisdiction "to compel the production of such record." 52 U.S.C. § 20705. Accordingly, the United States filed this action on February 26, 2026.

On March 6, 2026, West Virginia Alliance for Retired Americans ("Alliance") filed its motion to intervene as a defendant. ECF No. 4. West Virginia Citizen Action Group ("Action Group") filed its motion to intervene as a defendant on April 2, 2026. ECF No. 11. The Alliance intervenors are represented by the Elias Law Group; the Action Group intervenors are represented by the ACLU (collectively "Proposed Intervenors"). Both Proposed Intervenors have moved to intervene in multiple similar actions brought by the United States to compel states to produce their

---

[1] A list of HAVA and NVRA enforcement actions brought by the U.S. Department of Justice's Voting Section is available at https://www.justice.gov/crt/voting-section-litigation

unredacted statewide voter lists.  However, intervention is not available in a summary proceeding and even if the court were to consider such motions, both proposed Intervenors have failed to establish sufficient grounds for intervention.  Proposed Intervenors lack standing under controlling authority and have not made the necessary showing of inadequate representation by governmental entities under the Federal Rules of Civil Procedure. Proposed Intervenors offer only a speculative basis for intervention that fails to articulate any concrete grievance or interest that has been or may be violated. Proposed Intervenors have failed to meet their burden of demonstrating that they meet the standard for intervention of right, as set forth in Fed. R. Civ. Proc. 24(a), or for permissive intervention, as set forth in Fed. R. Civ. Proc. 24(b).  For the reasons specified below, the Proposed Intervenors' motion should be denied.

**LEGAL STANDARD**

The United States brought this action as a summary proceeding pursuant to 52 U.S.C. § 20705.  As such, the normal rules of civil procedure do not apply and intervention is not available.  *See Lynd,* 306 F.2d at 226 ("On the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding. The Court, with expedition, should grant the relief sought…").  This should end the Court's inquiry as to intervention. However, even under the Federal Rules of Civil Procedure, the interventions should be denied.

Under Rule 24(a)(2) an applicant may intervene of right if the following elements are met: "(1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Houston General Ins. Co. v. Moore*, 193 F.3d 838 (4th Cir. 1999).  Under Rule 23(b)(1), "the court may permit anyone to intervene who … has

a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). A court has discretion when ruling on a motion for permissive intervention, *Com. Of Va. V. Westinghouse Elec. Corp.* 542 F.2d 214, 216 (4th Cir. 1976).

## ARGUMENT

### I.    Proposed Intervenors are not entitled to intervene as a matter of right.

This Court should deny Proposed Intervenors' motions to intervene as a matter of right. Proposed Intervenors have no concrete interest in this action, and to the extent that the Court finds they do, Secretary Warner adequately represents their stated interests.

### A. Proposed Intervenors do not have a protectable interest relating to this action.

A "private party" may intervene to defend a state's interest only if it has a "judicially cognizable interest in the … defense." *Diamond v. Charles*, 476 U.S. 54, 56 (1986). In other words, the proposed intervenor must have "a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Proposed Intervenors lack the requisite "significantly protectable interest" to intervene in this case because both HAVA and the CRA impose duties and obligations only on states, municipalities, and their officials, not on private entities. For example, HAVA requires *"each State, acting through the chief State election official*, [to] implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list.…"*) (emphasis added). 52 U.S.C. § 21083(a)(1)(A). The CRA likewise instructs "*[e]very officer of election*" to "maintain and preserve … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.…" 52 U.S.C. § 20701 (emphasis added).

It follows that the Attorney General cannot sue private entities under either statute. HAVA

allows the "Attorney General [to] bring a civil action against any State or jurisdiction."  52 U.S.C§ 21111.  And the CRA allows the Attorney General to demand certain election-related records from state officials.  *Id.* §§ 20701, 20703.  Proposed Intervenors do not contend, nor could they, that they are state officials or otherwise are involved in the creation, maintenance, or storage of the voter lists that the Attorney General seeks.  Thus, HAVA and the CRA do not regulate them, and any relief ordered by this Court in this lawsuit would not require them to take or refrain from taking any action.  As such, they have no interest protected by law.

Unable to assert any rights under HAVA or the CRA themselves, proposed intervenors assert a general privacy interest in the data sought by the federal government, s*ee generally* ECF Nos. 5, 13, and an unrealized fear that other people not seeking to intervene might not register to vote at some point in the future.  ECF No. 5 at 15, ECF No. 13 at 13.  However, fear of a future data breach or speculation about how some people *might* react at some unspecified time in the future is not concrete enough of an injury to trigger a right to intervene.  *See Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989). The "mere risk of future harm, standing alone, cannot qualify as a concrete harm."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021); *see also Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 148 (3d Cir. 2024) (no standing where party fails to demonstrate a "likelihood" that a data recipient would "intentionally or accidentally release [her] information").  As such, the mere speculative injuries Proposed Intervenors alleged "[do] not rise to the level required for intervention as a matter of right."  *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are

'purely a matter of speculation' are not 'the kind of protectable interest … necessary to support intervention as of right.'")

The fear of identity theft the Alliance intervenors assert, ECF 5 at 12, does not create standing as the Alliance intervenors have not asserted any concrete harm they have suffered or will imminently suffer. *Holmes v. Elephant Insurance Company,* 156 F.4th 413 (4th Cir. 2025). *Holmes* specifically dealt with driver's license numbers being hacked from an insurance company, finding that after a data breach only those who could show that the information was made publicly available on the internet had standing to maintain an action against the insurance company. *Id.* at 425-426. Here, Proposed Intervenors cannot plausibly state they have been harmed by a data breach by the federal government since the government is not yet in possession of the data. As such, to have standing they would have to prove a concrete future injury is imminent. *Id* at 429. This is an exacting standard. A future harm is not imminent even if there is an objectively reasonable likelihood that it will someday come to pass. *Clapper v. Amnesty Intl'l USA,* 568 U.S. 398, 410 (2013). The Proposed Intervenors need to demonstrate a "substantial risk" the harm will happen "in the near future." *Murthy v. Missouri,* 603 U.S. 43, 58 (2024). Proposed Intervenors have not done so here.

"Fears of retaliation," ECF 5 at 12-13, or fear the information sought will be used for "improper purposes" by the government also does not create standing, ECF 13 at 12-13. The Privacy Act, 5 U.S.C. § 552a, already prohibits the Department of Justice ("DOJ") from disclosing information about individual voters unless narrow, enumerated exceptions apply. Further, the CRA itself contains restrictions on how the federal government must treat any records obtained under the act. 52 U.S.C. § 20704. Proposed Intervenor's shared interest that the federal government observe federal privacy laws amounts to an "abstract . . . 'right' to have the Executive observe the

7

procedures required by law." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 (1992). That general right, "possessed by every citizen, to require that the Government be administered according to law… does not state an Article III case or controversy." *Id*. at 574 (quoting *Fairchild v. Hughes,* 258 U.S. 126, 129–130, (1922)). That is why the Eastern District of North Carolina rightfully rejected the North Carolina chapter of the Alliance intervenor's effort to intervene in an identical HAVA and CRA case the Attorney General brought. *United States of America v. North Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ, Dkt. 87 a 7-8 (E.D.N.C. Jan. 12, 2026) (The "Alliance's claimed interest under Rule 24(a)(2)—protecting the privacy of [its] members' identifying information" is "speculative and premature" because a consent decree requires that data "will be kept securely and treated consistently with the Privacy Act").

Third, Proposed Intervenors generally speculate that civic engagement will decrease as a result of DOJ's enforcement of HAVA and the CRA. ECF 5 at 13; ECF 13 at 12. Neither Proposed Intervenor explains how or why the federal government enforcing federal law would cause its members to become less civically engaged. Similarly, the Alliance intervenor's assertion that its "mission critical" work is harmed provides no explanation as to how it is harmed. ECF 5 at 13. Proposed Intervenors do not argue that DOJ's lawsuit prevents them from communicating with voters or encouraging people to vote. Proposed Intervenors therefore lack a judicially cognizable interest and may not intervene by right.

### B. Defendant adequately represents Proposed Intervenors' interests

Proposed Intervenors may not intervene by right for the additional reason that Defendant adequately represents their interests. Here, Proposed Intervenors and Secretary Warner share the same goal - to prevent the United States from accessing West Virginia's unredacted statewide voter list. Generally, under Fourth Circuit precedent, when a prospective intervenor shares the same

8

objective as a government agency, the representation is presumed adequate. *Stuart v. Huff,* 706 F.3d 345, 352 (4th Cir. 2013); *but see Berger v. North Carolina State Conf. of the NAACP,* 597 U.S. 179, 197 (2022) (holding "the presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law.")  The Proposed Intervenors speculate that perhaps Secretary Warner will change his position.  ECF 5 at 15; ECF 13 at 17. However, prior to the United States' application to this Court, DOJ sent a demand to Secretary Warner for the records at issue.  ECF 14-2.  Secretary Warner refused the demand citing state law and privacy interests.[2]  ECF 14-3.  While it is the position of the United States that to the extent state law conflicts with 52 U.S.C. § 20703 it is preempted, "it is difficult to conceive of an entity better situated to defend it than the [state] government."  *Huff*, 706 F.3d at 351.  "Because the State alone is entitled to create a legal code, only the State has the kind of direct stake needed to defend the standards embodied in that code."  *Id.* (quoting *Diamond v. Charles,* 476 U.S. 54, 65 (1986)).

To overcome the presumption of adequacy the Proposed Intervenors must make a "strong showing [of] inadequacy," such that the position of the state is "adverse" to the Proposed Intervenors.  *Huff,* 706 F.3d at 352.  "[T]he proposed intervenor cannot rebut the presumption of representation by merely disagreeing with the litigation strategy…of the party representing him." *Id.* at 354 (quoting *Chiglo v. City of Preston*, 104 F.3 185, 188 (8th Cir. 1997)).  Nothing in Proposed Intervenors memoranda remotely reaches this high bar.  Secretary Warner has made his position clear by filing a Motion to Dismiss and a Response to the United States' Motion to Compel

---

[2] Press Release, *WV Secretary of State Kris Warner*, WV Secretary of State Kris Warner says he will not release protected personal voter information to U.S. Department of Justice (available at https://sos.wv.gov/article/wv-secretary-state-kris-warner-says-he-will-not-release-protected-personal-voter) ("West Virginians entrust me with their sensitive personal information. Turning it over to the federal government, which is contrary to State law, will simply not happen.") *See also United States v. Fontes,* 2:26-cv-00066, Dkt. 32 at 8 n. 3 (D. Ariz. March 9, 2026).

Federal Election Records that contains substantially similar arguments raised by the Action Group in their opposition.

Other district courts in this circuit and across the country have denied motions to intervene by right in identical lawsuits brought by the Attorney General, concluding that the proposed intervenors failed to demonstrate inadequate representation.[3]   In *United States v. Fontes*, the District Court denied the Arizona Chapter of the Alliance and Common Cause's motion to intervene by right because the "adequate government representation presumption plainly" applied. No. 2:26-cv-00066-SMB, ECF. 32 at 4 (D. Ariz. Mar. 9, 2026).  *Fontes* held that the defendant secretary of state was "representing his constituency" and wanted the "same outcome" as Common Cause and the Alliance: "preventing the Attorney General from accessing" voter lists.  *Id.*  Even though Secretary Warner "might not be acting exclusively to protect the Proposed Intervenors' privacy interests, his arguments necessarily encompass those interests." *Id.*  at 8.

In *United States v. Nago*, the District of Hawaii determined that the state's chief elections officer "is presumed to adequately represent" his "constituency" of "voters."  No. 1-25-cv-00522,

---

[3] Courts have granted intervention in *United States v. Weber*, 2:25-cv-09149 (C.D. Cal. 2025);*United States v. Thomas*, 3:26-cv-0021 (D. Conn. 2026); *United States v. Albence*, 1:25-cv-01453 (D. Del. 2026); *United States v. Evans*, 1:25-cv-04403 (D.D.C. 2026); *United States v. Raffensperger*, 1:26-cv-00485 (N.D. Ga. 2026); *United States v. Matthews*, 3:25-cv-03398 (C.D. Ill. 2026); *United States v. Bellows*, 1:25-cv-00468 (D. Me. 2025); *United States v. DeMarinis*, 1:25-cv-3934 (D. Md. 2026); *United States v. Galvin*, 1:25-cv-13816 (D. Mass. 2026); *United States v. Benson*, 1:25-cv-1148 (W.D. Mich. 2025); *United States v. Simon*, 0:25-cv-03761 (D. Minn. 2026); *United States v. Aguilar*, 3:25-cv-00728 (D. Nev. 2026); *United States v. Scanlan*, 1:25-cv-00371 (D.N.H. 2026); *United States v. Oliver*, 1:25-cv-01193 (D.N.M. 2025); *United States v. Oregon*, 6:25-cv-1666, (D. Or. 2025); *United States v. Amore*, 1:25-cv-00639 (D.R.I. 2025); *United States v. Henderson*, 2:26-cv-00166 (D. Utah 2026); *United States v. Copeland Hanzas*, 2:25-cv-00903 (D. Vt. 2026); *United States v. Wis. Elections Comm'n*, 3:25-cv-1036 (W.D. Wis. 2026); *United States v. Pennsylvania*, 2:25-cv-1481 (W.D. 2026); *U.S. v. Adams*, No. 3:26-cv-19 (E.D. Ky. 2026); *United States v. Caldwell,* 3:26-02025 (D. NJ 2026).

ECF. 51 at 3 (Feb. 17, 2026). *Nago* held that Common Cause "failed to overcome that presumption." *Id.*

In *United States v. North Carolina State Board of Elections et al*, the North Carolina chapter of the Alliance argued that the North Carolina and the United States were "on the same team" and that North Carolina's agreement to turn over the voter lists meant that North Carolina "failed to fight to protect the interests of voters." No. 5:25-cv-00283-M-RJ, ECF 87 at 5 (E.D.N.C. Jan. 12, 2026). Even that alleged cooperation between the United States and the defendant North Carolina failed to establish inadequate representation. The same result should follow here, where Defendant Secretary Warner is resisting the United States's requests for data.

## II.  Proposed Intervenors should not be granted permissive intervention.

This Court should deny Proposed Intervenors' request for permissive intervention. *Huff* at 355. In exercising its discretion, in order to allow a permissive intervention, the court must find (1) a proposed intervenor's motion is timely, (2) the defenses or counterclaims have a question of law or fact in common with the main action and (3) intervention will not result in undue delay or prejudice to the existing parties. *North Carolina State Conf. of NAACP v. Cooper,* 332 F.R.D. 161, 172 (M.D.N.C. 2019). Courts may also consider whether intervention will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 496 (M.D.N.C. 2017) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Here, admittedly, the motion is timely, and as stated above, the defenses of the proposed-Intervenors raise the same questions of law and involve the same set of facts as Defendants. However, for this very reason, their participation would be superfluous and will not contribute to development of the underlying factual issues in the suit. This is a dispute concerning

11

a government records request between the United States and the responsible state election official in charge those records. Intervenors have no additional facts related to that request or its denial. Similarly, Intervenors will not add to the just and equitable adjudication of the legal questions presented as the Defendants will adequately represent the State and its citizens on those questions.

## CONCLUSION

For the reasons discussed above, Proposed Intervenors' motions to intervene should be denied.


DATED: May 8, 2026                    Respectfully submitted,

                                      HARMEET K. DHILLON
                                      Assistant Attorney General
                                      Civil Rights Division

                                      JESUS A. OSETE
                                      Principal Deputy Assistant Attorney General
                                      Civil Rights Division

                                      ERIC V. NEFF
                                      Acting Chief, Voting Section
                                      Civil Rights Division


                                      /s/ Christopher J. Gardner
                                      Christopher J. Gardner
                                      James T. Catania
                                      Trial Attorneys, Voting Section
                                      Civil Rights Division
                                      4 Constitution Square
                                      150 M Street NE, Room 8.141
                                      Washington, D.C. 20002
                                      Christopher.Gardner@usdoj.gov
                                      James.Catania@usdoj.gov
                                      202-812-2631
                                      Attorneys for the United States

12