# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

   v.

KRIS WARNER, in his official capacity as West Virginia Secretary of State,

    Defendant.

Case No. 2:26-cv-00156-TEJ

## <u>SECOND DECLARATION OF ERIC NEFF</u>

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in support of the United States' Motion to Compel the production of election records pursuant to the Civil Rights Act ("CRA"), codified at 52 U.S.C. § 20701, *et seq*.

2. The National Voter Registration Act, 52 U.S.C. § 20501, *et seq*., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq*., require each state to perform voter-list maintenance to ensure that only eligible voters remain on the statewide voter registration list. Under Section 11 of the NVRA and Section 401 of HAVA, the Attorney General is charged with the responsibility for enforcement of the list maintenance requirements of both statutes. *See* 52 U.S.C. §§ 20510(a), 21111. This enforcement responsibility has been delegated to the Civil Rights Division by Congress.

1

3.      Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…." 52 U.S.C. § 20507(i)(1).

4.      HAVA requires that "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number, or if that is unavailable, the last four digits of the Social Security number. 52 U.S.C. § 21083(a)(5)(A)(i). That information is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections.

5.      To ascertain whether a jurisdiction engages in practices that violate federal law (whether HAVA, the NVRA, the Voting Rights Act or any other one), the Attorney General needs to examine both applications to register to vote and the final voting rolls, including the unredacted electronic statewide voter registration list ("SVRL"), so as to assure herself that the applications are being properly processed and that reasonable and nondiscriminatory list maintenance efforts have been practiced.

6.      When the Civil Rights Division performs this individualized assessment, the Commonwealth's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records.  An Initial Privacy Assessment (IPA) Determination was issued on October 12, 2012, showing that no Privacy Impact Assessment is required for the Justice Consolidated Office Network (JCON) system where personal identifying information associated with the United States' CRA demand is stored.

7.  The Department of Justice uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs.

8.  Recent enforcement efforts by the Attorney General demonstrate the need for federal scrutiny, as Congress contemplated in authorizing the Attorney General to bring enforcement actions under HAVA and the NVRA.

9.  As a result of the Attorney General's enforcement action, North Carolina has reduced the number of voter records missing an identification number under HAVA from 103,329 to 70,709. *See N. Carolina Bd. of Elections*, Defs.' 2d Status R. at 2 (E.D.N.C. Jan. 30, 2026). A true and accurate copy of the Second Status Report from the *North Carolina* litigation is attached as Exhibit 7.

10.  The United States District Court for the Eastern District of North Carolina also recently rejected arguments that the Department of Justice is amassing a nationwide voter database as "speculative and premature." *United States v. North Carolina Board of Elections*, Case No. 5:25-cv-00283 (E.D.N.C. Sept. 8, 2025). A true and accurate copy is attached as Exhibit 8.

11.  In 2007, the United States entered into a Consent Decree with the State of Maine regarding HAVA compliance and list maintenance. A true and correct copy of the Consent Decree in *United States v. Maine*, No. 1:06-cv-00086 (D. Me. Apr. 4, 2007) is attached as Exhibit 9.

12.  The United States entered similar agreements with the States of New Jersey and Indiana to enforce voter registration list maintenance. In New Jersey, paragraph five of the stipulated order required the HAVA identifiers to be provided and paragraph 14 required Defendants to retain voter registration and list maintenance records. In Indiana, paragraph 8 of that Consent Decree required the State of Indiana to "retain voter registration and list maintenance

3

records related to the terms of this agreement for the time periods provided by… [Section 20701]." True and correct copies of these documents from *United States v. New Jersey*, No. 06-cv-4889 (D. NJ. Oct. 12, 2006) and *United States v. Indiana*, 1:06-cv-01000 (S.D. Ind. July 5, 2006) are provided as Exhibits 10 and 11.

13. After the Indiana consent decree was entered, the United States moved to amend it to obtain the full, unredacted SVRL, including driver's license numbers and social security numbers. Dkt. 16 in *Indiana*, 1:06-cv-01000 (D. Ind. June 27, 2006), attached as Exhibit 12. The Court in *Indiana* issued an Order granting the United States' Motion to Amend Consent Decree. A true and accurate copy of this Order is attached herein as Exhibit 13.

14. The United States sued Alabama for the State's noncompliance with 42 U.S.C. § 1973ff-1(c), which required the State to report to the Election Assistance Commission, not later than ninety days after a regularly scheduled general election for Federal office, certain data regarding ballots from absent uniformed services voters and overseas voters. *See* Dkt. 1, *United States of America v. Alabama*, Case No. 2:08-cv-00920 (M.D. Ala. March 28, 2009), attached as Exhibit 18. A true and accurate copy of a letter sent to Shelby County in 2009 requesting election records pursuant to Title III is attached as Exhibit 14.

15. The United States filed a similar lawsuit in Vermont to obtain records for enforcement of the UOCAVA reporting requirement and the parties agreed that election officials are required to retain election records under the CRA. *See, e.g.*, Dkt. 1, *United States of America v. Vermont, Case No. 2:08-cv-00217* (D. Vt. Feb. 26, 2009). A true and accurate copy is attached as Exhibit 15.

16. The United States has also used the CRA in enforcement of the Voting Rights Act. The United States sought election records from counties gathering evidence for a lawsuit brought

4

under Section 2 of the Voting Rights Act in *United States v. Georgia*, No. 1:21-cv-02575 (N.D. Ga. June 25, 2021), Dkt. 1. The Civil Rights Division sought election information from 159 counties in Georgia, and demand letters under Title III were sent to some of those counties. A true and accurate copy of a letter sent to Newton County, Georgia is attached as Exhibit 16.

17. In 2001, the bipartisan National Commission on Federal Election Reform, with former Presidents Gerald R. Ford (Rep.) and Jimmy Carter (Dem.) serving as Honorary Co-Chairs, explained why adding driver's license information and the last four digits of the Social Security numbers for federal elections protected individual voters. A true and accurate copy of the excerpts of Nat'l Comm'n on Fed. Election Reform, To Assure Pride and Confidence in the Electoral Process 32-33 (Aug. 2021) is attached herein as Exhibit 17.

18. The United States has offered states an MOU memorializing these requirements. As of May 13, 2026, eighteen states have provided their SVRL including: fourteen states that have provided their SVRLs three any MOU, two states that have agreed to provide their SVRL under the terms of the MOU, and one state pursuant to a settlement agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Washington, D.C. on May 13, 2026.

/s/ Eric Neff
Eric Neff