**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> KRIS WARNER, in his Official Capacity as WEST VIRGINIA SECRETARY OF STATE, <br><br> *Defendant*. | Civil Action No.: 2:26-cv-00156 |

**<u>WEST VIRGINIA ALLIANCE FOR RETIRED AMERICANS' MEMORANDUM OF LAW IN SUPPORT OF PROPOSED MOTION TO DISMISS</u>**

**INTRODUCTION**

The Department of Justice ("DOJ") has demanded that West Virginia (and nearly every other state) turn over its complete, unredacted voter registration list—including highly sensitive voter information protected by state law. DOJ's novel claim relies on stitching together a patchwork quilt of federal statutes, which DOJ contends grant it sweeping and unprecedented power to demand this data at any time, for any purpose, without any meaningful review from this Court. And, while DOJ purports to need the data to determine if West Virginia is complying with the National Voter Registration Act (NVRA) and Help America Vote Act (HAVA)—federal laws related to the maintenance of voter registration lists—DOJ does not allege a claim under either of those statutes. Instead, it claims that an entirely different statute—Title III of the Civil Rights Act of 1960 ("CRA")—entitles it to demand highly sensitive and personal information about every voter the state (and in the dozens of other states of which DOJ has made the same demand).

This Court should dismiss DOJ's complaint. Indeed, as of this filing, every court to have reached a decision in the myriad similar suits that DOJ has filed across the country—six so far— has concluded that DOJ's complaints fail at the threshold. *See, e.g.*, *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1236 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 1:25-cv-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Galvin*, No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026).

Dismissal is required for four independent reasons. *First*, DOJ failed to comply with the plain text of the CRA, which required it to state both the basis and purpose for its demand. DOJ

did not state *any* factual basis for its demand, and the purpose it asserted—to investigate NVRA and HAVA compliance—is not proper under the CRA, which is meant to facilitate investigations into "complaints that qualified persons have been denied the right to vote." *Hearings Before Subcomm. No. 5 of the H Comm. on the Judiciary* ("*Hearings*"), 86th Cong. 212, 599 (1959), https://perma.cc/ET26-FKD9. Voter list maintenance is governed by other statutes entirely, which have their own enforcement provisions and defer heavily to the *States*, which retain responsibility for those activities. Further, DOJ has made the same demand of nearly *every* state, undermining any suggestion that it has a specific reason to "investigate" West Virginia. And DOJ's public statements—in and out of court—provide reason to doubt that it will use the data simply to ensure that the state is engaging in reasonable list maintenance. *See, e.g.*, *Weber*, 816 F. Supp. 3d at 1185, 1186. *Second*, the voter registration list is not a "record" that comes within the reach of Title III. *See Benson*, 2026 WL 362789, at *9–10; *Fontes*, 2026 WL 117244, at *2–5. Such a reading would create irreconcilable conflict between the CRA—which threatens election officials *with criminal penalty* if they knowingly alter any record covered by the CRA—and the NVRA and HAVA, which *require* election officials to *continuously alter* the records DOJ demands here. *Third*, West Virginia has already offered DOJ its voter list with sensitive information protected by state law redacted, *see* DOJ Mot. Compel, Ex. 3 (Sept. 22 Letter) at 2, Dkt. No. 14-3, but DOJ refused that offer. Accordingly, it is only that sensitive information that is at issue here. But neither Title III nor any other federal law preempts those state law protections. Even the case upon which DOJ relies makes clear that Title III is intended to reach *only* "public records," *not* "confidential, private papers and effects." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962). *Finally*, DOJ has also failed to satisfy the requirements of the federal Privacy Act, a prerequisite to obtaining the information it seeks here.

## BACKGROUND

**I.      Federal law leaves the authority to administer voter registration lists with the states.**

The Elections Clause of the Constitution empowers the states in the first instance to regulate and administer elections. U.S. Const. art. I, § 4, cl. 1. While Congress may preempt state law, that power goes only "so far as it is exercised, and no farther." *Ariz. v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 9 (2013). Federal laws concerning voter registration therefore sit "atop state voter-registration systems," but do not displace them. *Id.* at 5.

As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). It makes States the custodians of voter lists, *see id.*, and by its plain terms, charges *States*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), and with voter list maintenance, *id.* § 20507(c)–(g), subject to strict safeguards to protect against removal of lawful voters, *see id.* §§ 20507(a)(4), 21083(a)(4)(A). The NVRA contains its own inspection provision, 52 U.S.C. § 20507(i), which limits the records available for inspection to "the names and addresses" of persons to whom NVRA notices are sent, *id.* § 20507(i)(2).

Congress enacted HAVA in the wake of the 2000 elections "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). It requires States to create a "computerized statewide voter registration list," 52 U.S.C. § 21083(a)(1)(A), and to "perform list maintenance," *id.* § 21083(a)(2)(A). HAVA is explicit that this list is to be "defined, maintained, and administered at the State level," *id.* § 21083(a)(1)(A), and directs that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State," *id.* § 21085. These choices were deliberate; indeed, HAVA's legislative history stressed how important the maintenance of a decentralized electoral system is

3

to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, 107th Cong., pt. 1, at 31–32 (2001).

Consistent with that principle, Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the NVRA and HAVA, which purposefully operate through the states themselves.

## II.    DOJ has undertaken an unprecedented effort to amass voter data held by the states.

Last spring, DOJ began an unprecedented campaign to obtain state voter files, including sensitive and personal information about each voter. It has sent demands to at least 48 states and D.C. and plans to make similar demands on all 50.[1] The vast majority of states have declined to turn over sensitive personal information which is typically protected by state law. DOJ has since sued 29 states and D.C., attempting to judicially compel that private voter information.[2]

DOJ demanded West Virginia's "statewide voter registration list" in a letter to West Virginia Secretary of State Kris Warner on September 8, 2025. DOJ Mot. Compel, Ex. 2 (Sept. 8 Letter) at 1, Dkt. No. 14-2. The letter specified that the list should contain "all fields," including each registrant's driver's license number or the last four digits of their Social Security number. *Id.*

---

[1] *See* Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Mar. 18, 2026), https://perma.cc/LW77-Z4LT; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1.

DOJ claimed that the Attorney General was "empowered" to make the request "pursuant to Title III" of the CRA, *id*. at 2, and that the "purpose" of the request was "to ascertain West Virginia's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2.

Secretary Warner responded by letter on September 22, noting that DOJ did not "provide a factual basis supporting" its demand, failed to establish how it "falls within the statutory purpose" of the CRA, and that the disclosure of sensitive personal voter information would violate state law. DOJ Mot. Compel, Ex. 3 (Sept. 22 Letter), at 1–2. The Secretary identified how DOJ could request the publicly available version of West Virginia's voter registration list. *Id*. at 2. DOJ alleges that it followed up with emails on December 10, December 19, and January 13 with additional requests to obtain the unredacted list, and on February 11, 2026, the Secretary replied that he would not provide it. *See* Compl. ¶¶ 24–26, Dkt. No. 1.

## III.    DOJ filed suit to compel West Virginia's unredacted voter registration list.

On February 26, 2026, DOJ filed this lawsuit against Secretary Warner. *See generally* Compl. Its complaint alleges that it seeks West Virginia's unredacted voter file to assess the state's compliance with its list-maintenance obligations under the NVRA and HAVA. *Id.* ¶¶ 10–16. Yet it does not bring a claim under either of those statutes. Its sole cause of action is asserted under Title III of the CRA. *Id.* ¶¶ 17–19, 27–31.

This is a notably different approach than that taken by DOJ when it first filed lawsuits seeking to compel states to produce their unredacted state voter registration lists in September 2025. In that first tranche of cases, DOJ explicitly asserted claims under the NVRA, HAVA, and

CRA.[3] DOJ subsequently abandoned that approach and in the next 22 lawsuits it filed (including this one against West Virginia), DOJ made no NVRA or HAVA claims.[4]

Every single one of the courts that have adjudicated motions to dismiss in these cases so far have dismissed DOJ's claims, whether brought under the NVRA (which courts have found does not provide a basis for seeking the information that DOJ demands, *see, e.g.*, *Weber*, 816 F. Supp. 3d 1168, at 1187–89; *Oregon*, 2026 WL 318402, at *5–6; *Benson*, 2026 WL 362789, at *4– 6), HAVA (which courts have noted has no disclosure provision at all—"end[ing] the inquiry," *Weber*, 816 F. Supp. 3d 1168, at 1190; *see also Oregon*, 2026 WL 318402, at *6–7; *Benson*, 2026 WL 362789, at *2), or the CRA (which courts have found cannot justify DOJ's demand, either because it fails to comply with the CRA's express "basis and purpose" requirements, or because

---

[3] *See* Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections*, No. 1:25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 2:25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[4] *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-1193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 12, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 1:25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 3:26-cv-00042 (E.D.V.A. Jan. 16, 2026); Compl., *United States v. Ziriax*, No. 5:26-cv-00361 (W.D. Okla. Feb. 26, 2026); Compl., *United States v. Henderson*, No. 2:26-cv-00166 (D. Utah Feb. 26, 2026); Compl., *United States v. Warner*, No. 2:26-cv-00156 (S.D. W. Va. Feb. 26, 2026); Compl., *United States v. Caldwell*, No. 3: 26-cv-2025-ZNQ-JTQ (D.N.J. Feb. 26, 2026); *see also* Compl. at 8–9.

the CRA does not reach voter files, or both, *see, e.g.*, *Weber*, 816 F. Supp. 3d 1168, at 1182–86; *Oregon*, 2026 WL 318402, at *8–10; *Benson*, 2026 WL 362789, at *10–11; *Galvin*, No. 25-13816-LTS, 2026 WL 972129, at *3–6; *Amore*, 2026 WL 1040637, at *5–6; *Fontes*, 2026 WL 1177244, at *4–7).

## LEGAL STANDARD

In deciding a motion to dismiss, the Court accepts all well-pleaded factual allegations as true but need not accept "legal conclusions" or "[t]hreadbare recitals" of the elements supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal is required where a complaint fails to state a plausible claim for relief. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted); Fed. R. Civ. P. 12(b)(6).[5]

## ARGUMENT

DOJ's reliance on Title III of the CRA to justify its sweeping demand fails for four independent reasons. *First*, DOJ has not complied with the basic procedural requirements of Title III, namely that its demand state a "basis" and proper "purpose." *Second*, the voter registration list is not a record subject to production under the CRA. *Third*, Title III does not preempt state privacy protections. *Finally*, DOJ has not complied with the federal Privacy Act, a prerequisite to obtaining and maintaining the data it seeks. Each deficiency on its own requires dismissal.

---

[5] For the reasons explained in Proposed Intervenors' proposed response in opposition to DOJ's motion to compel, even if this Court views DOJ's demand as an administrative subpoena, the Court must apply the 12(b)(6) standard. *See* Mot. Leave to Respond, Ex. A (Proposed Resp. in Opp. to Mot. Compel), Dkt. No. 23-1 ("Proposed Opp'n to MTC").

### I.    DOJ failed to fulfil Title III's statutory requirements.

Under the plain text of the statute, any request for records under Title III "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). An agency's authority to demand documents and information "is a creature of statute" and "must comply with statutory requirements." *Consumer Fin. Prot. Bureau v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458, 460 (5th Cir. 2018). As courts considering parallel lawsuits brought by DOJ across the country have recognized, "[t]he requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 816 F. Supp. 3d 1168, at *9; *Galvin*, 2026 WL 972129, at *4 (holding DOJ must state both the basis and the purpose of its demand); *Amore*, 2026 WL 1040637, at *4 (same). *See also Consumer Fin. Prot. Bureau v. Accrediting Council for Independent Colls. and Schs.* ("*ACICS*"), 854 F.3d 683, 690 (2017) (declining to enforce civil investigative demand where agency failed to comply with statutory requirements). DOJ's failure to state any basis, and failure to provide a proper purpose under Title III each independently require dismissal of the complaint.[6]

### A.    DOJ did not provide any statement of the "basis" for its demand.

Title III's "basis" requirement ensures that the federal government will not unduly interfere in the States' oversight of elections unless there is a concrete reason to believe that a State has

---

[6] As explained in Proposed Intervenors' response to the motion to compel, this Court has the authority—and the obligation—to review DOJ's demand to ensure that it complied with the CRA. *See* Proposed Opp'n to MTC at 3–5. DOJ relies on *Lynd* for the proposition that this court may not "adjudicate the factual foundation for or the sufficiency of the demand," Compl. ¶ 4 (citation modified), but *Lynd* was overruled by *Powell*, which made clear that the Federal Rules apply and the court may "inquire into the underlying reasons for the" government's demand so as to "not permit its process to be abused." *Id*. at 58 & n.18; *see also Oregon*, 2026 WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd*.").

8

denied the right to vote or otherwise violated federal voting rights law. A "basis" under Title III is "a factual basis for investigating a violation" of the CRA. *Oregon*, 2026 WL 318402, at *8. DOJ's demand—set forth in its September 8 letter—states no "basis" at all, much less identifies "what conduct [DOJ] believes constitute[d] an alleged violation" of federal law.[7] *Source for Pub. Data*, 903 F.3d at 458–59; DOJ Mot. Compel, Ex. 2 (Sept. 8 Letter); DOJ Mot. Compel, Ex. 3 (Sept. 22 Letter).

That omission alone is fatal. Courts do not enforce agencies' investigative demands when they fail to "comply with statutory requirements." *Source for Pub. Data*, 903 F.3d at 460; *see also, e.g.*, *ACICS*, 854 F.3d at 689 (same). Moreover, DOJ has made near-carbon-copy demands of at least 40 states and has sued 29 others and D.C. in complaints that contain nearly identical boilerplate claims and allegations. *See supra* Background § II. Several courts considering these cases have already dismissed DOJ's complaints on this ground. *See Oregon*, 2026 WL 318402, at *9; *Weber*, 816 F. Supp. 3d 1168, at *9; *Galvin*, 2026 WL 972129, at *4; *Amore*, 2026 WL 1040637, at *4.[8] This Court should similarly dismiss DOJ's complaint on these grounds, with prejudice.

---

[7] Consideration of DOJ's correspondence with the Secretary does not convert this motion to dismiss into a Rule 56 motion for summary judgment. DOJ referred to the letters in the Complaint. Compl. ¶¶ 21–27. Accordingly, the Court "may consider [the documents] in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (*citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[8] DOJ alleges that the CRA itself is the "basis" for its demand, *see* Compl. at ¶ 21; Mot. Compel Ex. 2 (Sept. 8 Letter), but as other courts have recognized, Title III requires a factual basis. *See, e.g.*, *Galvin*, 2026 WL 972129, at *5. This tactic "confuses the legal authority under which the Attorney General made the demand—the CRA—and the statute's requirement to state 'the basis'—the foundation in fact or evidence for the demand." *Id.*

### B.      DOJ did not provide a legally sufficient "purpose" for its demand.

DOJ has also failed to identify a legally sufficient purpose for its demand—a separate ground for dismissal. Fundamental principles of statutory interpretation make clear that the CRA requires a *permissible* purpose (not *any* purpose, as DOJ contends): "[i]f *any* purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function." *Oregon*, 2026 WL 318402, at *9.[9] DOJ claims that its purpose is to "ascertain compliance with the list maintenance requirements of the NVRA and HAVA." Compl. at ¶ 22. But "Title III was not passed as a tool for NVRA compliance." *Weber*, 2026 WL 118807, at *9. The plain language, statutory framework, and history all confirm that the "purpose of Title III" was to preserve records where "reasonable cause is thought to exist that any person qualified to vote has been improperly denied that right," *Hearings* at 700—not to empower DOJ to exercise supervisory oversight over state voter list maintenance efforts. *See* Proposed Opp'n to MTC at 9–12, 16–17.

Congress enacted the CRA to bolster enforcement of a closely related statute, the Civil Rights Act of 1957, by enacting specific document preservation and maintenance requirements to facilitate the investigation of allegations of discrimination in voter registration. *See* Pub. L. No. 85-315, 71 Stat. 634 (1957). In the late 1950s, Congress found that enforcement of the 1957 Act had been stymied by "the refusal of some state and local authorit[ies] to permit" inspection of voter registration forms, and DOJ did not have the power to require production of the records during

---

[9] In other contexts, too, courts have rejected investigative demands premised on purposes beyond the governing statute's grant of authority. *See, e.g.*, *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025) (striking DOJ subpoena seeking information that had "no relevance to the investigation Congress permitted or to the investigation the [DOJ] tells the world it is pursuing"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026).

10

investigations concerning "complaints of a denial to vote because of race." H.R. Rep. No. 86-956, at 7 (1959). Congress determined that, unless it gave DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to combat discrimination in voting would be "rendered relatively ineffective." *Id.* Title III provided that authority. As the early courts to construe Title III made clear, there was "no doubt but that [Title III] [wa]s designed to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion*, 187 F. Supp. at 853. Even the decision in *Lynd* stressed that "one of the clearest purposes of" Title III is to examine relevant records "relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights." 306 F.2d at 228.

Here, by contrast, DOJ admits that it is not seeking West Virginia's registration list to investigate racial discrimination in voting. Rather, DOJ seeks to "ascertain West Virginia's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 22—a purpose unrelated to Title III. But the purpose of a Title III demand "must relate to . . . investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402, at *10; *see also Weber*, 816 F. Supp. 3d at 1182. By DOJ's own telling of its purpose, it fails this test.

In addition, as explained *supra* Background § I, the statutory structure of the NVRA and HAVA gives *states* the authority to administer voter registration and the discretion to execute list-maintenance procedures. Congress has spoken expressly as to how DOJ can enforce the federal list maintenance requirements it claims to be enforcing here, *see, e.g.*, 52 U.S.C. §§ 20510, 21111, through a different inspection tool Congress made available for that purpose in the NVRA itself, *see id.* § 20507(i). DOJ's dissatisfaction with the tool Congress provided does not give it license to rely on a provision of the CRA that is unrelated to either the NVRA or HAVA.

11

In addition to ignoring the text of all three statutes, doing so would violate the "well established canon of statutory interpretation . . . that the specific governs the general." *RadL/IX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation modified). Where "a general authorization and a more limited, specific authorization exist side-by-side," this canon "avoids . . . the superfluity of a specific provision [being] swallowed by the general one" by determining that "the specific [provision] presumptively governs." *Id.* at 645, 647–48. Here, the specific provisions that speak to list maintenance in the NVRA make clear that DOJ cannot rely on the more general demand requirement of the CRA.[10] DOJ's failure to state a proper purpose under Title III warrants dismissal of the complaint.

**C.     Even if DOJ's asserted purpose was germane, there is extensive evidence that it is not DOJ's true purpose.**

Even if DOJ had stated a proper purpose, there is strong evidence that it is pretextual, and DOJ is not entitled to the state voter registration list "under the guise of a pretextual investigative purpose." *Weber*, 816 F. Supp. 3d at 1186; *see also* Proposed Opp'n to MTC at 12–16. DOJ's ever-changing legal theories and purported purposes undermines its justifications for its extraordinary and unprecedented efforts to compel the production of private voter registration data nationwide. *See, e.g., id.* at 13–14 (identifying DOJ argument, made for first time in motions to expedite appeals from losses in parallel cases, that information was needed to allow DOJ to remove noncitizen voters, and DOJ's subsequent abandonment of this argument in appellate merits briefs). Other courts evaluating similar demands of other states have noted DOJ's contradictory claims

---

[10] The NVRA requires states to "make available for public inspection . . . records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," 52 U.S.C. § 20507(i)(1), and limits the records available for inspection to "the names and addresses" of persons to whom NVRA notices are sent, *id.* § 20507(i)(2). This specific provision "presumptively governs" demands for records concerning voter list maintenance, not Title III of the CRA. *RadL/IX*, 566 U.S. at 648.

and questioned its true motives. *See Weber*, 816 F. Supp. 3d at 1185 ("Representations by the DOJ itself show that their requests to states for voter roll data go beyond their purported compliance check with the NVRA and into the territory of comprehensive data collection."); *Oregon*, 2026 WL 318402, at *11 ("Plaintiff has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists.").

All of these facts point to a substantial likelihood that the purported purpose behind the demand is pretextual. At a minimum, it raises serious doubts that the reasons DOJ offered to the state of West Virginia and this Court—in its demand and in its complaint here—reflect the true nature of its request. *See, e.g.*, *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995) ("[T]he dispositive question in each case . . . is whether the [agency] is pursuing the authorized purposes in good faith." (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317–18 (1978)). Thus, should the case survive a motion to dismiss, the true purpose of DOJ's demand is a question about which the parties should be allowed to inquire in discovery. *See United States v. Clarke*, 573 U.S. 248, 254 (2014) (permitting discovery into the government's motive in issuing document demand upon "a showing of facts that give rise to a plausible inference of improper motive").

II.     **Title III of the CRA does not authorize DOJ's demand because the state voter registration list is not a document subject to production under that provision.**

As courts considering parallel cases have recognized, state voter registration lists are not records or papers subject to production under Title III. *See Benson*, 2026 WL 362789, at *9–10; *Fontes*, 2026 WL 11774244, at *3–5. Title III requires election officials to "retain and preserve," 22 months from any federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. In *Benson*, the court concluded that "a voter registration list is not a 'record' that 'c[a]me into [the state's] possession,'" and dismissed DOJ's complaint on that basis.

13

2026 WL 362789, at \*9. It found that the phrase "come into . . . possession" refers to a "process by which someone *acquires* an item from an external source," and thus covers only "documents that state election officials receive from prospective voters," not the state voter list. *Id.* A federal court in Arizona recently came to the same conclusion, holding that Arizona's voter registration list is "not a document subject to request by the Attorney General pursuant to § 20703," and likewise dismissed the complaint. *Fontes*, 2026 WL 1177244, at \*5. This reading is supported by the "obvious alternative" language Congress had at its disposal. *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1050 (8th Cir. 2017). Congress could have, for instance, written Title III to cover papers and records "in the possession" of election officials, or simply "all records" without qualification (as it did in the NVRA, *see* 52 U.S.C. §20507(i)), rather than those that "come into" possession of such officials. But Congress chose not to.

Further supporting this interpretation of Title III, construing the voter list as a "record" under the CRA would create a direct conflict with HAVA and the NVRA, subjecting election officials to irreconcilable obligations and potential criminal penalty. *See* Proposed Opp'n to MTC at 17–20. Title III expressly prohibits "any person," from willfully "alter[ing]" records subject to its retention requirement. 52 U.S.C. §§ 20701, 20702. But under HAVA, election officials are *required* to alter the voter list whenever they receive new or updated voter registration information, 52 U.S.C. § 21083(a)(1)–(2), and the NVRA "outline[s] a variety of situations in which states are required to modify their [voter lists] where [the CRA] would prohibit such an alteration." *Fontes*, 2026 WL 1177244, at \*4. To interpret Title III to reach voter registration lists would thus expose election officials to criminal liability for altering those lists as required by HAVA and the NVRA. *See Fontes*, 2026 WL 117724, at \*3–5 (dismissing DOJ's complaint and concluding "[i]f the [state

14

voter list] were deemed" to come under § 20701, "then § 20702 would prohibit the [list] from being altered," which "would directly conflict with" the NVRA and HAVA).[11]

"[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *United States v. Joshua*, 607 F.3d 379, 387 (4th Cir. 2010) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). Here the courts in *Benson* and *Fontes* have adopted an interpretation of the CRA consistent with the statute's purpose, whereas DOJ's interpretation contravenes that purpose and would lead to a direct conflict between the CRA and the NVRA and HAVA. The Court must dismiss the complaint to avoid this "absurd result[]." *Id*.

### III.    Title III does not preempt West Virginia's privacy protections.

DOJ's complaint also must be dismissed because granting relief would violate West Virginia's privacy protections for sensitive voter data, which are not preempted by federal law. Although DOJ characterizes this case as an effort to obtain West Virginia's voter registration list, the State offered the redacted version of that list months ago. *See* DOJ Mot. Compel, Ex. 3 (Sept. 22 Letter) at 2. What it would not provide—because state law forbids it—are voters' sensitive personal identifiers, namely their Social Security and driver's license numbers. *Id.* Those redacted identifiers are the only information at issue here and West Virginia law bars their disclosure. *See, e.g.*, W. Va. Code § 3-2-30(a) (prohibiting release of voter list without redaction of, among other

---

[11] A similar concern was identified by the Ninth Circuit just a few weeks ago in interpreting the scope of the NVRA in *PILF v. Nago*, No. 24-6628, 2026 WL 1144703 (9th Cir. Apr. 28, 2026). Like the CRA, the NVRA requires states to maintain certain records for a period of time, a requirement that the court found inconsistent with an interpretation that voter registration lists were properly within the reach of the statute, because the NVRA and HAVA *require* that such lists "constantly evolve." *Id*. at *13. In the context of the CRA, however, the conflict is even more stark because, as noted above, the CRA has a criminal penalty provision, while the NVRA does not.

things, "Social Security number or driver's license number"). As a result, DOJ may obtain them *only if* federal law preempts West Virginia privacy protections. It does not.

Congress's preemptive authority extends only "so far as it is exercised, and no farther," *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (citation omitted). Title III does not evince a "clear and manifest purpose" that Congress intended to preempt state privacy laws in this area. *Arizona v. United States*, 567 U.S. 387, 400 (2012) (citation modified). Since driver's license numbers and partial social security numbers were not required to be provided on registration forms until 2002, *see* 52 U.S.C. §21083(a)(5)(A)(i), Congress's purpose in enacting the CRA could not possibly have extended to requiring disclosure of such information. To the contrary, even *Lynd*, the principal case DOJ relies on in its complaint, indicated that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers and effects." 306 F.2d at 231.

Nor is there a conflict between Title III and West Virginia's voter privacy laws. A conflict arises only when compliance with both laws is impossible or when state law stands as an obstacle to Congress's objectives. *McHenry County v. Raoul*, 44 F.4th 581, 591 (7th Cir. 2022) (quoting *Arizona*, 567 U.S. at 399). West Virginia can fully comply with Title III by producing covered records redacted in accordance with state law. That redaction does not pose an obstacle to Congress's objectives under Title III unless it would thwart the investigation of federal voting rights violations—but as DOJ has admitted, it is not investigating any violation of voting rights.

Congress's choices when it enacted the NVRA and HAVA confirm that there is no conflict between West Virginia's privacy protections and Title III. If Congress thought it was necessary (or even desirable) for DOJ to have access to highly sensitive information about every voter to ensure that States were complying with list maintenance obligations, it would have authorized that

16

*in the NVRA or HAVA*. It did not. Instead, courts have repeatedly found that the NVRA inspection provision, which Congress designed to enable "critical scrutiny and public audits of voter data," does *not* prohibit states from redacting sensitive personal information before disclosing that data. *See, e.g.*, *Pub. Interest Legal Found.* ("*PILF*") *v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *PILF v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022). Indeed, just two weeks ago, the Ninth Circuit concluded that the NVRA reflects Congress's judgment that "[e]ffective oversight" of a State's list maintenance obligations "does not require disclosure of every registrant's personal information." *PILF v. Nago*, No. 24-6629, 2026 WL 1144703, at *15 (9th Cir. 2026). And HAVA contains no disclosure provision at all; rather, it explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). Simply put, Title III cannot be read to require what the statutes DOJ invokes it to enforce do not.

### IV. DOJ's failure to comply with the Privacy Act independently requires dismissal.

Finally, even if DOJ could use Title III to demand the private data of West Virginia's over 3.3 million registered voters, it must first comply with the Privacy Act, 5 U.S.C. § 552a *et seq.* Its failure to do so provides yet another independent reason why its complaint must be dismissed.

Congress enacted the Privacy Act to "permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters v. U.S. Dep't of Homeland Sec.* ("*LOWV*"), No. 25-3501, 2025 WL 3198970, at *2 (D.D.C. Nov. 17, 2025) (citation modified). DOJ has disregarded the Act's basic requirements, which apply to any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). West Virginia's voter registration list, which contains the names of all registered voters, their voter

registration identifiers, and other identifying information, plainly qualifies as a "system of records" under the Act.[12] Accordingly, to "collect," "use," or "maintain" West Virginia's voter registration list, DOJ must comply with the Privacy Act's obligations. *See id.* § 552a(e)(4); *Weber*, 816 F. Supp. 3d 1168, at *17 (DOJ's demand "is governed by the Privacy Act").

Most relevant here, "[w]hen an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *LOWV*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine use[s]" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.* At least 30 days *prior* to publication of a compliant SORN, an agency must provide "notice of any new use or intended use of the information in the system and provide an opportunity for interested persons to submit written data, views, or arguments to the agency." 5 U.S.C. § 552a(e)(11).

Nothing in the complaint indicates that DOJ has complied with these requirements.[13] DOJ has alleged in parallel litigation that a SORN it identified as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records," supplies the requisite authority, *see,*

---

[12] A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). The term "maintain" is defined to include "maintain, collect, use, or disseminate." *Id.* § 552a(a)(3).

[13] In DOJ's proposed opposition to the Alliance's motion to intervene, it concedes that the Privacy Act is applicable here. *See, e.g.*, DOJ Proposed Resp. in Opp'n to Intervenors' Mots to Intervene, Dkt. No. 36, at 7 (arguing "the Privacy Act, 5 U.S.C. § 552a, already prohibits the Department of Justice ("DOJ") from disclosing information about individual voters . . . .").

18

*e.g.*, Compl. ¶ 23, *United States v. Oliver*, No. 1:25-cv-1193 (D.N.M. Dec. 2, 2025), Dkt. No. 1, but it "does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level," much less the uses to which it intends to put the information. *Weber*, 816 F. Supp. 3d 1168, at \*18. Instead, it simply states that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. Privacy Act of 1974; System of Records, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). While this language may cover run-of-the-mill files maintained for specific investigations and litigation matters, it would be a startling construction of these terms to find that they extend to a statewide (or nationwide) voter registration list that has never before been compiled by the federal government. In short, this SORN is plainly insufficient for DOJ's attempted collection. "If millions of Americans' private information is to be collected by the federal government, they deserve the ability to comment and voice their concerns before this collection occurs." *Weber*, 816 F. Supp. 3d at 1193.

Moreover, DOJ's admission that it plans to disclose voter data to DHS to run through SAVE raises additional questions about compliance with the Privacy Act's stricter requirements for records intended to be used in computer "matching programs." 5 U.S.C. § 552a(o), (p), (e)(12).[14] The Act mandates that "[n]o" record "contained in a system of records may be disclosed to a recipient agency or non-Federal agency for use in a computer matching program" absent written agreement between the agency and the source(s) of any records to be "matched," that must describe, among other things, the "legal authority" for the matching program. *Id.* § 552a(o)(1). Running data through SAVE plainly qualifies as a "matching program" under the Privacy Act, as

---

[14] *See* Jude Joffe-Block, *The Justice Department Plans to Share Sensitive Voter Data with Homeland Security*, NPR (Mar. 27, 2026) https://www.npr.org/2026/03/27/nx-s1-5764266/voter-data-trump-doj-dhs.

the SORN expanding the program itself acknowledges. *See LOWV*, 2025 WL 3198970, at *2. And there is no evidence that DOJ has satisfied any of the requirements of § 552a(o), (p) or (e)(12).

There is no impediment to the Court dismissing the complaint based on DOJ's failure to comply with the Privacy Act. Even if construed as an affirmative defense, "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Here, the complaint clearly alleges DOJ's intention to collect, use, and retain a system of records that requires compliance with the Privacy Act. Its failure to do so independently warrants dismissal.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: May 14, 2026,                    Respectfully submitted,

**POWELL & MAJESTRO PLLC**

/s/ *Graham B. Platz*
Christina L. Smith (WVSB 7509)
Graham B. Platz (WVSB 14093)
405 Capitol Street, Suite 807
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
csmith@powellmajestro.com
gplatz@powellmajestro.com


**ELIAS LAW GROUP LLP**

Elisabeth Frost (DC Bar No. 1007632)*
Lucas Lallinger (DC Bar No. 1046778)*
Julianna Astarita (DC Bar No. 6340483)*
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 312-5904
efrost@elias.law
llallinger@elias.law
jastarita@elias.law

* Statement of Visiting Attorney filed

*Counsel for Proposed Intervenor*


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of May, 2026, with a copy of this document via the Court's CM/ECF system. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

/s/ *Graham B. Platz*
Graham B. Platz (WVSB 14093)

*Counsel for Proposed Intervenor*

21