**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

KRIS WARNER, in his Official Capacity as
WEST VIRGINIA SECRETARY OF STATE,

*Defendant*.

Case No. 2:26-cv-00156

**WEST VIRGINIA CITIZEN ACTION GROUP'S RESPONSE TO PLAINTIFF'S
MOTION FOR LEAVE AND REPLY IN SUPPORT OF ITS MOTION TO INTERVENE
AS DEFENDANT**

1

Proposed Intervenor-Defendant West Virginia Citizen Action Group (CAG) has interests in protecting voters that are not adequately represented, and its participation will not prejudice Plaintiff or delay this case. Plaintiff, the United States, failed to timely respond to CAG's motion to intervene and thereby waived its opportunity to object to CAG's involvement in this case. CAG respectfully requests that this Court grant intervention and join the twenty other courts that have permitted entities representing voters' interests to intervene in parallel litigation.

## ARGUMENT

### I.     Plaintiff waived its opportunity to object to CAG's intervention.

Plaintiff failed to timely respond to CAG's Motion to Intervene, and its belated Motion for Leave to File does not establish "excusable neglect" for its delay. As such, Plaintiff waived its opportunity to object to intervention, and the Motion should be treated as uncontested.

This Court's rules establish that "[m]emoranda and other materials in response to motions shall be filed and served on opposing counsel and unrepresented parties within 14 days from the date of service." L.R. Civ. P. 7.1(a)(7). CAG moved to intervene on April 2, 2026, meaning that any response was due on April 16. *Id.*, *see also* ECF No. 35 (acknowledging filing). Plaintiff did not respond, seek leave for an extension, or otherwise note its objections until May 8, 2026, over 30 days after CAG moved to intervene.

Parties practicing before this Court, like any other, are expected to follow the rules. *See Randolph v. Columbia Gas Transmission, LLC*, No. 3:23-cv-6, 2024 WL 3445488 (S.D. W. Va. July 17, 2024); *see also Folse v. W. Va. Univ.*, No. 2:19-CV-00488, 2019 WL 5556652, at *1 (S.D. W. Va. Oct. 25, 2019) (declining to consider objections mailed one day after the deadline under Rule 7.1(a)(7)). As Plaintiff's response to CAG's motion was untimely, it should be disregarded, and this Court should treat Plaintiff's failure to timely respond as a concession that the Motion was meritorious. *See Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004); *see also Su v. Fam. First Home Healthcare, LLC*, No. 2:22-cv-368, 2024 WL 4101798, at *1 (E.D. Va. Apr. 19, 2024).

2

Conceding that it was untimely, Plaintiff contemporaneously filed a Motion for Leave to File Response in Opposition, ECF No. 35, but that Motion should be denied. As this Court explained in *Randolph*, when a party seeks an extension *after* the deadline has expired, the Motion is governed by Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, which requires a finding of "excusable neglect." 2024 WL 3445488, at *1; *see also* Fed. R. Civ. P. 6(b)(1)(B). Determining whether there is "excusable neglect" requires the Court to assess, among other factors, "the danger of prejudice to the [adverse party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Randolph*, 2024 WL 3445488, at *1 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Plaintiff's Motion for Leave does not discuss "excusable neglect" nor mention Rule (b)(1)(B). ECF No. 35. In any case, Plaintiff's Motion fails to meet the applicable *Pioneer* standard. First, the delay was prejudicial. Given that Plaintiff did not respond for over 30 days, CAG had every reason to believe Plaintiff did not oppose intervention, especially given that Plaintiff has not opposed intervention in many parallel cases. *See e.g.*, Orders, *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Feb. 2, 2026), Dkt. Nos. 37, 38 (granting unopposed motions to intervene); *see also* ECF No. 35 at 2 (noting that Plaintiff had not opposed intervention in Hawai'i or Arizona). If Plaintiff's long-overdue response is accepted, CAG's participation in the matter will be subject to additional proceedings. Second, the delay was substantial and risks disrupting the Court's handling of the case. Unlike in *Randolph*, where this Court "narrowly" found excusable neglect for a one-week delay, 2024 WL 3445488, at *2, Plaintiff waited 36 days to respond—a significant period. And in the interim, given their non-party status, CAG and the other intervenors timely sought leave to file oppositions to Plaintiff's effectively dispositive Motion to Compel, ECF Nos. 22 and 23. Both sets of intervenors have now filed timely Motions to Dismiss, also attached to requests for leave. ECF Nos. 40, 41, 43, 44. As a result of Plaintiff's conduct, the Court is now faced with staggered filings to address.

3

Plaintiff's excuses for its delay only highlight that the relevant standard is not met here. *First*, Plaintiff argues that CAG's Motion to Intervene, and that of the other intervening parties, was "premature." ECF No. 35 at 1. Plaintiff was on notice of CAG's Motion to Intervene and opted not to respond within the time allotted. While Plaintiff claims that "it was not possible for the United States to know to what extent West Virginia would defend against the United States' application," ECF No. 35 at 1, it says the opposite in its opposition, arguing that Secretary Warner's position was clear as of his September 22, 2025 letter declining to produce sensitive voter information. ECF No. 36 at 9 (citing ECF No. 14-3).

Indeed, Plaintiff has been able to file oppositions to motions to intervene in other parallel cases well before the state filed a responsive pleading. *See* Opp., *United States v. Bellows*, No. 1:25-cv-468-LEW (D. Me. Nov. 25, 2025), Dkt. No. 39. And CAG made its position clear when it intervened. *See, e.g.*, ECF No. 13 at 3, 6-9. Moreover, Plaintiff does not explain why it was not able to either request additional time to file a response *prior* to April 16 nor why it waited almost 60 days to serve Secretary Warner, creating this issue.

*Second*, Rule 24 requires a proposed intervenor to "timely" move—there is no suggestion in the rule that a party can, or must, wait for additional proceedings. Fed. R. Civ. P. 24(a), (b)(1). Plaintiff's improper request for an extension only indicates that it was aware of CAG's Motion to Intervene, aware of its position in the case, and aware of the requirements of Rule 7.1(a)(c). As such, there was no excusable neglect, and the Court should disregard Plaintiff's opposition.

## II.    Plaintiff misconstrues the requirements for intervention under Rule 24(a).

Even if this Court were to consider Plaintiff's opposition, CAG's members' interests and their own organizational interests related to civic participation are significantly impacted by this litigation, and CAG has a right to intervene. "The Fourth Circuit generally favors liberal intervention." *LeMaster v. Hackney*, No. 2:19-cv-00763, 2020 WL 4196730, at *1 (S.D. W. Va. July 21, 2020) (Johnston, J.) (citing *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)). Plaintiff's efforts to nonetheless narrowly construe the standard are unpersuasive.

4

*First*, Plaintiff confuses the significantly protectable interest standard with Article III standing. ECF No. 36 at 4, 6-7. But the Fourth Circuit has not required proposed intervenor-defendants to independently establish Article III standing to intervene. *See N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019); *see also N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 942 n.1 (4th Cir. 2021), *rev'd on other grounds sub nom.*, *Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179 (2022). As such, Plaintiff's reliance on cases like *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), all of which address Article III standing, are inapposite.[1]

*Second*, Plaintiff argues that CAG lacks a protectable interest because it has no duties under relevant federal statutes, but Plaintiff points to no persuasive authority to support the proposition that HAVA and the CRA limit who may intervene. Under Plaintiff's logic, private litigants could never intervene in a case requiring a government entity's involvement, as the mere fact that a state government is a proper defendant would mean that it is the *only* possible defendant. But twenty federal courts, including courts in this Circuit, have granted such motions in nearly identical litigation.[2]

---

[1] To the extent that Article III standing may be an issue for intervention under Rule 24(a), it has no impact on the analysis under Rule 24(b) unless the party seeks a new avenue of relief, which is not the case here. *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998); *see also League of Women Voters of Va. v. Va. State Bd. of Elections*, No. 6:20-CV-00024, 2020 WL 2090678, at *3 (W.D. Va. Apr. 30, 2020).

[2] *See* Minutes of Mot. Hr'g, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70; Order, *United States v. Thomas*, No. 3:26-cv-0021 (D. Conn. Jan. 29, 2026), Dkt. No. 40; Order, *United States v. Albence*, No. No. 1:25-cv-01453 (D. Del. Jan. 15, 2026), Dkt. No. 22; Minute Order, *United States v. Evans*, No. 1:25-cv-04403 (D.D.C. Mar. 16, 2026); Order, *United States v. Raffensperger*, No. 1:26-cv-00485 (N.D. Ga. Jan. 30, 2026) Dkt. Nos. 13, 14; Text Order, *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Mar. 2, 2026); Order, *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Dec. 12, 2025), Dkt. No. 51; Order, *United States v. DeMarinis*, No. 1:25-cv-3934 (E.D.N.Y. Feb. 2, 2026), Dkt. Nos. 37, 38; Order, *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Jan. 6, 2026), Dkt. No. 30; Order, *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Dec. 9, 2025), Dkt. No. 45; Order, *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Jan. 6, 2026), Dkt. No. 90; Order, *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Mar. 20, 2026), Dkt. No. 63; Order, *United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H. Jan. 5, 2026), Dkt. No. 23; Order, *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M.

Plaintiff tellingly omits any discussion of the NVRA from its argument, although it is addressed in Plaintiff's Complaint and Motion to Compel. ECF Nos. 1, 15. Although the NVRA also contemplates enforcement against government entities, courts frequently permit private litigants to intervene in NVRA cases. *See, e.g.*, *Voter Integrity Project N.C., Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 614 (E.D.N.C. 2017); *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637, 646 (M.D.N.C. 2024). Like HAVA and the CRA, the NVRA does not create mandates for private parties and applies only to states. *See* 52 U.S.C. § 20503(a). Just as intervention is appropriate in NVRA suits, however, so too is it appropriate here. *See United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL 3496571, at *2 (D. Or. Dec. 5, 2025); *United States v. Benson*, No. 1:25-cv-1148, 2025 WL 3520406, at *3 (W.D. Mich. Dec. 9, 2025) ("[T]he fact that HAVA and the CRA do not authorize suit against the movants does not affect their ability to intervene."). Private organizations and individuals regularly intervene in cases involving governmental parties, as they have in most of the 30 cases Plaintiff has brought seeking voter information, and Plaintiff provides no rationale for why the Court should consider this case differently.

*Third*, Plaintiff suggests in passing that because this is a "summary proceeding," intervention is *never* warranted. ECF No. 36 at 4. Plaintiff's only cited authority for this proposition is a quotation from *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). ECF No. 36 at 4. But *Lynd* did not address intervention and is not helpful in analyzing a motion to intervene. While Plaintiff claims this is a summary proceeding exempt from certain procedures, this Court has yet to resolve the issue. *See* ECF No. 22 at 4-9 (arguing that the Federal Rules of Civil

---

Dec. 19, 2025), Dkt. No. 25; Order, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Dec. 5, 2025), Dkt. No. 52; Text Order, *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Jan. 6, 2025); Order, *United States v. Henderson*, No. 2:26-cv-00166 (D. Utah Mar. 23, 2026), Dkt. No. 33; Order, *United States v. Copeland Hanzas*, No. 2:25-cv-00903 (D. Vt. Jan. 20, 2026), Dkt. No. 42; Order, *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Jan. 22, 2026), Dkt. No. 53; Order, *United States v. Pennsylvania*, No. 2:25-cv-1481 (W.D. Pa. Jan. 16, 2026), Dkt. No. 105.

Procedure fully apply in this case). Various district courts to address the question have found, however, that the normal rules apply, and have granted intervention. *See supra* n.2.

**III.    CAG satisfies the requirements for intervention under Rule 24(a) because it has established protectable interests.**

Both CAG and its members have particularized and protectable interests at stake in this case. Although Plaintiff attempts to dismiss these interests as "speculative" and "general," ECF No. 36 at 4, 6-8, they are concrete, and the harms are immediate. CAG must show it "stand[s] to gain or lose by the direct legal operation of the district court's judgment" in the pending action. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). Here, CAG's members' information is at risk, as is the organization's ability to conduct its work.

**A.  CAG has protectable interests in the confidentiality of its members' personal information and civic participation.**

Preventing the improper disclosure of sensitive personal data, including partial social security numbers and driver's license numbers, is a clear, protectable interest. *See Oregon*, 2025 WL 3496571, at *1. West Virginia law protects sensitive information about voters, W. Va. Code § 3-2-30(a), and the Fourth Circuit has recognized that "granting unauthorized and unwarranted access to a person's sensitive personal information is an intentional intrusion into 'private affairs or concerns,'" which is a protected interest. *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, 172 F.4th 361, 369 (4th Cir. 2026); *see also* Minute Order, *United States v. Evans*, 1:25-cv-04403 (D.D.C. Mar. 16, 2026) ("[D]isclosure of the District's voter-registration list to Plaintiff would cause Proposed Intervenors harm in a manner analogous to the harm to privacy vindicated by the common-law tort of intrusion upon seclusion."). CAG's members provided their data when registering to vote with the expectation that it would be safely stored and accessed only legally. ECF No. 11-7, Archer Decl. ¶¶ 11-12; ECF No. 11-8, Perrone Decl. ¶¶ 10-12; *see also Oregon*, 2026 WL 318402, at *1-3 ("[T]he individual Proposed Intervenors provided declarations supporting their concerns about the disclosure of the private information contained in their voter registration history to the Federal government."). This confidentiality interest is sufficient for

intervention. *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (Intervenor had "interest in the non-disclosure of its documents" that were potentially protected by FOIA exemption, "[a]nd there is a direct, antagonistic relationship between [the proposed intervenor]'s interest in confidentiality and [plaintiffs'] interest in obtaining the documents at issue."); *Benson*, 2025 WL 3520406, at *3-4 (W.D. Mich. Dec. 9, 2025)

CAG, like other intervenors in these cases, also has an organizational interest in the appropriate and lawful handling of election information. As part of its work, CAG spends resources on development and distribution of voter registration and education materials and encourages West Virginians to register and to vote. Archer Decl. ¶¶ 3-10. CAG's missions will be frustrated if its members' sensitive information is disclosed. Archer Decl. ¶¶ 13-16. This, too, is a sufficient protectable interest for purposes of intervention. *Oregon*, 2026 WL 318402, at *3.

Plaintiff cannot gloss over these protectable interests by asserting that there is no risk of improper disclosure in this action because federal law prohibits sharing the data. ECF No. 36 at 8. This improperly assumes that Plaintiff is entitled to the information it seeks, and that it will use it appropriately. Because CAG has shown that it has an interest in preventing unnecessary disclosure of their members' data, it has a right to intervene.

### B. CAG's interests are neither generalized nor speculative.

CAG "stand[s] to gain or lose" by direct operation of this litigation, *Teague*, 931 F.2d at 261, because its members' personal data may be disclosed, misused, and unlawfully shared with others and because of the concrete effect on its advocacy work. *See* Order at 1, *United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 2, 2026), Dkt. No. 38 ("Proposed Intervenors have substantial interests in the case, including their interests in privacy and the unfettered right to vote."). Those interests are specific to the organizations and their members. *Oregon*, 2026 WL 318402, at *2-3. Plaintiff's decision to seek data about *every* West Virginia voter does not make CAG's specific interests generalized. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) (finding higher standard for standing met where "large numbers of individuals suffer the same

common-law injury (say, a widespread mass tort), or where large numbers of voters suffer interference with voting rights conferred by law"); *see also id.* at 35 (Scalia, J., dissenting).

Nor are CAG's concerns about Plaintiff's use of the data speculative or contingent. As the court held in *Benson*, voters "have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm" and such an interest is recognized in the law. *Benson*, 2025 WL 3520406, at \*3. And CAG's concerns about Plaintiff's plans to use voter data stem from Plaintiff's recent actions and are not speculative. The Memorandum of Understanding that DOJ has signed with at least two states describes DOJ's attempted takeover of states' exclusive list-maintenance authority.[3] It provides that DOJ will conduct an "analysis and assessment" of states' voter rolls and instruct states to remove voters DOJ identifies. President Trump's March 31, 2026, Executive Order, titled "Ensuring Citizenship Verification and Integrity in Federal Elections," "prohibit[s] non-citizens from registering to vote or voting in Federal elections" and directs the creation of a "State Citizenship List" and instructs USPS not to deliver ballots to those not on the List.[4] And in parallel litigation in Rhode Island, Plaintiff admitted that it planned to share this data with the Department of Homeland Security to search for non-citizens on the voter rolls, MTD Hearing Tr. at 65:1-11, *United States v. Amore*, No. 25-CV-639-MSM (D.R.I. Mar. 26, 2026). Plaintiff's own statements, and its Memorandum of Understanding with the Department of Homeland Security and USCIS, demonstrate that it is *currently* using state voter roll data to conduct its own list maintenance program, and regularly transmitting private voter data outside of DOJ. *See* ECF No. 44 at 16-17 (describing DOJ's plans to transmit state voter rolls). This ongoing federal takeover of list maintenance would run contrary to the constitutional and the statutory safeguards that entrust states with list maintenance and

---

[3] *See* Confidential Memorandum of Understanding executed with Texas (Dec. 9, 2025), https://www.brennancenter.org/media/15082/download/texas_12.09.2025_executed-mou.pdf?inline=1; Confidential Memorandum of Understanding executed with Alaska (Dec. 22, 2025), https://www.brennancenter.org/media/15064/download/alaska_12.22.2025_executed-mou.pdf?inline=1 (MOUs).
[4] Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026).

prevent the federal government from unlawfully sharing data without abiding by proper procedures. 52 U.S.C. § 20507(a)(4) (requiring states to implement a general program of list maintenance); 52 U.S.C. § 21085 (empowering states to determine methods to comply with list maintenance statutes).[5]

### C.  CAG's interests are distinct from other parties.

Defendant's interests diverge from those of CAG and its members, such that CAG's interests are not adequately represented by existing parties. Plaintiff's argument on this factor relies heavily on *Stuart v. Huff*, in which the Fourth Circuit required a proposed intervenor to "mount a strong showing of inadequacy" when seeking to intervene on the same side as a government agency which shares an ultimate objective. 706 F.3d 345, 352 (4th Cir. 2013). *Stuart*, however, was based on the court's desire to avoid "a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation." *Id.* Here, however, Secretary Warner does not oppose CAG's intervention, and there is no reason to believe the state has identified any such burden. And, unlike in *Stuart*, the ultimate question is not the constitutionality of a state statute, where the state had a specific interest. *Id.* at 351. While preemption of West Virginia's clear protections for voters, like CAG's members, may be implicated, the ultimate question here is the sufficiency of the Plaintiff's demand under the CRA. Of course, all the cases Plaintiff has brought across the country involve governmental defendants, and district courts have nonetheless granted intervention. *See supra* n.2.

Moreover, the Supreme Court's decision in *Berger* casts doubt on this portion of *Stuart*. *Berger*, 597 U.S. at 195. Assessing the Fourth Circuit's application of the heightened standard from *Stuart* in a subsequent case, the Supreme Court disagreed, finding that such a standard would run afoul of Rule 24 and the Court's decision in *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) in which it described the movant's burden as "minimal." *Id.* As such, "[w]here 'the

---

[5] Further, the proposed MOUs with the states do not limit DOJ's ability to use states' data and expressly permits DOJ to provide the data to contractors. MOUs at 6-7; *but see* 52 U.S.C. § 20704 (allowing disclosure of records obtained through the CRA to certain other governmental entities, but not an outside contractor).

absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger*, 597 U.S. at 197 (quoting 7C Wright & Miller's Federal Practice & Procedure § 1909 (3d ed. 2022)). That is precisely the situation here, where CAG and Secretary Warner may share a desired outcome "[a]t a high level of abstraction" but have differing interests. *Id.* at 196.

As Plaintiff emphasizes, the State bears a statutory duty to protect voters' confidential information. ECF No. 36 at 9. CAG, on the other hand, is focused entirely on maintaining the security of its members' information and ensuring that West Virginians are not dissuaded from civic participation. This is a significant difference and is sufficient to find inadequacy of representation here. *See Democratic Nat'l Comm. v. N.C. State Bd. of Elections*, No. 1:23-cv-862, 2023 WL 12218247, at *2 (M.D.N.C. Nov. 6, 2023) (finding merit to political party and voters' argument that state and legislative intervenors did not fully represent their interest).[6] This Court has, accordingly, allowed private parties to intervene in cases involving state defendants. *See Castro v. Sec'y of State Andrew Warner*, No. 2:23-cv-00598, 2023 WL 7399123, at *2 (S.D. W. Va. Oct. 11, 2023) (noting political party's intervention). The *DeMarinis* Court came to the same conclusion. *See* Order at 1, *United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 2, 2026), Dkt. No. 38 ("Proposed Intervenors may not be adequately represented by the existing parties."); *see also Oregon*, 2025 WL 3496571, at *2 ("Proposed Intervenors have specific interests in protecting their privacy . . . and in increasing voter participation . . . that existing Defendants do not share."); Mem. Decision and Order at 4, *United States v. Henderson*, No. 2:26-cv-00166-DBB-DAO (D. Utah Mar. 23, 2026), Dkt. No. 33 (Secretary of State's obligations and duties under statutes "differ in their breadth from the privacy and related interests of the [movant] and its members.").

Plaintiff's arguments rest on three recent cases in which it sued Arizona, North Carolina, and Hawai'i, and the district courts in those cases denied intervention under Rule 24(a) based on

---

[6] The court ultimately granted permissive intervention. *Democratic Nat'l Comm.*, 2023 WL 12218247, at *3.

the presumption of adequacy. ECF No. 36 at 9-11. Plaintiff does not address that in *Nago*, the parallel case in Hawai'i, the district court had previously granted permissive intervention for separate intervenors. *See* Order, *United States v. Nago*, No. 1:25-cv-00522-LEK-RT (D. Haw. Jan. 5, 2026), Dkt. No. 20. In any event, the substantial weight of authority is on the other side. *See supra* n.2. CAG has interests distinct from Secretary Warner, and it therefore meets the requirements of Rule 24(a).

## IV.    CAG is entitled to permissive intervention.

Plaintiff does not contest that CAG's Motion was timely and that there is at least one common question of law or fact. ECF No. 36 at 11. Instead it rehashes its arguments regarding mandatory intervention, and further argues that CAG will not contribute to the development of the case. ECF No. 36 at 11-12. These arguments fail, and courts in parallel cases have granted permissive intervention, including in the past several months. *See United States v. Adams*, No. 3:26-cv-00019-GFVT, 2026 WL 1008141, at *3-4 (E.D. Ky. Apr. 14, 2026); Text Order, *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Mar. 16, 2026), Dkt. No. 59 (granting non-profit civic engagement group permissive intervention); Order, *United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Jan. 6, 2026), Dkt. No. 90 (same); Order, *United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB (D. Nev. Mar. 20, 2026), Dkt. No. 63.

Plaintiff agrees that CAG's Motion meets the threshold requirements for permissive intervention. *See* Fed. R. Civ. P. 24(b); *see also* ECF No. 36 at 11. Permissive intervention is therefore appropriate where the proposed intervenor will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 496 (M.D.N.C. 2017) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *see also B. P. J. v. W. Va. State Bd. of Educ.*, No. 2:21-cv-00316, 2021 WL 5711547, at *2 (S.D. W. Va. Dec. 1, 2021) (same). "Permissive intervention [under Rule 24(b)] is left to the broad discretion of the [c]ourt and should be construed liberally in favor of intervention." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. CV 9:12-610-RMG, 2012 WL 13008326, at *2

12

(D.S.C. Aug. 14, 2012). CAG has protectable interests in this litigation, and their interests are not adequately represented.[7] *See supra* Part III.A, C. CAG will assist in the factual development of this litigation because it represents the interest of thousands of West Virginians whose interests are currently not represented in the litigation and who can meaningfully contribute to the impact of this litigation in a way that no other party can. For example, the Memorandum of Law in Support of CAG's Motion to Dismiss includes considerable information about the various Memoranda of Understanding that Plaintiff has entered into with states and between federal agencies. ECF No. 42 at 14-16. It also addresses DOJ's communications and conduct surrounding these suits. *Id.* at 16. Both are relevant to Plaintiff's purported "purpose" for its demand under the Civil Rights Act, and therefore central to the issue in this case.

Plaintiff does not argue it will be prejudiced, merely that intervention would be "superfluous." ECF No. 36 at 11; *but see Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 179 F.R.D. 505, 510 (W.D.N.C. 1998) (permitting intervention where party opposing "did not argue, and there has been no showing, that allowing Proposed Intervenors to intervene would prejudice the original parties' rights"). "A finding by the court that the presence of the intervenor will not prejudice the original parties serves to encourage the court to exercise its discretion to allow intervention." 7C Wright & Miller's Federal Practice & Procedure § 1913 (3d ed. 2022). CAG has demonstrated it will not unduly delay the adjudication by promptly moving to intervene and filing both its opposition to Plaintiff's Motion to Compel and its own Motion to Dismiss within the period required by the rule. As such, permissive intervention is appropriate.

### CONCLUSION

Proposed Intervenor-Defendant West Virginia Citizen Action Group respectfully requests that the Court grant its motion to intervene under Rule 24(a) or, in the alternative, permissive intervention under Rule 24(b).

---

[7] Adequacy of representation in only a "minor variable" in the analysis under Rule 24(b). *S.D. ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

May 15, 2026

Respectfully submitted,

/s/Aubrey Sparks

Aubrey Sparks (WV Bar No. 13469)
American Civil Liberties Union of
West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
asparks@acluwv.org

Adriel I. Cepeda Derieux*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 457-0800
acepedaderieux@aclu.org

Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
tlee@aclu.org
slakin@aclu.org

Brent Ferguson*
Daniel S. Lenz*
Sejal Jhaveri*
Renata O'Donnell*
Kate Hamilton*
Alexis Grady*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
agrady@campaignlegalcenter.org

Maura Eileen O'Connor *
Justin Lam*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu
lamju@brennan.law.nyu.edu

*Pro Hac Vice Applications Pending*

Counsel for Proposed Intervenor-Defendant West Virginia Citizen Action Group