# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          *Plaintiff*,

   *v.*

KRIS WARNER, in his Official Capacity as WEST VIRGINIA SECRETARY OF STATE,

          *Defendant*.

Case No.: 2:26-cv-00156

**WEST VIRGINIA ALLIANCE FOR RETIRED AMERICANS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE AND REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AS DEFENDANT**

The Department of Justice ("DOJ") has moved for leave to file an untimely response in opposition to the West Virginia Alliance for Retired Americans' (the "Alliance") motion to intervene as Defendant. The Alliance submits the following memorandum of law in opposition to DOJ's motion for leave, and, in the event the Court grants the motion for leave, reply in support of the Alliance's motion to intervene.

## INTRODUCTION

The Alliance seeks intervention to directly protect the important privacy interests of its more than 51,000 members whose personal information is the *target* of DOJ's unprecedented attempt to compel the production of West Virginia's (and near every other state's) unredacted voter file. Of the 30 lawsuits nationwide which DOJ has brought against states that have declined to hand over voters' private information, federal courts have granted intervention to voters and organizations that represent them in 22 cases, recognizing the important perspective that these intervenors—who speak directly for those who will suffer the most significant and direct injuries should DOJ succeed—bring to these proceedings.[1] This includes *14* cases in which chapters of the Alliance specifically have been granted intervention, with some of those courts granting those motions *as of right*. *See, e.g.*, *United States v. Benson*, No. 1:25-cv-1148, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9, 2025); *see also* Minute Order, *United States v. Evans*, 1:25-cv-4403 (D.D.C. Mar. 16, 2026) (finding Maryland/DC Alliance for Retired Americans had Article III

---

[1] Only one of the 30 courts in which these cases have been filed has denied all motions to intervene. As discussed further below, that decision is a striking outlier that cannot be reconciled with the law governing intervention, including in particular in this Circuit. Six courts (including this one) have motions to intervene that they have yet to decide.

standing and granting intervention as of right) (attached as Ex. A); Min. Order, *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Jan. 6, 2026) (granting intervention as of right).[2]

Not only does that give the Alliance a unique perspective on this nationwide effort that none of the other Defendants have, its history in these cases establishes a firm track record of bringing useful information to the courts as they grapple with these matters. In the Michigan case, the district court relied exclusively on an argument raised by the Michigan Alliance alone to dismiss DOJ's complaints. *See United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789, at *8 (W.D. Mich. Feb. 10, 2026) ("[T]he Court rejects Michigan's arguments but finds persuasive [the Alliance's] argument[.]"). Other courts to have decided motions to compel and to dismiss in these cases have similarly relied on the arguments and briefing specifically offered by intervenors in making those decisions. *See, e.g.*, *United States v. Weber*, 816 F. Supp. 3d 1168, 1188 (C.D. Cal. 2026) (relying on "Intervenors' analysis" of NVRA precedent in dismissing DOJ's complaint); *United States v. Oregon*, No. 6:25-cv-1666, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) (citing intervenors' factual submission in order dismissing DOJ's complaint). DOJ has thus far appealed these orders in Michigan, California, and Oregon, and intervenors are parties to the appeals. No. 26-1225 (6th Cir. Feb. 27, 2026); Nos. 26-1231, 1232 (9th Cir. Mar. 3, 2026).

The Alliance moved promptly to intervene in this action on March 6, 2026, just eight days after DOJ filed its complaint. The deadline to respond to its motion was 14 days later, on March 20. That day came and went, with no response from DOJ. Another *seven weeks* passed before DOJ

---

[2] The Alliance noted in its motion to intervene, which was filed in early March of this year, that at that point its sister chapters had been granted intervention in eleven of the parallel cases brought by the DOJ. *See* Alliance Mem. of Law in Support of Mot. to Intervene at 2, Dkt. No. 5 ("Mot. Intervene"). Since then, three other Alliance chapters have been granted intervention in additional cases. *See United States v. Adams*, No. 3:26-cv-19 (E.D. Ky. Apr. 14, 2026); *United States v. Aguilar*, 3:25-cv-728 (D. Nev. Mar. 20, 2026), Dkt. No. 63; *Evans*, Ex. A.

suddenly, last Friday, filed a motion seeking leave to file an untimely opposition. This Court should deny that motion and grant the Alliance's motion to intervene. DOJ's claim that it failed to comply with this Court's clear rules governing the filing of opposition briefs because it was unsure whether Secretary Warner would oppose its demand is unbelievable on its face and belied by the correspondence between the Secretary and DOJ, as well as by DOJ's own representations in its proposed opposition to intervention. Further, it does not explain why DOJ did not ask this Court for an extension to file its opposition before the deadline elapsed. Parties are bound by the Federal and Local Rules and are not permitted to take a wait-and-see approach and then file briefs on their own invented timelines. Courts in the Fourth Circuit routinely (and correctly) deny motions under such circumstances, *see Spencer Med. Assocs. v. Comm'r*, 155 F.3d 268, 273 (4th Cir. 1998), and this Court should do the same.

Nor is DOJ's opposition well founded. DOJ fails to rebut the Alliance's showing establishing its entitlement to intervention as of right under Rule 24(a): the motion to intervene is undisputedly timely, the Alliance has strong interests that will be impaired by this action if DOJ succeeds, and no party adequately represents those interests. *See, e.g.*, *United States v. Oregon*, No. 6:25-cv-1666, 2025 WL 3496571, at *2 (D. Or. Dec. 5, 2025); *United States v. Henderson*, No. 2:26-cv-166, 2026 WL 800636, at *2 (D. Utah Mar. 23, 2026). DOJ instead relies on arguments rejected by binding precedent and the numerous courts that have granted intervention in parallel cases, ignoring all of that in favor of an unpublished decision by the solitary court that has denied intervention, which court is a striking outlier, out of step with every other court to have ruled on similar motions in these cases and irreconcilable with Fourth Circuit precedent. Further, DOJ's conclusory claim that the Alliance offers nothing beyond what the Secretary offers is flatly wrong, as evidenced by the proposed briefing that the Alliance has filed with the Court. Finally,

3

DOJ also fails to offer any coherent basis on which to deny the Alliance's alternative request for permissive intervention.

It is well established that the Fourth Circuit favors "liberal intervention . . . to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotation omitted). Because the Alliance has demonstrated its entitlement to intervention, the Court should grant its motion to intervene.

## ARGUMENT

I.  **The Court should deny DOJ's motion for leave to file an untimely opposition to the Alliance's motion to intervene.**

As a threshold matter, because DOJ offers a non-credible excuse for its delay, the Court should deny its motion for leave. DOJ filed its proposed opposition to intervention more than *seven weeks* after it was due, without any serious excuse for its tardiness.[3] The Court therefore need not consider it. Courts "ha[ve] no obligation to consider . . . untimely motions." *United States v. Gadsden*, No. WDQ-11-0302, 2013 WL 3356133, at *2 n.5 (D. Md. July 2, 2013); *see also Spencer Med. Assocs.*, 155 F.3d at 273 ("[T]he mere untimeliness of [a party's] motion" may "support[] the court's denial."). And while some courts consider untimely motions "if the movant 'offer[s] an acceptable explanation for [the motion's] tardiness,'" *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002), DOJ has failed to offer an acceptable—or even plausible—explanation here.

---

[3] Under L.R. 7.1(a), responses to motions are due 14 days after the motion is filed. The Alliance moved to intervene on March 6, 2026, and any opposition was due by March 20. DOJ filed its proposed opposition 63 days later, on May 8, 2026. *See* Dkt. No. 36. The Court should exercise its discretion not to consider it. *See, e.g., United States v. Johnson*, 953 F.2d 110, 115–16 (4th Cir. 1991) (affirming district court's decision declining to consider motion filed "nearly three weeks after the trial court's deadline").

4

DOJ cites *no* authority for its assertion that the Alliance's motion to intervene was "premature," DOJ Mot. for Leave to File Opp'n to Intervention at 1, Dkt. No. 35 ("Mot. for Leave"), and it is simply wrong. Nothing in Rule 24 ties motions for intervention to service of the complaint and courts routinely grant intervention to parties that file before Plaintiffs have perfected service—including in parallel cases that DOJ has brought in other states seeking to compel their unredacted voter file. In fact, in Virginia just last week, a federal district court found that proposed intervenors' filing of a motion to intervene shortly after the case was filed—and months before DOJ served Defendants—*weighed in favor* of intervention because it demonstrated proposed intervenors' diligence. *See, e.g.*, Mem. Order at 3, *United States v. Koski*, No. 3:26CV42 (E.D. Va May 6, 2026) (explaining "proposed intervenors fil[ing] . . . more than two months before Plaintiff served Defendant with the Amended Complaint," weighed in favor of intervention, demonstrating intervenors would not "unduly delay" proceedings). And while Rule 24 does not say anything about intervenors needing to wait until the plaintiff perfects service to move to intervene, it expressly requires that the motion to intervene be "timely." Fed. R. Civ. P. 24(a), (b)(1). Reading into the Rule a silent requirement that intervenors must wait for service—no matter how long it takes—could trap would-be intervenors in a murky not-so-fun house, allowing plaintiffs that fail to quickly serve defendants to argue that any motion to intervene comes either too early or too late.

DOJ's argument that its delay should be excused because—it claims—it was impossible to know "to what extent West Virginia would defend against" the United States' demand, Mot. for Leave at 1, is refuted by the very correspondence between DOJ and Secretary Warner that DOJ cites as the basis for filing its Complaint, *see* Compl. ¶¶ 24–26. DOJ now claims that it was not clear that "West Virginia intend[ed] to fully oppose" the demand until Secretary Warner wrote, in his opposition to DOJ's motion to compel, that he remained "committed to following state and

federal law barring disclosure of sensitive voter information," Mot. for Leave at 1, but this exact message was communicated to DOJ over and again before it filed suit. In Secretary Warner's September 22 letter to DOJ, for example, he wrote that he "takes seriously his responsibility to safeguard" the "sensitive personally identifiable information of [West Virginia] citizens . . . from unauthorized disclosure," that state law "expressly prohibits disclosure of a registrant's . . . Social Security number, [and] driver's license number," that DOJ failed to provide any authority for its demand for this sensitive information, and that the Secretary's Office only "makes voter registration lists available subject to statutory limitations." DOJ Mot. Compel, Ex. 2 (Sept. 22 Letter) at 1–2, Dkt. No. 14-3. Secretary Warner then reiterated all of these positions in his February 11, 2026 letter to DOJ. *See* Secretary Warner Mot. Dismiss, Ex. A (Feb. 11 Letter) at 2, Dkt. No. 24-1 (noting, among other things, that "[n]othing in the interim has altered our position" that the Secretary of State only "makes voter registration lists available subject to the statutory limitations [already] set forth"). Two weeks later, DOJ sued. *See* Dkt. No. 1.

DOJ cannot keep this story up even through its own proposed opposition to intervention, in which it immediately contradicts its claim that it was unclear whether Secretary Warner opposed DOJ's demand. In an attempt to claim (incorrectly) that Secretary Warner adequately represents the Alliance's interests, DOJ argues that it is clear that Secretary Warner will not "change his position" opposing DOJ's demand because "*prior to the United States' application to this Court*," Secretary Warner "refused the demand citing state law and privacy interests." Plaintiff's Response in Opp'n to Intervenors' Motions to Intervene ("Opp'n") at 9, Dkt. No. 36 (emphasis added). If Secretary Warner's prior refusal establishes that he will oppose DOJ's demand now, it surely established that fact when he made those statements. The Court should not accept DOJ's clearly

contrived claim that it did not know the Secretary's position until only recently in order to justify its extremely tardy proposed opposition.

In short, because DOJ failed to file an opposition by the deadline clearly set forth in the Court's rules, and fails to offer an adequate basis to excuse that violation, the Court can and should deny its motion for leave to file an untimely opposition, which comes a full seven weeks late. *See, e.g.*, *Johnson*, 953 F.2d at 115–16 (affirming district court's decision declining to consider motion filed "nearly three weeks after the trial court's deadline").

## II. The motion to intervene should be granted.

Even if the Court were to excuse DOJ's lengthy delay, the motion to intervene should be granted. First, the Alliance has demonstrated that it is entitled to intervene in this matter as of right and nothing in DOJ's proposed opposition rebuts that showing. The Alliance's motion was timely and will not prejudice the parties, its interests and those of its members are threatened by the lawsuit, and Secretary Warner—whose interests differ from the Alliance's—does not adequately protect the Alliance's interests.

In the alternative, the Court should exercise its discretion to grant permissive intervention. The Alliance has an exceedingly unique perspective in light of its sister chapters' broad participation in the other cases brought by DOJ seeking the same relief from other states and has proven itself to offer helpful arguments and perspectives in these matters that will aid in the Court's decision. Further, the Alliance represents more than 51,000 West Virginians whose personal and private data is directly at stake. Courts have repeatedly recognized that those interests are substantial (including in the nearly two dozen parallel proceedings in which courts have granted motions to intervene by the Alliance or similar organizations so far), and a party that speaks directly for those voters should be among those whose perspectives are heard in this action.

A.      **The motion to intervene is timely and will not prejudice the parties.**

Whether the Court grants the motion as of right or on permissive grounds, there is no dispute that the Alliance's motion to intervene was timely. *See* Opp'n at 11 ("Here, admittedly, the motion is timely . . . ."). This is obvious. The Alliance moved just eight days after DOJ filed its complaint, seeking to participate at the earliest possible stage, and before any others. *See* Mot. Intervene at 11 (citing *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 17–18 (S.D. W. Va. 2015)). As such, this factor clearly favors granting the Alliance's motion to intervene.

B.      **The Alliance is entitled to intervene as of right.**

The Alliance has made each of the showings required under Rule 24(a)(2) to entitle it to intervention as of right: it has an interest relating to the subject of the action and is so situated that disposition of the action may as a practical matter impair or impede its ability to protect that interest, and existing parties do not adequately represent that interest. In its proposed opposition, DOJ attempts to rewrite these criteria, imposing legal tests that DOJ invents or that have been previously rejected by courts, and mischaracterizes the Alliance's arguments and asserted interests. The opposition should be overruled and the Alliance should be granted intervention as of right.

1.      **The Alliance's ability to protect its interest will be impaired or impeded if DOJ succeeds in this action.**

Although dozens of courts have recognized the interests that the Alliance asserts in its motion to intervene as more than adequate to satisfy Rule 24(a)(2)—indeed, a federal court in Washington, D.C., recently found that those interests meet the more stringent test for Article III standing, *see* Ex. A—DOJ attempts to avoid this clear conclusion by recharacterizing the Alliance's interests in the privacy rights of its members and their mission-critical voting programs as speculative interests. The Court should reject this reinterpretation and find that this factor weighs in the Alliance's favor.

8

*First*, DOJ argues that the Alliance cannot have a protectable interest because the statutes DOJ purportedly seeks to enforce—the NVRA and HAVA—do not impose governmental duties, such as voter list maintenance, upon the Alliance, Opp'n at 5–6, but "nothing in the text of [Rule 24] limits its application in [this] way." *Oregon*, 2025 WL 3496571, at *1–2 (rejecting similar argument). The reason why is obvious: Rule 24(a)(2) does not "engraft[] a limitation on intervention of right to parties liable to the plaintiffs on the same grounds" as defendants, and "a prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1178–79 (9th Cir. 2011) (citation modified). "[T]he standards for whether a party has a cause of action as a plaintiff and whether a party can intervene, here as a defendant, are different: as Rule 24's plain text indicates, intervenors of right need only an interest in the litigation—not a 'cause of action' or 'permission to sue.'" *Johnson & Johnson Health Care Sys. Inc. v. Kennedy*, No. 1:24-cv-3188, 2025 WL 1411076, at *3 (D.D.C. May 15, 2025) (citation modified).

*Second*, DOJ's contention that the Alliance's privacy interests are not "concrete," is unavailing. Opp'n at 6. DOJ suggests that the downstream consequences of unlawful disclosures of sensitive personal information are not "imminent" and are too "speculative" to confer standing. *Id*. at 6, 7. This argument fails, first, because the Fourth Circuit has never held that intervenors need demonstrate standing to intervene. *See, e.g.*, *NAACP, Inc. v. Duplin County*, No. 7:88-cv-5-FL, 2012 WL 360018, at *3 n.3 (E.D.N.C. Feb. 2, 2012) (declining "to impose the requirement that defendant intervenors must show Article III standing in order to intervene as a matter of right" because "[t]o hold otherwise would impose a stricter requirement on Rule 24(a)(2) intervention than what appears to be warranted under the law of this circuit") (citing *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998)); *see also Benson*, 2025 WL 3520406, at *4 ("[D]efendant-intervenor

need not demonstrate standing because intervening as defendant does not 'entail[] invoking a court's jurisdiction.'") (quoting *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019)).

But even if intervenors had to satisfy Article III, both the Supreme Court and the Fourth Circuit have held disclosure of sensitive personal information *is* sufficient to satisfy even that more demanding standard. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021) (identifying "intrusion upon seclusion" as harm "traditionally recognized as providing a basis for lawsuits in American courts"). This includes a decision issued by the Fourth Circuit just last month, in which it assessed standing to challenge the Trump Administration's efforts to centralize data, and held that when a new disclosure of records is threatened, the entity to whom the personal information is released need not "misuse the information it learns or disseminate it to the public" for a challenger to have standing; rather "the unjustified intrusion upon the [individual's] privacy *is* the [relevant] harm." *AFL-CIO v. SSA*, 172 F.4th 361, 369 (4th Cir. 2026); *see also All. for Retired Ams. v. Bessent,* No. 25-cv-313, 2026 WL 622235, at *3–4 (D.D.C. Mar. 5, 2026) (discussing cases); *Benson*, 2025 WL 3520406, at *3 (finding Proposed Intervenor Michigan Alliance and its members have "an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm").

And, notably, while the D.C. Circuit has at times indicated that intervenors may need to satisfy Article III,[4] the D.C. district court presiding over the lawsuit that DOJ brought there seeking

---

[4] It is not clear this is still good law as the Circuit has noted that this precedent is likely at odds with Supreme Court precedent. *See Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (noting the Supreme Court's holding that intervenors need not have "'independent Article III standing'" when seeking the same relief as a party to the case "is in tension with some of our court's precedent requiring an intervenor to demonstrate Article III standing") (quoting *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)).

to compel D.C.'s unredacted voter file had no problem concluding that the local Alliance chapter *did* satisfy Article III, leading it to grant intervention. *See* Ex. A.[5]

*Third*, DOJ offers nothing to support its conclusory assertion that any disclosure of sensitive information is harmless because of the existence of privacy laws. *See* Opp'n at 7. For instance, DOJ asserts that the Privacy Act "already prohibits the Department of Justice ("DOJ") from disclosing information about individual voters," but this ignores that it has entirely failed to meet the requirements of that Act, as discussed in the Alliance's proposed motion to dismiss. *See* Alliance Mem. in Support of Motion to Dismiss at 17–20, Dkt. No. 45. Further, the Alliance has maintained that DOJ's demands violate West Virginia's privacy laws, too. *See* Mot. Intervene at 1, 8. DOJ's related argument that the privacy interests the Alliance seeks to protect are too "abstract" and "general[ized]" similarly fails. *See* Opp'n at 7–8. As the Fourth Circuit has explained, disclosures that affect large swaths of the population are nonetheless "particularized" to individuals whose information is disclosed precisely because the right to privacy belongs to the individual. *AFL-CIO*, 172 F.4th at 368 n.5; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016), *as revised* (May 24, 2016) ("The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance.").

_____

[5] For this reason, this case is unlike the "potential, indeed speculative, competitive injury" discussed in *Media General Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989). *See* Opp'n at 6. And at any rate, although the court denied intervention as of right to the movant in *Media General*, it found the injury sufficient for permissive intervention and granted the motion to intervene. *Id*. at 780. As for *Holmes v. Elephant Insurance Company*, 156 F.4th 413 (4th Cir. 2025), it is inapposite here (and superseded by *AFL-CIO v. SSA*), because *Holmes* was concerned with Plaintiffs' potential standing and intervenors need not "show Article III standing in order to intervene as a matter of right" in this Circuit. *NAACP, Inc.*, 2012 WL 360018, at *3 n.3; *see also N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019).

*Fourth*, DOJ falsely asserts that a district court held in an "identical" context that the Alliance's "interest" in protecting privacy was "speculative and premature" because a consent order required DOJ to comply with privacy laws. Opp'n at 8 (citing Order, *U.S. v. N.C. Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Jan. 12, 2026), Dkt. 87 ("NC Order")). But that situation was not "identical" at all. Quite to the contrary, and as that order itself makes clear, that case settled *without* DOJ having made the "request for the information" at issue, and the Alliance *would* have an interest once its members' information was at risk. NC Order at 4, 8. The relief DOJ continues to seek here *is* disclosure of the Alliance's members' information.

*Finally*, contrary to DOJ's claim, *see* Opp'n at 8, the Alliance explained that the potential of having its members' sensitive private information released may chill its members' civic engagement. Mot. Intervene at 12–13. Other courts evaluating challenges to DOJ's voter demands have recognized the same. *See, e.g.*, *Benson*, 2025 WL 3520406, at *2 (granting intervention where intervenor "contend[ed] that the possibility of disclosure will hinder its voter registration activities by deterring people from registering to vote" and that "DOJ's access to [individuals'] information could chill their speech due to fear of government retaliation"). For all these reasons DOJ's demand threatens the Alliance's interests and this factor supports granting intervention as of right.

### 2.    The Secretary does not adequately represent the Alliance's interests.

DOJ's argument that the Secretary adequately represents the Alliance's interests because they "share the same goal," Opp'n at 8, is at odds with controlling precedent. While both may seek a similar litigation outcome, they do so based on distinct interests. The Supreme Court has held that interests, not objectives, guide the inquiry: it is "normally is not enough to trigger a presumption of adequate representation" when an intervenor's "interest is similar to, but not identical with, that of one the parties." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (citation modified). The presumption DOJ advocates thus cannot apply here, where the

Alliance has interests in advancing its civic-engagement efforts and protecting members' rights, *See* Mot. Intervene at 17, which are "not [interests] identical with" the Secretary's.

This conclusion flows directly from long-standing precedent governing intervention. In *Trbovich v. United Mine Workers*, the Supreme Court reviewed a union member's effort to intervene as plaintiff in a suit the Secretary of Labor brought against his union. 404 U.S. 528, 539 (1972). As *Berger* summarized, "[a]t a high level of abstraction, the union member's interest and the Secretary's might have seemed closely aligned," but a presumption was not warranted because "the union member sought relief against his union, full stop," while the Secretary had to consider "broader public-policy implications." 597 U.S. at 196. This distinction between "objective" and "interest" explains why *Berger* "calls into question whether the application of such a presumption is appropriate." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (after *Berger*, only presumption "on firm legal footing" applies where "interest is identical"). While DOJ attempts to wave *Berger* away, Opp'n at 9, it makes no mention of *Trbovich*, which involved a private litigant on the side of a "government party," *Berger*, 597 U.S. at 195–96.

The same is true of the unpublished Arizona district court opinion on which DOJ relies, *United States v. Fontes*, No. 2:26-cv-66, 2026 WL 657025 (D. Ariz. Mar. 9, 2026). Opp'n at 9 n.2, 10. Like DOJ, the *Fontes* court conflates "outcome" and "purpose" with interests, neglects *Trbovich* and *Berger*, and ignores the Supreme Court's warning against viewing interests at too high of a level of abstraction. *Id.* at *3–4. To the extent *Fontes* stands for a blunt presumption of adequacy, that is not the standard in the Fourth Circuit, *see, e.g.*, *Feller*, 802 F.2d at 729, and *Fontes* is outweighed by every other court to decide intervention in these DOJ actions—including several in the Ninth Circuit. *See, e.g.*, *Oregon*, 2025 WL 3496571, at *2; *Henderson*, 2026 WL

13

800636, at *2; Minutes of Motion Hearing, *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70; *see also* Opp'n at 10 n.3 (listing all 22 cases in which intervention has been granted).[6]

DOJ cites an intervention denied in Hawaii, *see* Opp'n at 10–11, but fails to inform the Court that order only denied intervention of *additional* intervenors after that court *granted* the intervention motions of other intervenors, including specifically a chapter of the Alliance. *See* Order, *U.S. v. Nago*, No. 1:25-cv-522 (D. Haw. Jan. 5, 2026), Dkt. 20. If anything, cases involving previously admitted intervenors *support* granting the Alliance's motion, as it was first to file here.

The Fourth Circuit has made clear that "burden of showing an inadequacy of representation is minimal," *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976), and the Alliance more than carries that burden, showing that its interests diverge from the Secretary's in several ways. *See* Mot. Intervene at 14–18. The Secretary shares neither the Alliance's interest in protecting its voter organizing programs nor the privacy interests of particularly vulnerable retirees among the Alliance's membership. *Id.* at 14–18. The Secretary, meanwhile, must enforce the requirements of the NVRA and HAVA and must reconcile diffuse interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (NVRA requires state officials to "balance competing objectives"). At least one state has settled pursuant to such interests.[7] And other courts evaluating DOJ's demands have recognized this possibility in granting intervention. *See, e.g.*, *Benson*, 2025 WL 3520406, at *6 (recognizing the state "has other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal

---

[6]   *See also* Democracy Docket, *DOJ Voter Data Access Cases*, https://www.democracydocket.com/cases/topic/doj-voter-data-access/ (collecting filings and orders) (last visited May 15, 2026).

[7] Robby Korth & Abigail Siatkowski, *Oklahoma Will Hand Over Voter Data To DOJ After Initially Declining*, Okla. Pub. Radio (Mar. 25, 2026), https://perma.cc/W3Y9-YE39.

government—that may ultimately induce it to stop defending the lawsuit or give up the information at issue").

Given this divergence, every single court to rule on the question in these cases—with the singular exception of *Fontes*—has granted motions to intervene by at least one set of voters and organizations—including the Alliance. Mot. Intervene at 17–18. Contrary to DOJ's conclusory assertion that the Alliance's presence in the case would be superfluous, the Alliance has already presented numerous arguments in this action that differ from or expand upon those raised by Secretary Warner, underscoring its importance to the development of the claims here. For example, the Alliance has explained how DOJ's claims in its 30 state voter file cases have evolved; in the first wave of DOJ's demands, it asserted claims under the NVRA and HAVA, but has since abandoned those claims, including in its demand here, which is an implicit admission that it lacks a basis to pursue its demand under those statutes. *See* Mot. Intervene at 7–8. The Alliance has explained the history and context of the NVRA, including that Congress chose to include a disclosure provision in that statute, undermining DOJ's claim that it may use the CRA to enforce the NVRA. *See* Alliance Mem. Supp. Mot. Dismiss at 3–4, 11–12, Dkt. No. 44. The Alliance has identified numerous other contexts in which courts have scrutinized government investigative demands, making clear that this Court should also engage in a meaningful review of DOJ's demand here. *See id.* at 10. And the Alliance has shown that DOJ's interpretation of the CRA would create a conflict between that statute and the NVRA, not just with HAVA as Secretary Warner points out. The NVRA contains provisions requiring state officials "to modify their [voter lists] where [the CRA] would prohibit such an alteration," *id.* at 14 (alterations in original) (quoting *United States v. Fontes*, 2026 WL 1177244, at *4 (D. Ariz. Apr. 28, 2026), and DOJ's interpretation of the CRA would thus lead to a direct conflict between the statutes. The Alliance has also explained

15

why the System of Records Notice on which DOJ has attempted to rely to satisfy its obligations under the Privacy Act fails to do so for this demand. *Id.* at 18–19.

Indeed, even DOJ's own filings in this case contradict its conclusory claim that the Alliance adds nothing new—just a few days ago, DOJ filed a motion requesting that it be granted additional pages specifically in order to "address the various arguments raised by the proposed intervenor West Virginia Alliance for Retired Americans." Mot. Leave to Exceed Page Limits at 1–2, Dkt. No. 38 ("Mot. Exceed Page Limits"). In doing so, DOJ explicitly recognized that these arguments "differ," otherwise there would be no need for DOJ to have extra briefing space to properly address them.

It bears emphasizing again that, already, in dismissing DOJ's complaints, courts have relied on arguments made by intervenors—sometimes completely uniquely—demonstrating how they contribute to these actions. *Supra* n.2; *see also Fid. Nat'l Title Ins. Co. v. Barringer Land SC, LLC*, No. 2:13-cv-69, 2013 WL 12136684, at *3 (N.D.W. Va. Dec. 19, 2013) (finding intervention warranted where "the existing party who purports to seek the same outcome [as intervenors] will not make all of the prospective intervenor's arguments"); *Alt v. EPA*, No. 2:12-cv-42, 2012 WL 12892210, at *5 (N.D.W. Va. Oct. 9, 2012) (same); *W. Watersheds Project v. Haaland*, 22 F.4th 828, 839 (9th Cir. 2022) (possibility intervenors "might raise new, legitimate arguments is a reason to grant").

## III.    Alternatively, the Court should grant permissive intervention.

In the alternative, this Court should grant permissive intervention. Indeed, if it does so, it need not also consider whether the Alliance is entitled to intervention as of right. *See, e.g.*, Memorandum Opinion and Order, *United States v. Adams*, No. 3:26-cv-19 (E.D. Ky. Apr. 14, 2026), Dkt. No. 34; Order, *United States v. Aguilar*, 3:25-cv-728 (D. Nev. Mar. 20, 2026), Dkt. No. 63; Order, *United States v. Simon*, No. 0:25-cv-3761 (D. Minn. Jan. 6, 2026), Dkt. No. 90;

16

Text Order, *United States v. Hanzas*, No. 2:25-cv-903 (D. Vt. Jan. 16, 2026), Dkt. No. 41; Text Order, *United States v. Matthews*, 3:25-cv-3398-CRL-DJQ (C.D. Ill. Mar. 2, 2026).

DOJ concedes that the Alliance has established two of the three factors governing permissive intervention: "the motion is timely," and the Alliance's defenses "raise the same questions of law and involve the same set of facts as Defendants." Opp'n at 11. The only factor that DOJ purports to challenge is whether intervention will "result in undue delay or prejudice to the existing parties." *Id*. (quoting *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. at 172). But DOJ offers only a half-hearted, three sentence argument in opposition. And even then, it does not claim delay or prejudice, for obvious reasons. If any party has delayed here it is DOJ, not the Alliance, which moved to intervene a mere eight days after this case was filed and has agreed to abide by any deadlines set by the Court. *See* Mot. Intervene at 18.

Instead, DOJ claims that the Alliance's participation would be "superfluous" because it allegedly has "no additional facts" related to the demand. Opp'n at 11–12. *See also* Mot. for Leave at 2 (DOJ claiming the Alliance only "raise[s] the same arguments against the United States as Secretary Warner"). These arguments are easily rejected for the reasons stated above. Further, DOJ ignores that, given its intervention in more than a dozen other of DOJ's voter file cases, the Alliance is uniquely positioned to offer insight into those parallel proceedings. *See* Mot. Intervene at 2. Absent the Alliance's intervention, DOJ would be the only party positioned to offer such a perspective, and the Court would benefit from the counter-perspective. Nor can DOJ seriously claim prejudice where it has already filed a motion to exceed the page limits allowed under Local Rule 7.1 in order to be able to "address the various arguments raised by the proposed intervenor" the Alliance. Mot. Exceed Page Limits at 1–2. Other courts have found these arguments useful,

17

and this Court should at a minimum grant the Alliance intervention so that it can similarly participate here.

## CONCLUSION

The Alliance respectfully requests that the Court deny DOJ's motion for leave to file an untimely opposition, Dkt. No. 35, and grant the Alliance's motion to intervene, Dkt. No. 4.

Dated: May 15, 2026,                    Respectfully submitted,

**POWELL & MAJESTRO PLLC**

/s/_____
Christina L. Smith (WVSB 7509)
Graham B. Platz (WVSB 14093)
405 Capitol Street, Suite 807
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
csmith@powellmajestro.com
gplatz@powellmajestro.com

**ELIAS LAW GROUP LLP**

Elisabeth Frost (DC Bar No. 1007632)*
Lucas Lallinger (DC Bar No. 1046778)*
Julianna Astarita (DC Bar No. 6340483)*
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 312-5904
efrost@elias.law
llallinger@elias.law
jastarita@elias.law

* Statement of Visiting Attorney filed concurrently with motion

*Counsel for Proposed Intervenor-Defendants West Virginia Alliance for Retired Americans*

18

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 15th day of May, 2026, with a copy of this document via the Court's CM/ECF system. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

/s/
Christina L. Smith (WVSB 7509)
Graham B. Platz (WVSB 14093)

*Counsel for Proposed Intervenor*

19