IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

THE UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    CIVIL ACTION NO.   2:26-cv-00156

KRIS WARNER,
*in his Official Capacity as*
*West Virginia Secretary of State,*

Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Compel Federal Election Records filed by the United States ("Plaintiff").   (ECF No. 15.)   Also pending before the Court is a Motion to Dismiss filed by Defendant Kris Warner ("Defendant").   (ECF No. 24.)   For the following reasons, the Court **DENIES** Plaintiff's Motion to Compel Production, (ECF No. 15), and **GRANTS** Defendant's Motion to Dismiss, (ECF No. 24).

## I.    BACKGROUND

This action is one of the many lawsuits brought by the federal government against numerous states throughout our nation.[1]   It stems from repeated requests by the Attorney General

---

[1] Thus far, eleven federal district courts and one court of appeals have now dismissed Plaintiff's lawsuits on motions similar to the ones pending before this Court.   No court has ruled in favor of the United States to date.   *See United States v. Benson*, No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026); *United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *United States v. Scanlan*, No.25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Demarinis*, No. CV SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, —— F. Supp. 3d ——, 2026 WL 1430354 (W.D. Wis. May 21, 2026); *United States v. Bellows*, – — F. Supp. 3d ——, 2026 WL 1430481 (D. Me. May 21, 2026); *United States*

1

of the United States for the West Virginia Secretary of State to turn over an unredacted copy of West Virginia's statewide voter registration list ("SVRL").  Like many other states, Defendant has steadfastly denied these requests.

It started on September 8, 2025, when Plaintiff sent a letter to Defendant seeking a copy of West Virginia's SVRL.  (ECF No. 1 at 5, ¶ 20.)  The information requested therein includes individuals' full name, date of birth, address, and driver's license or the last four digits of their social security number "as required under [the Help America Vote Act] to register individuals for federal elections."  (*Id*. at ¶ 22 (citing 52 U.S.C. § 21083(a)(5)(A)(i)).)  Plaintiff claims the letter indicated that the basis of the demand was the Civil Rights Act of 1960 ("CRA"), whereas the purpose of the request was to assess West Virginia's compliance with the maintenance provisions of the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). (ECF No. 39 at 8.)  On September 22, 2025, Defendant categorically denied this request.  (ECF No. 1 at 6.)

In response, on December 10, 2025, December 19, 2025, and January 13, 2026, the Attorney General sent follow-up emails renewing the request for a copy of West Virginia's SVRL. (*Id*.)  Again, on February 11, 2026, Defendant sent a letter maintaining the position that he would not be adhering to the request in any degree.  (*See id*.)

Consequently, on February 26, 2026, Plaintiff initiated this lawsuit.  (*See id*. at 1.)  The Complaint asserts that, by withholding the requested information, Defendant is violating the CRA.

---

*v. Fontes*, —— F. Supp. 3d ——, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, —— F. Supp. 3d ——, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, —— F. Supp. 3d —— –, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *United States v. Oregon*, —— F. Supp. 3d ——, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026).

(*Id*. at 6–8.)   Plaintiff asks the Court to (1) declare that Defendant's alleged wrongful concealment of information violates the CRA; and (2) subsequently order Defendant to relinquish West Virginia's SVRL and other federal election records demanded by the Attorney General to ascertain Defendant's compliance with HAVA and the NVRA.   (*Id*.)

Plaintiff then filed the pending Motion to Compel Federal Election Records on April 3, 2026.   (ECF No. 14.)   Defendant filed a response, (ECF No. 26), and Plaintiff replied, (ECF No. 49).   Defendant subsequently filed the pending Motion to Dismiss on April 29, 2026.   (ECF No. 24.)   Plaintiff filed a response, (ECF No. 39), and Defendant replied, (ECF No. 49).

As such, these motions are fully briefed and ripe for adjudication.

## II.     *LEGAL STANDARD*

As an initial matter, the parties dispute the appropriate standard for this case.   According to Plaintiff, it is entitled under Title III of the CRA to a "special statutory proceeding" on its Motion to Compel Production, under which the Court plays a "limited" role.   (ECF No. 15 at 5.) Defendant argues that the Federal Rules of Civil Procedure ("FRCP") govern this case, and that Plaintiff is not entitled to any sort of alternative proceeding.   (ECF No. 26 at 9.)   The Court agrees with Defendant.

The Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, *except as otherwise provided by statute*, by local rule, or by court order in the proceedings."   Fed. R. Civ. P. 81(a)(5) (emphasis added).   Nothing in the text of Title III of the CRA establishes a special statutory proceeding.   *See* 52 U.S.C. § 20701 et seq.; *accord Weber*, 816 F. Supp. 3d at 1182; *Oregon*, 2026 WL 318402, at *8 (confirming "[t]here is no current or

3

binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III"). Rather, the CRA simply provides that a district court "shall have jurisdiction by *appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added).

The statute does not define what an "appropriate process" might entail. Plaintiff nevertheless relies primarily on *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) to support its position that the "appropriate process" contemplated by statute requires a proceeding in which the Court's autonomy is "severely limited." (ECF No. 15 at 4.) That reliance is misplaced. Two years after *Lynd*, the Supreme Court interpreted identical language in a similar statute and held that because that statute "contains no provision specifying the procedure to follow in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). The Fourth Circuit has applied *Powell* to other demands for records in the context of federal agencies. *See, e.g., United States v. Newport News Shipbuilding & Dry Dock Co.*, 837 F.2d 162, 165–66 (4th Cir. 1988); *E.E.O.C. v. Md. Cup Corp.*, 785 F.2d 471, 475–76 (4th Cir. 1986).

As such, the Court will evaluate Plaintiff's Motion to Compel under the same standard applicable to Defendant's Motion to Dismiss brought pursuant to Rule 12(b)(6). A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint

does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.*

Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III.    DISCUSSION

Plaintiff justifies its demand to acquire West Virginia's SVRL by invoking the alleged pressing necessity to investigate the State's compliance with list maintenance provisions of the NVRA and HAVA. (*See* ECF No. 1 at 5.) Plaintiff asserts its authority to obtain these records for investigation under Title III of the CRA. (*Id.*) Conversely, Defendant argues, *inter alia*, that Plaintiff has failed to show its entitlement to West Virginia's SVRL under Title III of the CRA[2]

---

[2] The Court assumes without deciding, for purposes of its analysis, that an electronic SVRL is a record subject to the retention and demand provisions of Title III. 52 U.S.C. §§ 20701, 20703; *but see Demarinis,* 2026 WL 1780586, at *5 (concluding that "an SVRL is not a record or paper that a state must produce to the United States under the CRA.")

because (1) it failed to provide a factual basis for its demand, and (2) the stated purpose of the demand falls outside of Title III's scope.[3]   As discussed below, the Court agrees with Defendant.

### A.  Basis and Purpose

This case presents the question of whether the Attorney General of the United States is permitted, by law, to obtain West Virginia's SVRL.  To answer this, the Court's analysis must remain tethered to the text of Title III of the CRA.  *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004) (explaining that statutory interpretation "begins with the statutory text, and ends there as well if the text is unambiguous" (citations omitted)).  If a statute does not define a term, the Court gives the term its ordinary meaning.  *EPA v. Calumet Shreveport Refin., L.L.C.*, 605 U.S. 627, 638 (2025).  Under this first "cardinal canon" of construction, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992).

To that extent, Title III of the CRA sets out certain requirements regarding federal election records, and penalizes the theft, destruction, or alteration of those records.  *See* 52 U.S.C. §§ 20701, 20702.  Of relevance, the CRA mandates that "[a]ny record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative . . . be made available for inspection, reproduction, and copying." *Id*. § 20703 (emphasis added.)  The statute commands that the written demand "*shall* contain a statement of the *basis and the purpose therefor*."  *Id*. (emphasis added).

---

[3] Defendant also argues that (1) the demand seeks information not covered by Title III; (2) if Plaintiff's requests were honored, three federal privacy laws would be violated in the process; and (3) West Virginia law prohibits the unredacted disclosure sought.  (ECF No. 25 at 6.)  Because the Court concludes that Plaintiff's Complaint failed to contain a statement of the basis and purpose for the demand as required by law, the Court does not need to reach Defendant's remaining arguments.

The central question then becomes how to construe the statute's distinct requirements of providing a description of the "basis" and "purpose" of the demand.

### 1. Plaintiff's Demand Lacks a Sufficient Statement of its Basis

Plaintiff's demand fails to include a factual basis, as required by Title III.[4]  The letter begins with an overview of the Attorney General's authority to request and obtain West Virginia's SVRL under the NVRA, HAVA, and Title III of the CRA.  (ECF No. 14-2 at 1–3.) [5]  The letter then specifically references the CRA by stating: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is requesting an electronic copy of West Virginia's complete and current VRL. The purpose of this request is to ascertain West Virginia's compliance with the list maintenance requirements of the NVRA and HAVA."  (ECF No. 14-2 at 1–3.)

Clearly, this demand is devoid of any factual basis.  The demand includes no indication that West Virginia is suspected to be noncompliant with the list maintenance requirements of HAVA or the NVRA, nor does it point to any anomalies in West Virginia's voter registration data. Indeed, the letter contains the term "purpose" but does not use the word "basis," or provide any equivalent explanation supporting the necessity of the records request.  *See Galvin*, 2026 WL 972129, at *4 (taking into consideration the fact that neither the word "basis" nor any equivalent

---

[4] To determine whether the written demand provided a statutorily acceptable "basis," the Court is directed to the contents of the written demand.  *See Galvin*, 2026 WL 972129, at *9 (finding that the statute directs the Court to the Attorney General's written demand—rather than Plaintiff's subsequent court filings—to determine whether that demand contained a statement of the basis for the demand).

[5] In considering a motion to dismiss, the Court "should properly take judicial notice of its own records[.]"  *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir.1990); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016) (finding that courts can "'take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.'").  The Complaint incorporates by reference the September 8, 2025, letter, (*see* ECF No. 1, ¶ 8), which was submitted as an exhibit to Plaintiff's Motion to Compel, (ECF No. 14-2 at 1–3).

term was included in the demand letter).   Plaintiff nevertheless offers several theories on how this demand did provide a factual basis, which all fail.

To start, Plaintiff claims the legally justifiable basis of its demand is the CRA itself.   (ECF No. 1, ¶ 21.)   Plaintiff insinuates that the term "basis" in Title III refers to the legal basis for the investigation, rather than a factual basis supporting its pursuit.   (*See* ECF No. 15 at 10.) Consequently, a permissible statement of the basis for the demand could just be a recitation of the statute itself.

The Court disagrees.   This circular interpretation contravenes practical principles of statutory analysis by disregarding the ordinary meaning of the language employed by Congress. *See Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)).   Title III does not define the term "basis," so it must be given its ordinary meaning.   *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995) (citation omitted).   A basis is "an underlying *fact* or condition."   *Basis*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added); *see also Basi*s, Merriam-Webster (2026), https://www.merriam-webster.com/dictionary/basis (last visited June 20, 2026) (providing that "basis" refers to "something on which *something else* is established or based") (emphasis added)).   Thus, at bottom, the statute requires a statement providing some factual support as to why the Attorney General demands production of the requested records.   *See Weber*, 816 F. Supp. 3d at 1184 (noting that the basis-and-purpose requirement precludes Plaintiff

from "embark[ing] on a fishing expedition of voter records in any state . . . without identifying a single issue with the state's policies beforehand").

Moreover, if Congress sought to direct the Attorney General to simply reference the statute itself in order to invoke its authority, "requiring the letter to contain a 'statement of the basis … therefor' would not be the obvious way to do so." *See Galvin*, 2026 WL 972129, at *5. In other statutes Congress provides express instructions for agencies to identify the legal authority underlying their actions. *See, e.g.*, 5 U.S.C. § 553(b)(2) (requiring notice of proposed rulemaking to include "reference to the *legal authority* under which the rule is proposed") (emphasis added)); 8 U.S.C. § 1229(a)(1)(B) (requiring notice to appear for removal proceedings to "specify[] . . . [t]he *legal authority* under which the proceedings are conducted") (emphasis added)). Thus, *if* Congress had intended to impose the requirement of a mere citation to statutory authority, it "knew exactly how to do so." *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 138 S. Ct. 1348, 200 L. Ed. 2d 695 (2018) (declining to confer a particular authority that Congress did not expressly provide because Congress "knew exactly how to do so" in other statutes).

Instead, the Court adopts the reasoning within the many decisions that have rejected Plaintiff's position and found that the "basis" contemplated by Title III is a factual, not legal basis. *See Weber*, 816 F. Supp. 3d at 1184; *Oregon*, 2026 WL 318402, at *8–9; *Galvin*, 2026 WL 972129, at *4. This interpretation also aligns with the Attorney General's contemporaneous practice following Title III's enactment to include an express statement of facts to support the grounds of the demand. *Lynd*, 306 F.2d at 229 n.6 (observing compliance with the requirements of Title III when a written demand stated the records request was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been

made with respect to registration and voting within your jurisdiction[.]"); *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same); *In re Coleman*, 208 F. Supp. at 199–200 (same).   To that extent, the letter did not contain a *factual* basis, as discussed above.

Alternatively, Plaintiff contends that the letter did provide a factual basis for the demand. (ECF No. 15 at 10.)   Specifically, Plaintiff claims that West Virginia's SVRL was needed "to provide the means" to assess compliance with the SVRL maintenance provisions of the NVRA and HAVA.   (*Id*.)   This alleged basis is likewise insufficient under Title III given that Plaintiff also maintains that the purpose of the request was to "ascertain West Virginia's compliance with the list maintenance requirements of the NVRA and HAVA."   (*Id*.)   In other words, Plaintiff contends both the written demand's basis and purpose are completely identical.   The statutory text clearly forecloses this interpretation by conveying that "the basis" and "the purpose" are conceptually distinct.   *Galvin*, 2026 WL 972129, at *4.

The statute commands that the written demand "*shall* contain a statement of the *basis and the purpose therefor*."   § 20703 (emphasis added.)   "Shall" and "and" are important words in § 20703.   *See Benson*, 2026 WL 1815425, at *8.   "The use of the word 'shall' creates an obligation impervious to judicial discretion."   *Smith v. Spizzirri*, 601 U.S. 472, 476, 144 S.Ct. 1173, 218 L.Ed.2d 494 (2024) (citation omitted).   "And, in grammatical terms, is of course a conjunction … whose function is to connect specified terms."   *Pulsifer v. United States*, 601 U.S. 124, 133, 144 S.Ct. 718, 218 L.Ed.2d 77 (2024).   Thus, "[o]n its plain terms, this construction signals that 'basis' and 'purpose' are separate, non-overlapping requirements, each of which must independently be satisfied."   *Scanlan*, 2026 WL 1864054, at *6.   Accepting Plaintiff's interpretation would compound "the basis" requirement into "the purpose" and essentially read the

10

word "basis" out of the statute.  *Cf. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669 (2007) (cautioning "against reading a text in a way that makes part of it redundant"). Further, as discussed more fully below, Plaintiff's explanation—whether labeled as a basis or a purpose—fails.

Rather, only *after* this litigation began did Plaintiff attempt to provide factual justifications for its requests by citing how recent out of state enforcement efforts demonstrate the need for broader federal scrutiny.  (*See* ECF No. 39-1 at 3.)  Plaintiff points to instances in which North Carolina election officials admitted that the state was not maintaining records in compliance with HAVA.  (ECF No. 39 at 8.)  However, those assertions do not cure the factual deficiencies within the initial demand, nor does it identify any comparable concerns regarding West Virginia's list registration requirements.[6]

Accordingly, applying this textual framework to Plaintiff's letter, the Court finds that the demand fails to satisfy § 20703's basis requirement.

### 2.  Plaintiff's Demand Lacks a Valid Purpose

Plaintiff's September 8 letter did contain an explicit statement of the purpose for its Title III demand: "to ascertain West Virginia's compliance with the list maintenance requirements of the NVRA and HAVA."  (ECF No. 14-2 at 2.)  Yet, Defendant argues that Plaintiff's stated purpose is insufficient because it is unrelated to the purpose of Title III, which is to protect against the infringement or denial of voting rights.  (ECF No. 25 at 12.)  Plaintiff responds that (1) Title III authorizes demands to investigate violations of any federal statute and does not require a nexus

---

[6] Plaintiff also provides consent decrees for instances in which it sought records in other states to assess compliance with HAVA and the Voting Rights Act.  (*See* ECF No. 39-1 at 3–5.)  However, these were voluntary agreements that did not test the legality of the requests generally.

between the demand and the purpose of the CRA, and (2) enforcing list maintenance compliance with HAVA and the NVRA is compatible with securing an individual's right to vote.   (*See* ECF No. 39 at 13–14.)

Whether Plaintiff's stated "purpose" can be as all-encompassing as it protests is ultimately a question of statutory interpretation.[7]   Congress required that a records request under Title III "shall" include a statement of "the" purpose underlying that demand.   *See* 52 U.S.C. § 20703. "The use of the word 'shall' creates an obligation impervious to judicial discretion."   *Smith v. Spizzirri*, 601 U.S. 472, 476, 144 S.Ct. 1173, 218 L.Ed.2d 494 (2024) (citation omitted).   Thus, "[i]f any purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function."   *Oregon*, 2026 WL 318402, at *8.   The Court declines to read Title III so broadly as to render an express statutory obligation void of any authoritative meaning.   *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (citation modified)).

Because the "purpose" requirement cannot be satisfied by a blanket statement to a potential violation of any federal law, the Court must determine what Congress intended "purpose" in Title III to entail.   In doing so, the Court looks to Title III's text together with the legislative backdrop against which Congress enacted the statute.   *Cf. Turner v. Littleton-Lake Gaston Sch. Dist.*, 442 F.2d 584, 587 (4th Cir. 1971) ("In determining the purpose of legislation, it is appropriate to consider not only the effect of the legislation itself, but also the history and setting out of which the legislation arose."); *United States v. Hernandez*, 173 F.4th 94, 98 (4th Cir. 2026) ("Interpreting

---

[7] The ordinary understanding of "purpose" means "[a]n objective, goal, or end[.]"   *See Purpose*, BLACK'S LAW DICTIONARY (12th ed. 2024).

the plain language of a statute requires looking to both the 'specific context in which the language is used, and the broader context of the statute as a whole.'") (citation omitted)).

Title III of the CRA of 1960 was passed in the midst of the Jim Crow era, "to help end voting discrimination." *See Benson*, 2026 WL 1815425, at \*7; *see also* H. Rep. 86-956, at 7 (1959) ("The purpose of title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race.")  Congress enacted Title III of the CRA to strengthen enforcement of the Civil Rights Act of 1957 by requiring the maintenance and preservation of specific records to facilitate the investigation of allegations of discrimination in voter registration.  *See* Pub. L. No. 85-315, 71 Stat. 634 (1957).  Following its passage, Courts observed that Title III was "designed to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom*, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *Lynd*, 306 F.2d at 228 ("[O]ne of the clearest purposes of the Title III proceeding is to enable the Attorney General to assemble all of the voter record information . . . relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights.")

Reading Title III in light of that historical context, the Court finds that "the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402, at \*10.  While Plaintiff argues that assessing compliance with HAVA and the NVRA does align with this purpose, Plaintiff's only apparent motivation to assess list maintenance compliance involves generalized nationwide concerns that voter registration records may contain too many names.  (*See* ECF No. 39 at 8.) ("As a result of the Attorney General's enforcement action, North Carolina has reduced the number

13

of voter records missing an identification number under HAVA from 103,329 to 70,709.")   The potential failure on behalf of an unrelated state to purge voter records does not automatically fall within the bounds of Title III.   *See Bruce*, 298 F.2d at 863, n.2 (observing that evidence concerning a state's failure to remove voters who died or relocated was "a matter which does not bear any particular importance to the present [Title III] inquiry").   Rather, Plaintiff must state a "purpose" that relates to an investigation into potential violations of an individual's right to vote. It has not done so.

Nonetheless, even if investigating compliance with the NVRA or HAVA were valid purposes for seeking voter registration lists, Plaintiff does not provide any reasonable explanation for why obtaining highly sensitive voter data serves those purposes.   The NVRA and HAVA establish a comprehensive scheme governing the creation, maintenance, and enforcement of states' computerized SVRLs.   *See* 52 U.S.C. § 20501, § 21083(a)(1)(A).   The information Plaintiff is seeking pursuant to these statutes includes individuals' full name, date of birth, address, and driver's license or the last four digits of their social security number.   (ECF No. 1 at ¶ 22.) Although the NVRA and HAVA authorize the Attorney General to "bring a civil action" against a state that has violated those provisions, *see* 52 U.S.C. §§ 20510(a), 21111, neither statute contemplates "the line-by-line audit of each state's computerized SVRL by the federal government to assess compliance with those provisions."[8]   *Bellows*, 2026 WL 1430481, at *8.

---

[8] Despite basing the necessity of its investigation on ensuring compliance with the NVRA and HAVA, Plaintiff only brings this suit under Title III of the CRA.   If Plaintiff wanted to enforce HAVA or the NVRA, there are avenues for it to do so pursuant to those specific statutes.   *Bellows*, 2026 WL 1430481, at *8 ("If the Department of Justice wants to enforce HAVA and the NVRA, it must use the pre-suit investigation and enforcement mechanisms that Congress provided in those statutes— which do not contemplate production of the unredacted computerized list to the Attorney General so that he might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list.")

To the contrary, Courts have recognized that states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA and that this information is not relevant to the removal of ineligible voters from voting rolls. *See Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711–12 (E.D. Va. 2010) ("[Social security numbers ("SSN")] are uniquely sensitive and vulnerable to abuse . . . . For that reason, a SSN disclosure requirement potentially undermines the voter registration goals of the NVRA."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 733 (S.D. Miss. 2014). Thus, while the NVRA authorizes investigations into states' policies regarding reasonable voter list maintenance, it does not green light the form of "intrusive digging DOJ is proposing" here. *Weber*, 816 F. Supp. 3d at 1188.

Likewise, states are not required under HAVA to disclose SVRLs. *Id*. at 1190 ("HAVA simply contains no such [disclosure] provision. This ends the inquiry. And the fact that the NVRA and CRA do include such provisions signals that the omission in HAVA was intentional." (citing to *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 392 (2015)); *Oregon*, 2026 WL 318402, at *6 ("Congress knows how to include disclosure provisions, as it did so in both the NVRA and Title III. It did not do so here, and the Court will not play the role of Congress by adding one where it does not exist." (citing *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988))).

Thus, even if Plaintiff's stated purpose of assessing compliance with the NVRA and HAVA were sufficient, those statutes do not automatically entitle Plaintiff to the disclosure of the requested records. Regardless, because the demand letter did not include an adequate statement of its basis or purpose, as statutorily required, Plaintiff has failed to state a claim.[9] Therefore,

---

[9] Given the lack of an adequate basis or purpose, one is left to wonder what the real purpose was for the Justice Department to go to the trouble of filing civil actions like this one all around the nation. Troubling though this question is, it is not before the Court at this time.

15

Defendant's Motion to Dismiss under Rule 12(b)(6) is granted.   For the same reasons, Plaintiff's Motion to Compel is denied.

### IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Compel Production (ECF No. 15) and **GRANTS** Defendants' Motions to Dismiss (ECF No. 24.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        July 13, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16